B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Cathryn Lafayette | DEFENDANTS Ocwen Mortgage Servicing and Mortgage Enclave @ Lakewood Estates H |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Cathryn Lafayette Pro Se | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Disputing Debts of Ocwen Mortgage Servicing and Enclave @ Lakewood Estates HOA

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR Cathryn Lafayette | | BANKRUPTCY CASE NO. 16-65688 | |
| DISTRICT IN WHICH CASE IS PENDING Northern | | DIVISION OFFICE | NAME OF JUDGE PMB |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING Northern | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) *Cathryn Lafayette* | | | |
| DATE 09/16/2016 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF) Cathryn Lafayette | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF GEORGIA

**Debtor: Cathryn Lafayette**                                    **Case: 16-65688-PMB**

*Complaint* **to the Courts disputing the debt of Ocwen Mortgage Servicer**

## And Enclave@ Lakewood Estates HOA

**Ocwen Mortgage Servicer does not have a Valid Lien** on the Property located at 440 Milton Drive, Covington, GA 30016.  Ocwen is not the Lender of Debtor but a debt collector. Debtor holds first Lien Position.  According to Amy Foster, Director of HUD/ FHA, this is an Invalid Lien. Subpoena of Amy Foster, Director of FHA/ HUD is requested.

**Enclave @ Lakewood Estates HOA is an Invalid Board** where it's members, Board's Attorney, Jami Lyons and Board's Accountant, Dan Koerner are under investigation for Criminal activity. Debtor paid Early her payment of HOA FEES in Full in February, 2016 her HOA fees for the use of the Amenities for the year of 2016 but Enclave@Lakewood Estates HOA **Board's Attorney, Jamie Lyons, requested Debtor to pay for copies of documents** that Enclave @ Lakewood Estates HOA refused to present to the Debtor upon request which is allowed in the Covenants of the Enclave HOA Covenants. Enclave @ Lakewood Estates HOA then placed an unlawful debt on Debtor **for HOA fees owed, that Debtor had paid in Full.**  Debtor never received any communication from Enclave @Lakewood Estates HOA that she had delinquent HOA fees that were due until after Debtor requested to view documents of the Enclave@Lakewood Estates HOA.  Enclave @Lakewood Estate HOA refused to allow Debtor the opportunity to enjoy the Amenities in June, 2016 through the entire Summer, which the Enclave @ Lakewood do not own,  due to retaliation against the Debtor who requested  copies of documents and Bank statements which show theft of HOA funds for Personal use and other criminal acts.

Debtor is requesting a Grand Jury Investigation regarding Ocwen and members of the Enclave@Lakewood Estates HOA and those connected to them, Criminal Sanctions against both Parties, Triple Damages from Both Parties and Release of Invalid Lien on Debtor's Property placed by all Parties and the Debtor rendered a Clean Title.

Cathryn Lafayette, Pro Se
440 Milton Drive
Covington, GA 30016
770-572-7368
lafayettemedical@yahoo.com

RECALL ELECTION FOR ENCLAVE @GROSSLAKE HOA and GRAND JURY INVESTIGATION

The Residents of Enclave subdivision are requesting the RECALL OF THE ELECTION THAT WAS performed on December 17, 2015 Where the following were illegally placed on the Board as members for the Enclave subdivision through Proxies given to them by "Wendy. " These individuals "Never receiving One personal vote," at the election from the Community or Community having any previous knowledge of them as candidates. These Candidates were chosen previously by Wendy without the Knowledge of the Community but of her self- appointed Election Committee.  There was not a Quorum from the previous  Board and only one member was present on the previous Board where Awilda "Wendy" Gonzalez was the only member on the Board present who called for an Election for the New Enclave Board for Enclave @Grosslake HOA. The refusal of Awilda "Windy" Gonzalez to allow Residents of the Enclave Subdivision to view the Proxies that she said had been signed but not Notarized.  Alwilda Gonzalez  threaten more than 100 Residents present that she would have them arrested for disturbance and abruptly ended the Election by stating she would called the Police. Her action forced Residents to leave the Election, when they ask to review the Proxies that "WINDY" said she had received from Residents and Investors who were not present and counted as her votes <u>before the Election started with a team  who were chosen by her and in position as the "Election Committee." "Wendy added $25  late fees to Residents of  the Enclave community herself without Board approval and without notice to the residents. This fee of $25 had  been voted by all members of the Enclave HOA Board to credit every property within the Enclave.  Those members on the Board at the time voted to give a $25 credit back to every Property owner  were:  Vice President- Tina  Dillard , Treasurer- Samuel Grant, Secretary- Dr. Cathryn Lafayette and Alwilda Gonzalez, President.</u>
President- Awilda "Windy" Gonzalez
Vice President-Ms. P<u>. Slowley</u> (?)  Married???
Secretary- Paulette Gordon
Treasurer- Ms. Abby Ash
Federal and State Agencies are investigating Alwilda "Windy" Gonzalez and OTHERS for the following:
Immigration violations
Criminal IRS Investigation for Fraud
Theft and Conversion of HOA Funds
Breach of Fiduciary Duties
Breach the Association's Declaration of Covenants
Criminal IRS Investigation for Fraud
Stolen HOA Property
Criminal Liability
ABSENTEE BALLOT VOTE FRAUD AND RIGGING
TAMPERING WITH ACCOUNTING BOOKS
False Statements and Writings, Concealment of Facts and Fraudulent Documents
Breached Duty of Good Faith and Fair dealing and intentionally inflected Emotional Distress on Dr.
Cathryn Lafayette
Aggravated Perjury
Endangerment of Children and Adults
Harassment and Malicious False accusations that were meant to bring Hurt, Harm and Emotional
Duress to Dr. Cathryn Lafayette in the form of Racketeering   RICO and Racketeering
Using Office as Member of the Enclave @Grosslake HOA to enrich herself and themselves

**Interfering with internal revenue laws, conspiracy to commit wire fraud, obstruction of justice. The charges largely stem from transactions that occurred from about 2014 through 2016.**

# IN THE MAGISTRATE COURT OF NEWTON COUNTY

## STATE OF GEORGIA

Dr. Cathryn Lafayette, Reserves Estates HOA,                    Case No.: 1602190

Reserves at Lakewood Estates HOA Inc., ET AL

**Amended**

Civil Matter Only

Civil conversion of assets and Civil
    Misappropriation of funds

Deformation of Character and Slander

Breach of Fiduciary Duty

Wrongful Termination

Intentional Infliction of Emotional

Distress

Civil RICO

VS.

Alwilda Gonzalez, Carolyn Sutton,

Enclave at Grosslake HOA, ET AL

**"Amended Request for Production of Documents"**

## "Amended Request for Production of Documents"

March 24, 2016
The Enclave at Gross Lake Homeowners' Association, Inc.
C/o Alwilda Gonzalez
35 Gross Lake Parkway
Covington, GA 30016

Dear Alwilda Gonzalez,
:
This letter is delivered to you as the President for The Enclave at Gross Lake Homeowners' Association, Inc. ("the Association") based on your prior communications with THE PLAINTIFF concerning the Association. The Reserves Estates HOA / Reserves at Lakewood Estates HOA is being represented by Dr. Cathryn Lafayette, Pro Se, in connection with her membership in the Association. Dr. Lafayette is the owner of a lot and a member of The Enclave at Gross Lake Homeowners' Association, Inc., and this letter is written in connection with the rights she has as a member of the Association. In part, this letter is also written on her behalf as President and CEO of Reserve Estates HOA, Inc., formerly The Reserve at Lakewood Estates Homeowners Association, Inc., one of the Gross Lake Subdivision Homeowner's Associations referenced in the Declaration of Covenants for your client. Please direct all future correspondence concerning the requests made in this letter to the undersigned.

Please note that the portions of this letter relating to the Plaintiff as an individual member of the Association is framed under the provisions of the Georgia Non-profit Corporations Code, including the provision that a failure of the Association to make books and records available for inspection can result in a mandatory award against the Association for the legal fees of my clients.

O.C.G.A. § 14-3-1604(c). The failure of the Association to provide access to the requested documents may subject the Association to the penalties provided in the Code.

Please also note that this letter also requests documents that may be outside of the provisions of O.C.G.A. § 14-3-1601, et seq., but which are covered by the broader provisions of the Association's bylaws. In Article X of the bylaws of The Enclave at Gross Lake Homeowners' Association, Inc., it is stated:

The books, records and papers of the Association shall at all times, during reasonable business hours, be subject to inspection by any member."

The Enclave at Gross Lake Homeowners' Association, Inc.
March 24, 2016
Page 2

to the extent that you may consider any item requested outside of the scope of O.C.G.A. § 14-3-1601, et seq., the request is covered by Article X of the bylaws and must be made available. The Plaintiff requests a copy of the members list prepared for the most recent annual meeting of the association showing the names, addresses, and number of eligible votes for each member

which was required by O.C.G.A. § 14-3-720(a). If that list is not available, Dr. Lafayette will accept a current members list showing names and addresses of all members. The addresses shown should be the addresses used by the Association to give formal notices of meetings of the association membership. To the extent that O.C.G.A. § 14-3-1605 applies to the members list, my client will not use the membership list for any commercial purpose, buy or sell the members list, or use it for any purpose unrelated to their interests as members of the Association. It is in my clients' interest as members of the association to review that information to confirm whether persons claiming to be serving as directors were properly elected and whether persons voting, in person or by proxy, at the last annual meeting were eligible. Records of the meetings of the members are documents that Georgia law requires the Association to maintain (O.C.G.A. § 14-3-1602(a)(5)), and you are required to make them available to the members of the Association. O.C.G.A. § 14-3-1602(b).

Pursuant to O.C.G.A. § 14-3-1601, the Association is required to maintain adequate business records, including minutes of membership and board meetings at which actions are taken by the board of directors. Further, O.C.G.A. § 14-3-1602 provides that records are to be made available to members for purposes reasonably relevant to a members' legitimate interests as a member. Among those records would be the ballots, proxies, sign in sheets, and other materials in connection with the last two annual meetings of the Association. The Plaintiff has questions about whether the voting at the meeting was properly conducted. As a consequence, The Plaintiff wishes to review, inspect and copy all records of the proxies, votes, ALL Eligible voters list, and elections from the last three annual meetings of the members. Please note that such records should also be maintained by the Association pursuant to O.C.G.A. § 24-4-22 in anticipation of possible litigation over the operations of the Association, and spoliation of any such documents may result in a presumption that the documents destroyed would have proven facts contrary to positions advanced by the Association.

The Plaintiffs also request that copies of the minutes of the meetings of the board of directors or actions taken outside of a meeting for the last 36 months be made available pursuant to O.C.G.A.

§ 14-3-1602(c)(1). The requested documentation is in my client's good faith and proper interest as a member of the Association to evaluate and understand the financial decisions being made by the board of directors on behalf of the Association and which will financially impact my clients. My clients will only use those records for the stated purpose.

Next, The Plaintiffs wishes to inspect the accounting records of the Association as allowed by O.C.G.A. § 14-3-1602(c)(2) and Article X of the Association by-laws. This request is currently limited to bank statements, general ledgers, check registers, cancelled checks and invoices paid by the Association during the years 2013 and 2016 as well as records of credit card accounts, and other related Financial documents, The Enclave at Gross Lake Homeowners' Association, Inc.

March 25, 2016

Page 3

utilized by the Association during those years. Copies of deposits of membership dues are not required. Those accounting records are relevant to my client's legitimate interests as a member of the Association as the failure of the Association to expend funds for proper purposes may impose serious financial obligations on the Association which my client, as a member, will be required to fund. It is in The Plaintiffs' legitimate interest as a member of the Association that they be allowed to inspect and copy the requested accounting records so that they become informed on possible actions by the Association that will directly impact them financially. Please make available for inspection and copying all communications in writing or by electronic transmission to members generally within the past three years, including the financial statements furnished for the past three years.

Please make available copies of statements issued to or provided to real estate agents or Attorneys or anyone who would be involved in any closings within the Enclave sub- division during 2013 and 2016 for amounts payable at closing to the Association in connection with the closing of the sale of lots or homes that are part of the Association. Please also provide documentation, if not already included in items being furnished, showing where funds received pursuant to those statements were deposited. As the statements requested have been published and distributed to third parties, any claim of confidentiality will not be acceptable. The documents should show revenues to the Association which are within my client's legitimate concerns as a member of the Association. Further, The Plaintiffs has concerns that fees charged may have been diverted from the Association's accounts, so the documents are necessary to track whether funds alleged to be due to the Association have been properly accounted for. The documents are required to be made available both as financial records of the Association under the Georgia Code and under Article X of the Association's bylaws.

On behalf of The Plaintiffs and President and CEO of Reserves Estates HOA, Inc., we are also requesting that a listing of the members of the Architectural Standards Committee ("ASC") be provided. Under Article X, section 10.01 of the Association's Declaration of Covenants, the ASC must include "at least one member of the Board of Directors of each Gross Lake Subdivision(s)", and it appears that the ASC is being operated by the board in violation of the mandatory membership provisions in the Declaration.

Further, on behalf of the Plaintiffs and President and CEO of Reserves Estates HOA, Inc., They are requesting copies of vendor contracts for those vendors that provide landscaping or other services to the common areas of the Enclaves as well as those of which are part of The Reserves at Lakewood Estates subdivision. As Reserves Estates HOA, Inc., may be subject to claims of liability for actions of individuals providing services within The Reserves at Lakewood Estates, it is crucial that the Plaintiffs and the other members of her board have the requested information about vendors working within their community. These records will allow the Plaintiffs to evaluate whether full and fair information on the financial activities of the association are being properly reported to the membership, and they will, The Enclave at Gross Lake Homeowners' Association, Inc.;

March 25, 2016

Page 4

allow Plaintiff to confirm that any reports previously provided to the membership have been accurate. They will also allow my clients to evaluate the financial performance of the board of directors. All of this information is directly relevant to the good faith and proper interests of my client as a member of the Association, and the information will only be used for that proper purpose.
All records requested will be used only for the purposes stated in this letter. The Plaintiffs are requesting that these documents as well as the documents requested below are entered into Open court on April 01, 2016 at 9:30 am with copies given to Dr. Cathryn Lafayette, Plaintiff in Open Court. These documents should be made available at that time for inspection and copying to the extent desired by the Plaintiffs.

Hence, to clarify.

Enclave at Grosslake HOA, ET AL: Enclave at Gross Lake HOA will be addressed during this request as Enclave HOA.

1. Enclave HOA, you are requested to bring to Court on April 01, 2016, when you stand Trial for the above complaints: Copies of all Financial documents related to the HOA's Activities from January 2013 thru year 2016 including, but not limited to, Names, information and Contracts of every Book -Keeper and Management company affiliated with Enclave HOA, Bank account Statements, deposit slips, cancelled checks and all correspondence from the bank, including letters, emails, text messages, Charge cards, and list of every bank account that the Enclave HOA has been connected too in any way. etc. Lists Bank accounts where funds derived from Enclave HOA in any way, were deposited, withdrawn or transferred. Bring copies of all related financial transactions related to all expenses on Pool, and/ or any Amenities related matter including cleaning Lake and/ or Lake area, etc.

2. Copies of all materials related to HOA's election from January, 2013 through 2016,

3. Including, but not limited to Regular and Proxy ballots, election tally sheets, correspondence, emails, text messages, etc. Copy of all proxies submitted in 2016 Election, Election Ballots for 2016, name of all Election committee members and date when each Election member began to serve on Committee as well as date when Election Committee was established. List all Online and Regular applications completed by individuals who desired to run as candidates for the Enclave HOA for 2016.

   List names of those individuals that Election Committee approved as candidates. List all names, addresses phone numbers email addresses of those who were volunteers in any manner related to THE Enclave HOA. List all identifying information of all individuals who were working to pay off their delinquent Enclave HOA fees. List all identifying

   March 24, 2016

   Page 5

information all individuals and/ or Vendors who were paid any funds related to the Enclave HOA.

4.  Copies of all materials related to naming or discussing the activities of the plaintiff, Dr. Cathryn Lafayette related to her actions in this suit including, but not limited to letters, emails, text messages, etc.

5.  Copies of All Financial Closing documents on All Properties located in the Enclave Subdivision related to the Enclave HOA's Activities from January, 2013 thru current date for 2016, including, but not Limited to copy and addresses of contacts related to all Closing Letters on Vacant or occupied Lots.

6.  Copies of all Minutes related to Enclave at Grosslake HOA from 2013 thru 2016's current date.

Sincerely,

_____

Dr. Cathryn Lafayette, Pro Se

CEO, President

Dr. Cathryn Lafayette
440 Milton Drive
Covington, GA 30016
770-572-7368
lafayettemedical@yahoo.com

Cc: Reserves Estates HOA FKA The Reserves at Lakewood Estates, HOA



## Payment Summary

Dr. Cathryn Lafayette

THE ENCLAVE AT GROSS LAKE
PO BOX 70907
Unit/Address - 440 Milton Dr. Covington, GA 30016

Payment Method

**VISA** ending in ... 7011
DEBIT

| | |
|---|---|
| Dues | $25.00 |
| Electronic Payment Service Fee | $9.95 |

| | |
|---|---|
| Total Payment Amount | $34.95 |
| Payment Date | Tue Dec 08, 2015 06:46 AM PST |

Reference Number

63913754-47

* The service fee is non-refundable.
* All payments are subject to the terms of your current lease agreement.

Home    Mail    Search    News    Sports    Finance    Celebrity    Weather    Answers    Flickr    Mobile    More ∨       Try Yahoo Mail on Firefox ×

Q All ∨   Search               Search Mail     Search Web    Home    Dr Cathryn

Compose       ← ≪ →   Archive   Move ∨   Delete   Spam ∨   ••• More ∨         ⬆ ⬇ ×

Add Gmail, Outlook, AOL and more

Inbox (9999+)
Drafts (1024)
Sent
Archive
Spam (1319)
Trash (157)

Smart Views
   Important
   Unread
   Starred
   People
   Social
   Shopping
   Travel
   Finance
   etc

Folders (1925)
   -Boxbe Wai... (61)
   1asacaaaBkCertHA...
   1aaaaaaaDunN Bra...
   1aaaaanaA... (1)
   1aaaaaaByr... (3)
   1aaaaaacm... (11)
   1aaaaaaMichelle Fer...
   1aaaaaaSh... (2)
   1aaaaachild... (1)
   1aaaaaDrC... (646)
   1aaaaaNew... (1)
   1aaaaaRobin M Ott
   1aaaaa2nag Movies
   1aaaaainaug... (2)
   1sa a a aB... (120)
   1sa a a a ataxshield
   1sa a a a Liberty Mut...
   1sa a a aaN... (4)
   1sa a a aaR... (4)
   1SA A A AC... (3)
   1sa a a aDa... (4)
   1sa a a ado... (1)
   1sa A A AM... (96)
   1sa A A ASaudi Arabia
   1sa a a Harrius Law...
   1sa A A Ow... (12)
   1sa a anair fungus c...
   1sa aa a a Johan Fac...
   1sa aa a aPi... (4)
   1sa aa aGreen
   1sa aaa3B... (3)
   1sa aaaArt Fraud Dept
   1sa aaaban... (4)
   1saaa aEarl ... (2)
   1saaaa15M... (9)
   1saaaaA My Protect...
   1saaaaaaae... (2)

## Re: PROXY #501        People ★

**KOERNER DAN** <a-f-s@mindspring.com>        12/08/15 at 9:26 AM
To: Dr Cathryn Lafayette

YOU MAY GO TO   **afsatlanta.com**   and pay dues on line. Once you account is current, i.e. The late fee is cleared,Your proxy will be valid and you will be eligible for the $25.00 discount for 2016.

I will be notified, by the people that handle the payment transaction and you will also receive proof of payment .

**DAN KOERNER**
*ASSOCIATION FINANCIAL SERVICES*
PO BOX 70907
MARIETTA, GA. 30007
**770-578-8640**
**A-F-S@mindspring.com**

---

**From:** Dr Cathryn Lafayette <lafayettemedical@yahoo.com>
**Reply-To:** Dr Cathryn Lafayette <lafayettemedical@yahoo.com>
**Date:** Tuesday, December 8, 2015 at 7:41 AM
**To:** KOERNER DAN <a-f-s@mindspring.com>
**Subject:** Re: PROXY #501

Do You accept visa or credit cards online for payment and what is the method that I should use for placing the payment? I have never used online payment, I always paid with money order or check. I will follow through with this discrepancy in court.
Thank you for making me aware because this is the first knowledge of this inaccurate information that I received that came from you on December 05 and I thought that this had been corrected and then now, December 07, 2015 indicating that I can not vote unless this fee is paid.. I had not received no other info from anyone else or the ENCLAVE HOA except now.
Dr. Cathryn Lafayette

---

**From:** KOERNER DAN <a-f-s@mindspring.com>
**To:** Cathryn Lafayette <lafayettemedical@yahoo.com>
**Cc:** Enclave Gross lake <enclavelakebod@gmail.com>
**Sent:** Monday, December 7, 2015 10:40 AM
**Subject:** PROXY #501

Cathryn,

On December 3, I listened to your story as to why your account should not be charged $25.00. I thus removed the $25.00 charge from your account and sent your proxy.

I have since learned that your payment of $250.00 was made past the deadline to qualify for the $25.00 discount offered by The Enclave at Gross Lake, as the bookkeeping had indicated.

The $25.00 charge has bee placed back on your account making **Proxy #501 invalid.** You must clear this charge prior to the association meeting in order to vote and be eligible for the 2016 discount.

**DAN KOERNER**
*ASSOCIATION FINANCIAL SERVICES*
PO BOX 70907
MARIETTA, GA. 30007
**770-578-8640**
**A-F-S@mindspring.com**

Shop at Sears Today

$1,139.99 $1,489.99     $399.99 $529.99
SHOP NOW        SHOP NOW
42" Auto 17.5 HP Briggs & Stratton Riding Mower    10' x 12' Barn Roof Storage Building - SR1012

<div class="text_red bold grey_box hallow_box align_center round_box_content">To use the site, Javascript must be enabled in your browser. Please make sure your browser has Javascript enabled and there are no plug-ins or extensions that prevent Javascript from running.</div>



DUESPAYMENT
POWERED BY YAPSTONE

## THANK YOU FOR YOUR PAYMENT

LogoutMenu

AutoPay

## Your Payment was Successful!

A payment receipt will be sent to lafayettemedical@gmail.com

## Payment Summary

| | |
|---|---|
| | THE ENCLAVE AT GROSS LAKE |
| Dr Cathryn Lafayette | PO BOX 70907 |
| | Unit/Address - 440 Milton Drive |
| Payment Method | VISA DEBIT ending in ... 7011 |
| Dues | $250.00 |
| Electronic Payment Service Fee | $9.95 |
| Total Payment Amount | $259.95 |

## A. Settlement Statement

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0265
(expires 11/30/2009)

| B. Type of Loan | | | | | |
|---|---|---|---|---|---|
| 1. ☒ FHA   2.☐ RHS   3.☐ Conv. Unins. | | 6. File Number 0875765I | 7. Loan Number 2008222273 | 8. Mortgage Insurance Case Number 105-409-8134-703 | |
| 4.☐ VA   5.☐ Conv. Ins. | | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| CATHRYN LAFAYETTE 440 MILTON DRIVE COVINGTON, GA 30016 | LEGACY COMMUNITIES OF LAKEWOOD ESTATES, LLC P.O. BOX 191588 ATLANTA, GA 31119 | LEND AMERICA 520 BROADHOLLOW ROAD, STE 100E MELVILLE, NY 11747 |

| G. Property Location | H. Settlement Agent |
|---|---|
| 440 MILTON DRIVE COVINGTON, GA 30016 NEWTON COUNTY, GA LE 182 PARCEL ID: 0012E 182 | NEEL & ROBINSON ATTORNEYS AT LAW, L.L.C. (NR) |

| Place of Settlement | I. Settlement Date |
|---|---|
| 22 LENOX POINTE ATLANTA, GEORGIA 30324 | 11/26/08 DD: 11/26/08 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 178,674.00 | 401. Contract sales price | 178,674.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 4,482.65 | 403. | |
| 104. PAY HOA INITIATION FEE - THE ENCLAVE | 150.00 | 404. | |
| 105. PAY HOA INITIATION FEE - THE RESERVES@LE | 200.00 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes   11/26 to 12/31 | 13.55 | 407. County taxes   11/26 to 12/31 | 13.55 |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. PAY HOA DUES 2009 THE RESERVES @ LAKEWOOD | 100.00 | 409. | |
| 110. PAY HOA DUES 2008 - THE ENCLAVE | 300.00 | 410. | |
| 111. PAY HOA DUES 2008- THE RESERVES @ LAKEWOOD | 100.00 | 411. | |
| 112. PAY HOA DUES 2009- THE ENCLAVE | 300.00 | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 184,320.20 | **420. GROSS AMOUNT DUE TO SELLER** | 178,687.55 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 178,146.00 | 502. Settlement charges to seller (line 1400) | 21,829.18 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 159,910.07 |
| | | BRANCH BANKING AND TRUST COMPANY | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. PAY TERMITE INSPECTION | 88.00 |
| 207. | | 507. PAY 2-10 HOME WARRANTY | 321.61 |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY / FOR BORROWER** | 178,146.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 182,148.86 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 184,320.20 | 601. Gross amount due to seller (line 420) | 178,687.55 |
| 302. Less amounts paid by/for borrower (line 220) | 178,146.00 | 602. Less reduction amount due to seller (line 520) | 182,148.86 |
| **303. CASH        FROM        BORROWER** | 6,174.20 | **603. CASH        FROM        SELLER** | 3,461.31 |

form HUD-1 (3/86) ref Handbook 4305.2

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT · SETTLEMENT STATEMENT · PAGE 2

| L. SETTLEMENT CHARGES: | | File Number: 08757651 | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ | | 178,674.00 @ | 6.00 = | 10,720.44 | | | |
| Division of commission (line 700) as follows: | | | | | | | |
| 701. $ 5,360.22 to LEGACY REALTY GROUP | | | | | | | |
| 702. $ 5,360.22 to PLATINUM REALTY | | | | | | | |
| 703. Commission paid at Settlement | Realtor Holds Deposit | | | | | | 10,720.44 |
| 704. 1% MARKETING FEE | LEGACY REALTY GROUP | | | | | | 1,786.74 |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | P.O.C. | | | |
| 801. Loan Origination Fee | 1 % LEND AMERICA | | | | | | 1,746.53 |
| 802. Loan Discount | 2 % LEND AMERICA | | | | | | 3,562.92 |
| 803. Appraisal Fee | to NEXT DAY APPRAISALS, INC. | | | 350.00B | | | |
| 804. Credit Report | to | | | | | | |
| 805. Lender's Inspection Fee | to LEND AMERICA | | | | | | 100.00 |
| 806. Mtg. Ins. Application Fee | to | | | | | | |
| 807. Assumption Fee | to | | | | | | |
| 808. FLOOD CERTIFICATION | LEND AMERICA | | | | | | 20.00 |
| 809. PROCESSING FEE | LEND AMERICA | | | | | | 795.00 |
| 810. UNDERWRITING FEE | LEND AMERICA | | | | | | 940.00 |
| 811. HOMEOWNERSHIP RETENTION PROG | RAINY DAY HOLDINGS, LLC | | | 350.00B | | | |
| 812. GA PER LOAN FEE | LEND AMERICA | | | | | | 6.50 |
| 813. | | | | | | | |
| 814. | | | | | | | |
| 815. | | | | | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | | | | |
| 901. Interest from 11/26/08 to 12/01/08 @$ | | 34.6395 | /day | 5 day(s) | | | 173.20 |
| 902. Mortgage Insurance Premium | to DEPARTMENT OF HUD | | | | | 3,493.05 | |
| 903. Hazard Insurance Premium | 1 yrs. to ALLSTATE INSURANCE | | | 512.00B | | | |
| 904. | | | | | | | |
| 905. | | | | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | | | | | |
| 1001. Hazard Insurance | 4 mo. @$ | 42.67 | / mo. | | | | 170.68 |
| 1002. Mortgage Insurance | 0 mo. @$ | 79.68 | / mo. | | | | |
| 1003. City property taxes | mo. @$ | | / mo. | | | | |
| 1004. County property taxes | 3 mo. @$ | 165.95 | / mo. | | | | 497.85 |
| 1005. Annual Assessments | mo. @$ | | / mo. | | | | |
| 1006. | mo. @$ | | / mo. | | | | |
| 1007. | mo. @$ | | / mo. | | | | |
| 1008. Aggregate Reserve for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | | | | | | 0.00 |
| 1100. TITLE CHARGES | | | | | | | |
| 1101. Settlement or closing fee | to | | | | | | |
| 1102. Abstract or title search | to | | | | | | |
| 1103. Title examination | to TRADITIONAL TITLE SERVICES, INC./NR | | | | | | 150.00 |
| 1104. Title insurance binder | to NEEL & ROBINSON ATTORNEYS AT LAW, L.L.C. | | | | | | 50.00 |
| 1105. Document preparation | to NEEL & ROBINSON ATTORNEYS AT LAW, L.L.C. | | | | | | 250.00 |
| 1106. Notary fees | to | | | | | | |
| 1107. Attorney's fees | to NEEL & ROBINSON ATTORNEYS AT LAW, L.L.C. | | | | | | 350.00 |
| (includes above item No: | ) | | | | | | |
| 1108. Title insurance | to FIDELITY NATIONAL TITLE INSURANCE/NR | | | | | 389.05 | 325.66 |
| (includes above item No: 1104 | ) | | | | | | |
| 1109. Lender's coverage 178,146.00 — 178.15 | | | | | | | |
| 1110. Owner's coverage 178,674.00 — 536.56 | | | | | | | |
| 1111. | NEEL & ROBINSON ATTORNEYS AT LAW, L.L.C. | | | | | | |
| 1112. | | | | | | | |
| 1113. | | | | | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | | | | |
| 1201. Recording fees Deed $ 10.00 ; Mortgage $ 36.00 ; Releases $ 24.00 | | | | | | | 70.00 |
| 1202. City/county/stamps Deed $ ; Mortgage $ | | | | | | | |
| 1203. State tax/stamps Deed $ 178.70 ; Mortgage $ 535.50 | | | | | | 600.54 | 113.66 |
| 1204. | | | | | | | |
| 1205. | | | | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | | | | |
| 1301. Survey | to | | | | | | |
| 1302. Pest inspection | to | | | | | | |
| 1303. | | | | | | | |
| 1304. | | | | | | | |
| 1305. | | | | | | | |
| 1306. | | | | | | | |
| 1307. | | | | | | | |
| 1308. | | | | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K) | | | | | | 4,482.65 | 21,829.18 |

form HUD-1 (3/86) ref Handbook 4305.2

## ACKNOWLEDGEMENT AND RECEIPT OF SETTLEMENT STATEMENT

Purchaser/Borrower:   CATHRYN LAFAYETTE
Seller:               LEGACY COMMUNITIES OF LAKEWOOD ESTATES, LLC
Property Address:     440 MILTON DRIVE, COVINGTON, GA 30016
Settlement Agent:     NEEL & ROBINSON ATTORNEYS AT LAW, L.L.C. (NR)

Seller acknowledges that he/she has received, reviewed, and approved the entries appearing on this Settlement Statement, and acknowledges receipt of a copy of same. Seller acknowledges receipt of payment in full of the proceeds due from the settlement and warrants the correctness of all payoff amounts for outstanding liens and encumbrances attached to Seller and/or the property. If any party receiving a payoff as set forth in the Settlement Statement refuses to accept that amount tendered, the party obligated to make such payoff (Purchaser or Seller) agrees to immediately pay to Settlement Agent sufficient additional funds to make such payment acceptable to the refusing/receiving party.

Seller and all other parties to this transaction, including those receiving real estate brokerage commissions, and any assignee of lender, acknowledge that all checks issued by settlement agent and its release or recording of all documents are contingent upon all checks, sight drafts and other instruments accepted as payment for amounts due under this transaction being honored for payment by the institution on which such instruments are drawn. Seller agrees to indemnify and hold settlement agent harmless from any loss or damage suffered by them as a result of any negotiable instrument being dishonored or as a result of the authorized action of settlement agent.

Seller acknowledges that the Settlement Agent represents the lender and does not represent Purchaser, Seller or any other party (other than the lender) in any matter related to this transaction. Seller acknowledges that he/she did not receive or rely upon any advice from said closing attorney regarding any matter related to or a part of this transaction. Purchaser and Seller acknowledge that the charges for title insurance shown on lines 1108, 1109 and 1110 include fees and compensation to Settlement Agent as the closing attorney and as an agent of the title insurance company underwriting this transaction.

If any computation, charge or proration required by the contract of sale is erroneous or omitted, for any reason, Seller agrees to re-prorate or adjust based on the correct figures as determined by the contract and to remit such sums to correct such error or omission. Seller agrees that should any inadvertent errors or omissions later be discovered in any documents executed at settlement, he/she shall promptly execute corrective documents. Any excess recording costs are inadvertent and will be refunded upon written request. Seller acknowledges that settlement agent and Lender make no representations as to the status of any outstanding or past due water, sewerage or other utility bills applicable to the property. The status of such items shall be determined by and are the responsibility of the Purchaser and Seller.

If the proration of ad valorem property taxes, assessments or any other fee is made based on estimated amounts prior to receipt of current amounts due, Purchaser and Seller agree to adjust said prorations based on the actual base amount due between themselves after closing and to immediately remit to the other the funds to make said proration correct.

**SUBSTITUTE FORM 1099 SELLER STATEMENT:** The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on Line 401 constitutes the Gross Proceeds of this transaction.

**SELLER INSTRUCTIONS:** If this real estate was your principal residence, file Form 2119, Sale and Exchange of Principal Residence, for any gain, with your income tax return; for other transactions complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040). You are required by law to provide Neel & Robinson Attorneys at Law, LLC with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil and criminal penalties imposed by law. Under penalties of perjury, Seller certifies that the number shown on this statement is Seller's correct taxpayer identification number.

Seller
LEGACY COMMUNITIES OF LAKEWOOD ESTATES, LLC

By:_____ TIN: 202272874
CHASE BARKE,
as its VICE PRESIDENT

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction.

NEEL & ROBINSON ATTORNEYS AT LAW, L.L.C. (NR)

by:_____
Settlement Agent

### ACKNOWLEDGEMENT AND RECEIPT OF SETTLEMENT STATEMENT

Date:                 11/26/08
Lender:               LEND AMERICA
Purchaser/Borrower:   CATHRYN LAFAYETTE
Seller:               LEGACY COMMUNITIES OF LAKEWOOD ESTATES, LLC
Property Address:     440 MILTON DRIVE, COVINGTON, GA 30016
Settlement Agent:     NEEL & ROBINSON ATTORNEYS AT LAW, L.L.C. (NR)

Purchaser acknowledges that they have received, reviewed, and approved the entries appearing on this Settlement Statement, and each acknowledge receipt of a copy of same. Purchaser acknowledges receipt of a copy of the Truth in Lending Disclosure and Good Faith Estimates prior to consummation of the loan transaction as required by state and/or federal law. If any party receiving a payoff as set forth in the Settlement Statement refuses to accept that amount tendered, the party obligated to make such payoff agrees to immediately pay to Settlement Agent sufficient additional funds to make such payment acceptable to the refusing/receiving party.

Purchaser and all other parties to this transaction, including those receiving real estate brokerage commissions, and any assignee of lender, acknowledge that all checks issued by settlement agent and its release or recording of all documents are contingent upon all checks, sight drafts and other instruments accepted as payment for amounts due under this transaction being honored for payment by the institution on which such instruments are drawn. Purchaser agrees to indemnify and hold settlement agent harmless from any loss or damage suffered by them as a result of any negotiable instrument being dishonored or as a result of the authorized action of settlement agent.

Purchaser acknowledges that the Settlement Agent represents the lender and does not represent Purchaser in any matter related to this transaction. Purchaser acknowledges that they did not receive or rely upon any advice from said closing attorney regarding any matter related to or a part of this transaction. Purchaser acknowledges that the charges for title insurance shown on lines 1108, 1109 and 1110 include fees and compensation to Settlement Agent as the closing attorney and as an agent of the title insurance company underwriting this transaction.

Purchaser agrees that the terms and conditions of the contract between them not performed before or at closing shall survive the closing and not be merged into or by the delivery of the warranty deed, except as otherwise agreed in said contract.

If any computation, charge or proration required by the contract of sale is erroneous or omitted, for any reason, Purchaser agrees to re-prorate or adjust based on the correct figures as determined by the contract and to remit such sums to correct such error or omission. Purchaser agrees that should any inadvertent errors or omissions later be discovered in any documents executed at settlement, they shall promptly execute corrective documents. Any excess recording costs are inadvertent and will be refunded upon written request. Purchaser acknowledges that settlement agent and Lender make no representations as to the status of any outstanding or past due water, sewerage or other utility bills applicable to the property. The status of such items shall be determined by and are the responsibility of the Purchaser and Seller.

If the proration of ad valorem property taxes, assessments or any other fee is made based on estimated amounts prior to receipt of current amounts due, Purchaser and Seller agree to adjust said prorations based on the actual base amount due between themselves after closing and to immediately remit to the other the funds to make said proration correct.

Purchaser hereby acknowledges that he/she/they are solely responsible to file a real property tax return and/or homestead exemption application with the county tax commissioner in which the property lies as required by law. Seller warrants that all required tax returns and applicable exemption applications have been filed for the current tax year

BORROWER'S MONTHLY PAYMENT ($):            FIRST PAYMENT DUE:
  Principal and Interest      $1,185.21      January 1st, 2009
  Hazard Insurance            42.67
  State and County Taxes      165.95
  City Taxes                  0.00
  FHA MIP or PMI              79.68
  Other                       0.00
  TOTAL:                      1473.51
Purchaser/Borrower

_CATHRYN LAFAYETTE_

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction.

NEEL & ROBINSON ATTORNEYS AT LAW, L.L.C. (NR)

by:_____
Settlement Agent

## A. Settlement Statement

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0265
(expires 11/30/2009)

| B. Type of Loan | | | | |
|---|---|---|---|---|
| 1. ☒ FHA   2. ☐ RHS   3. ☐ Conv. Unins. <br> 4. ☐ VA   5. ☐ Conv. Ins. | 6. File Number <br> 08788371 | | 7. Loan Number <br> 2008222273 | 8. Mortgage Insurance Case Number <br> 105-409-8134-703 |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower <br> CATHRYN LAFAYETTE <br> 440 MILTON DRIVE <br> COVINGTON, GA 30016 | E. Name and Address of Seller <br> LEGACY COMMUNITIES OF LAKEWOOD <br> ESTATES, LLC <br> P.O. BOX 191588 <br> ATLANTA, GA 31119 | F. Name and Address of Lender <br> LEND AMERICA <br> 520 BROADHOLLOW ROAD, STE 100E <br> MELVILLE, NY 11747 |
|---|---|---|

| G. Property Location <br> 440 MILTON DRIVE <br> COVINGTON, GA 30016 <br> NEWTON COUNTY, GA LE 182 <br> PARCEL ID: 0012E 182 | H. Settlement Agent <br> NEEL & ROBINSON ATTORNEYS AT LAW, L.L.C. (NR) |  |
|---|---|---|
| | Place of Settlement <br> 22 LENOX POINTE <br> ATLANTA, GEORGIA 30324 | I. Settlement Date <br> 11/06/08 <br> DD: 11/06/08 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 178,674.00 | 401. Contract sales price | 178,674.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 5,018.40 | 403. | |
| 104. PAY HOA INITIATION FEE - THE ENCLAVE | 150.00 | 404. | |
| 105. PAY HOA INITIATION FEE - THE RESERVES@LE | 200.00 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes            to | | 406. City/town taxes            to | |
| 107. County taxes        11/06 to 12/31 | 21.30 | 407. County taxes        11/06 to 12/31 | 21.30 |
| 108. Assessments            to | | 408. Assessments            to | |
| 109. | | 409. | |
| 110. PAY HOA DUES 2008 - THE ENCLAVE | 300.00 | 410. | |
| 111. PAY HOA DUES 2008 - THE RESERVES @ LAKEWOOD | 100.00 | 411. | |
| 112. PAY HOA DUES 2009 - THE ENCLAVE | 300.00 | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 184,763.70 | **420. GROSS AMOUNT DUE TO SELLER** | 178,695.30 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 178,146.00 | 502. Settlement charges to seller (line 1400) | 22,191.18 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 159,640.24 |
| | | BRANCH BANKING AND TRUST COMPANY | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. PAY TERMITE INSPECTION | 88.00 |
| 207. | | 507. PAY 2-10 HOME WARRANTY | 321.61 |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes            to | | 510. City/town taxes            to | |
| 211. County taxes            to | | 511. County taxes            to | |
| 212. Assessments            to | | 512. Assessments            to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY / FOR BORROWER** | 178,146.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 182,241.03 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 184,763.70 | 601. Gross amount due to seller (line 420) | 178,695.30 |
| 302. Less amounts paid by/for borrower (line 220) | 178,146.00 | 602. Less reduction amount due to seller (line 520) | 182,241.03 |
| **303. CASH        FROM        BORROWER** | 6,617.70 | **603. CASH        FROM        SELLER** | 3,545.73 |

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT — SETTLEMENT STATEMENT — PAGE 2

| L. SETTLEMENT CHARGES: | | File Number: 08/98371 | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ | | 178,674.00 @ | 6.00 = | 10,720.44 | | | |
| Division of commission (line 700) as follows: | | | | | | | |
| 701. $ 5,360.22 to LEGACY REALTY GROUP | | | | | | | |
| 702. $ 5,360.22 to PLATINUM REALTY | | | | | | | |
| 703. Commission paid at Settlement | Realtor Holds Deposit | | | | | | 10,720.44 |
| 704. 1% MARKETING FEE | LEGACY REALTY GROUP | | | | | | 1,786.74 |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | P.O.C. | | | |
| 801. Loan Origination Fee | 1 % LEND AMERICA | | | | | | 1,746.53 |
| 802. Loan Discount | 2 % LEND AMERICA | | | | | | 3,562.92 |
| 803. Appraisal Fee | to NEXT DAY APPRAISALA, INC. | | | 350.00B | | | |
| 804. Credit Report | to | | | | | | |
| 805. Lender's Inspection Fee | to LEND AMERICA | | | | | 100.00 | |
| 806. Mtg. Ins. Application Fee | to | | | | | | |
| 807. Assumption Fee | to | | | | | | |
| 808. FLOOD CERTIFICATION | LEND AMERICA | | | | | | 20.00 |
| 809. PROCESSING FEE | LEND AMERICA | | | | | | 795.00 |
| 810. UNDERWRITING FEE | LEND AMERICA | | | | | | 940.00 |
| 811. HOMEOWNERSHIP RETENTION PROG | RAINY DAY HOLDINGS, LLC | | | 350.00B | | | |
| 812. | | | | | | | |
| 813. | | | | | | | |
| 814. | | | | | | | |
| 815. | | | | | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | | | | |
| 901. Interest from 11/06/08 to 12/01/08 @$ | | 34.6395 | /day | 25 day(s) | | | 865.99 |
| 902. Mortgage Insurance Premium | to DEPARTMENT OF HUD | | | | | 3,493.06 | |
| 903. Hazard Insurance Premium | 1 yrs. to ALLSTATE INSURANCE | | | | | 512.00 | |
| 904. | | | | | | | |
| 905. | | | | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | | | | | |
| 1001. Hazard Insurance | 4 mo. @$ | 42.67 | / mo. | | | 170.68 | |
| 1002. Mortgage Insurance | 0 mo. @$ | 79.68 | / mo. | | | | |
| 1003. City property taxes | mo. @$ | | / mo. | | | | |
| 1004. County property taxes | 3 mo. @$ | 165.95 | / mo. | | | 497.85 | |
| 1005. Annual Assessments | mo. @$ | | / mo. | | | | |
| 1006. | mo. @$ | | / mo. | | | | |
| 1007. | mo. @$ | | / mo. | | | | |
| 1008. Aggregate Reserve for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | | | | | 0.00 | |
| 1100. TITLE CHARGES | | | | | | | |
| 1101. Settlement or closing fee | to | | | | | | |
| 1102. Abstract or title search | to | | | | | | |
| 1103. Title examination | to TRADITIONAL TITLE SERVICES, INC./NR | | | | | | 150.00 |
| 1104. Title insurance binder | to NEEL & ROBINSON ATTORNEYS AT LAW, L.L.C. | | | | | | 50.00 |
| 1105. Document preparation | to | | | | | | |
| 1106. Notary fees | to | | | | | | |
| 1107. Attorney's fees | to NEEL & ROBINSON ATTORNEYS AT LAW, L.L.C. | | | | | | 300.00 |
| (includes above item No: | | | | | | | |
| 1108. Title insurance | to FIDELITY NATIONAL TITLE INSURANCE/NR | | | | | | 714.17 |
| (includes above item No: 1104 | | | ) | | | | |
| 1109. Lender's coverage | 178,146.00 — 178.15 | | | | | | |
| 1110. Owner's coverage | 178,674.00 — 536.02 | | | | | | |
| 1111. | | | | | | | |
| 1112. | | | | | | | |
| 1113. | | | | | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | | | | |
| 1201. Recording fees Deed $ 10.00 | ; Mortgage $ 36.00 | ; Releases $ | 24.00 | | | 66.11 | 3.89 |
| 1202. City/county/stamps Deed $ | ; Mortgage $ | | | | | | |
| 1203. State tax/stamps Deed $ 178.70 | ; Mortgage $ 535.50 | | | | | 178.70 | 535.50 |
| 1204. | | | | | | | |
| 1205. | | | | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | | | | |
| 1301. Survey | to | | | | | | |
| 1302. Pest inspection | to | | | | | | |
| 1303. | | | | | | | |
| 1304. | | | | | | | |
| 1305. | | | | | | | |
| 1306. | | | | | | | |
| 1307. | | | | | | | |
| 1308. | | | | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K) | | | | | | 5,018.40 | 22,191.18 |

## Fw: Hud1 for first closing

People

- ○ **Dr Cathryn Lafayette** <lafayettemedical@yahoo.com>

- ○
- ○ 12/31/14 at 8:42 PM

To

- ○ sales@certifiedforensicloanauditors.com

Message body
IMPORTANT 1ST CLOSING HUD 1 STATEMENT LOAN PAID OFF

On Monday, October 8, 2012 3:30 PM, Dr Cathryn Lafayette <lafayettemedical@yahoo.com> wrote:

FYI Exhibits

----- Forwarded Message -----
**From:** Dr Cathryn Lafayette <lafayettemedical@yahoo.com>
**To:** Grace Adams <graccointern@msn.com>
**Sent:** Thursday, September 27, 2012 12:16 PM
**Subject:** Fw: Hud1 for first closing

1st closing and Hud given to me at my closing on 11/06/08 by same closing Atty.Clack.
Cathryn

.
----- Forwarded Message -----
**From:** Dr Cathryn Lafayette <lafayettemedical@yahoo.com>
**To:** Grace Adams <graccointern@msn.com>
**Sent:** Tuesday, May 8, 2012 11:09 AM
**Subject:** Fw: Hud1 for first closing

Exhibit

----- Forwarded Message -----
**From:** Dr Cathryn Lafayette <lafayettemedical@yahoo.com>
**To:** "brendapayton@mail.com" <brendapayton@mail.com>
**Cc:** "lafayettemedical@yahoo.com" <lafayettemedical@yahoo.com>
**Sent:** Monday, October 17, 2011 10:36 AM
**Subject:** Fw: Hud1 for first closing

First Closing where I after this closing, filed the Lien.

Cathryn


----- Forwarded Message -----
**From:** Jean West <jean.west@neelandrobinson.com>
**To:** LAFAYETTEMEDICAL@YAHOO.COM
**Sent:** Thursday, November 6, 2008 10:30 AM
**Subject:** purchase of new home

Attached is the HUD for your review.  Please let me know if you have any questions.  Thanks!

Jean West
Closing Paralegal
Neel & Robinson Attorneys at Law LLC
22 Lenox Pointe
Atlanta, Georgia 30324
Main:   404 459 9600
Direct: 404 705 3691
Fax:    404 705 3697
http://www.neelandrobinson.com/
lenox@neelandrobinson.com

The information contained in this message or electronic transmission is strictly confidential and may contain information that is privileged and protected by law. This information, including any attachments to this message, is solely for the intended designated recipient hereof. If you receive this message and are not the intended recipient of this message, you are directed to delete, erase and destroy permanently this message, all copies of it, and all attachments, in all versions or formats. If that cannot or will not be done immediately, notify the sender at the phone number listed above as soon as possible.
NOTICE
This message and all attachments (this message and all attachments are hereinafter referred to as the "Message") are being sent by or on behalf of a lawyer. This Message is intended exclusively for the individual or entity to which it is addressed. This Message may not be relied upon by any individual or entity other than the addressee. Any reliance upon this Message by any individual or entity other than the addressee is at the peril of such individual or entity. No attorney-client relationship is created by this Message. No attorney-client relationship exists with Neel and Robinson Attorneys at Law, LLC without a written engagement letter. This Message may contain information that is proprietary, privileged, or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy, or disseminate this Message or any part of it. If you have received this Message in error, please notify the sender immediately by e-mail and delete all copies of this Message.

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE A

Date Issued: April 12, 2012

TRUE CERTIFIED COPY

Commitment No: **1508370**                    Other Reference No:

Property Address:          **440 Milton Drive, Covington, GA 30016**

Name and Address of          **Old Republic National Title Insurance Co.**
Title Insurance Company:     **400 Second Avenue South**
                             **Minneapolis, MN   55401**

1.    Effective Date: **January 11, 2016 7:59 AM**

2.    The policy or policies to be issued are:                    POLICY AMOUNT

      (a)    Owner's Policy (ALTA Owners 06/17/06)                              $0.00
             Proposed Insured:

      (b)    Loan Policy (ALTA Loan 06/17/06)                              $64,285.00

             Proposed Insured:      GMAC Mortgage, LLC, its successors and/or assigns, as their interests
                                    may appear

3.    The estate or interest in the land described or referred to in this Commitment is Fee Simple.

4.    Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:

      Cathryn Lafayette

      SOURCE OF TITLE:
      Book 2669, Page 304
      Recorder's Office Newton County, Georgia.

**(Continued on second page)**

**Old Republic National Title**          This Commitment is invalid unless          Issuing agency:
**Insurance Co.**                        the Insuring provisions and               Title First Agency, Inc.
                                         Schedules A and B are attached.           3650 Olentangy River Road
                                                                                   Ste 400
                                                                                   Columbus, OH 43214

ALTA CF (06/17/06)

GF No. 1508370

**Continuation of Schedule A**

Name and Address of Title Insurance Company:
**Old Republic National Title Insurance Co.**
**400 Second Avenue South**
**Minneapolis, MN   55401**

5.    The land referred to in this Commitment is described as follows:

All that tract or parcel of land lying and being in Land Lot 169 of the 10th District, Newton County, Georgia, being Lot 182, The Reserves at Lakewood Estates Subdivision, Unit Two, as per plat recorded in Plat Book 45, Pages 196-207, Newton County, Georgia records, which recorded plat is incorporated herein by this reference and made a part of this description.

**ALTA CF (06/17/06)   Old Republic National Title Insurance Co.**

GF No. 1508370

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE B  - SECTION I

Commitment No: **1508370**

Requirements:

1.  Mortgage from Cathryn Lafayette, with proper marital status and release of dower, if necessary, to GMAC Mortgage, LLC to secure $64,285.00.

2.  Cancellation of the mortgage(s) shown on Schedule B, Section 2.

3.  Cancellation of the lien(s) shown on Schedule B, Section 2.

4.  Pay unpaid taxes and assessments unless shown as paid:

    2015 1st Installment Taxes in the amount of $697.98 were Due on 10/20/2015 and are Paid
    2015 2nd Installment Taxes in the amount of $697.98 were Due on 12/20/2015 and are Paid
    Tax Parcel Identification:
       Tax Parcel No.: 0012E-00000-182-000
       Land: $16,000.00
       Improvements: $91,100.00
       Total: $107,100.00

**ALTA CF (06/17/06)   Old Republic National Title Insurance Co.**

GF No. 1508370

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE B - SECTION II

Commitment No: 1508370

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

### STANDARD EXCEPTIONS

1.  Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this commitment.

2.  Any facts, rights, interests, or claims that are not shown in the public records but that could be ascertained by an inspection of the land or by making inquiry of persons in possession of the land.

3.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the title including discrepancies, conflicts in boundary lines, shortage in area, or any other facts that would be disclosed by an accurate and complete land survey of the land, and that are not shown in the public records.   The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

4.  Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown in the public records.

5.  Rights of parties in possession of all or any part of the premises, including, but not limited to, easements, claims of easements or encumbrances that are not shown in the public records.

6.  The lien of real estate taxes or assessments imposed on the title by a governmental authority that are not shown as existing liens in the records of any taxing authority that levies taxes or assessments on real property or in the public records.

### SPECIAL EXCEPTIONS

7.  Federal Claim of Common Law Lien and Notice of Federal Common Law Lien Writ of Attachment on Real and Personal Property for the sum of $42,047,628.00 filed by Cathryn Lafayette, dated October 22, 2011 and filed for record October 25, 2011 in Book MS1, Page 666, Newton County Courts.

8.  Federal Claim of Common Law Lien and Notice of Federal Common Law Lien Writ of Attachment on Real and Personal Property for the sum of $225,000.00 filed by Cathryn Lafayette, dated October 22, 2011 and filed for record October 25, 2011 in Book MS1, Page 673, Newton County Courts.

9.  Mortgage from Cathryn Lafayette, to MERS as nominee for Lend America, dated November 26, 2008, filed for record December 10, 2008, and recorded in Book 2669, Page 305, Recorder's Office, Newton County, Georgia, to secure $178,146.00.   Assigned to The Bank of New York Mellon Trust Company, as FHA Qualified Trustee for RESCAP Liquidating Trust, recorded February 24, 2015 in Book 3303, Page 517, Recorder's Office, Newton County, Georgia.

ALTA CF (06/17/06)   Old Republic National Title Insurance Co.

GF No. 1508370

10. The lien of all taxes for the year 2016 and thereafter, but which are not yet due and payable.

11. Covenants, conditions and restrictions, if any appearing in the public records.

12. Any easements or servitudes in the public records.

13. Any lease, grant, exception or reservation of minerals or mineral rights appearing in the public records.

NOTE:   Pertaining to the covenants and restrictions, if any, described in Schedule B of this Commitment/Policy, the following is expressly omitted therefrom:   any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin unless and only to the extent that such covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or (b) related to handicap but does not discriminate against handicapped persons.   Any covenant and restriction, or any part thereof, omitted as described above shall in no event be construed as forming a part of this Commitment/Policy, Schedule B of this Commitment/Policy or as an existing covenant and restriction disclosed by the public records.

NOTE: No liability is assumed by Company for uncertified encumbrances and the purchase contract shall be binding unless the contract is silent or ambiguous.   If the contract is silent or ambiguous, the buyer assumes the risk.

ALTA CF (06/17/06)   Old Republic National Title Insurance Co.

****Please don't reply to this email address. Any email sent will go unnoticed****

If you need any additional assistance, please feel free to reach out to our Customer Care Center at (800) 746-2936 between Monday to Friday 8 AM to 9 PM ET, Saturday 8 AM to 5 PM ET, Sunday 9AM to 9 PM ET.

(image)

HELPING HOMEOWNERS IS WHAT WE DO! ™

Ocwen Loan Servicing, LLC

1661 Worthington Road, Suite 100

West Palm Beach, FL 33409

WWW.OCWEN.COM (link: http://www.ocwen.com/)

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. If the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

You are not answering the question that I sent to You. I said that You do not have a valid Lien hence no Interest nor the Authority to foreclose on my Property. At the origination of this Loan with Lend America which, is my Lender, I was on 11/26/2008 in First Lien position due to my Lien being in Superior Lien Position and that the Lien was not cleared at the time of the Loan which the record in Newton County Clerk's office does show. Today, I am still in First Lien Position and Superior Lien position which the Newton County Clerks' office does show. You have the copy of the Forensic Audit and Current Title work that were filed in Newton County Clerk's office. Your Personal Tile Company completed a Title that was Fraudulent because you did not show my Lien in Superior and First Lien Position. Ms. Tia Tatum from the Corporate FHA office informed you and Cyndee Rea on January 14, 2016, not to pursue a Foreclosure on my Property because there is not a Valid Lien. They also indicated to you that if you pursued a Foreclosure against my Property that you are knowingly committing Fraud and they will not pay you. Your actions have been reported to the United States Inspector General. Ms. Tia Tatum has asked you if they are in First Lien position and you sent her a Fraudulent Title completed by your own Title company showing you in First Lien Position that did not include my Lien that is filed in the Miscellaneous filings in Newton County. I also sent this information to GMAC more than 7 years ago and Ocwen in open Bankruptcy court less than 2 years ago. It was filed in US Bankruptcy Open Court that Ocwen Perjured themselves to a Federal Judge by stating that you were my Lender and in First Lien position in 2009 and Ocwen was currently my Lender and in First Lien position on date of US Bankruptcy court appearance in 2014.

----------Original Message:

From:    Ocwen_Emailing <Ocwen_Emailing@ocwen.com>

To:      "'lafayettemedical@yahoo.com'" <lafayettemedical@yahoo.com>

Date:    March 18, 2016 07:05:46 AM

Subject: OCWEN LOAN NO 602182943- VG

Greetings,

Thank you for contacting Ocwen Loan Servicing.

Attach you will find the copy of the requested document.



**Certified Forensic Loan Auditors**

## *CERTIFIED FORENSIC LOAN AUDITORS, LLC*
13101 West Washington Blvd., Suite 140, Los Angeles, CA 90066
Phone: 310-432-6304; Sales@CertifiedForensicLoanAuditors.com
www.CertifiedForensicLoanAuditors.com

# *PROPERTY*
# *SECURITIZATION ANALYSIS REPORT*[TM]

*Prepared for:*

## CATHRYN LAFAYETTE

*For Property Address*

**440 Milton Drive**
**Covington, GA 30016**

*Prepared on:*
**January 5, 2015**

Disclosure: You have engaged Certified Forensic Loan Auditors, LLC to examine your real estate documents. This information is not to be construed as legal advice or the practice of law, pursuant to *Business and Professions Code § 6125 et seq*, it is the intent of CFLA, its members, auditors and independent contractors, not to engage in activities that could be considered the practice of law by conduct exhibiting any of the following practices: "*...the doing and/or performing of services in a court of justice in any matter depending therein throughout the various stages and in conformity with the adopted rules of procedure. It includes legal advice and counsel and the preparation of legal instruments and contracts by which the legal rights are secured although such matter may or may not be depending in a court.*"

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



Certified Forensic Loan Auditors

# SECTION 1:   TRANSACTION DETAILS
## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
| --- | --- |
| CATHRYN LAFAYETTE | - |
| **CURRENT ADDRESS** | **SUBJECT ADDRESS** |
| 440 Milton Drive<br>Covington, GA 30016 | 440 Milton Drive<br>Covington, GA 30016 |

# SECTION 2:   SECURITIZATION
## SECURITIZATION PARTICIPANTS:

| DEED | DATE | NOTE | DATE |
| --- | --- | --- | --- |
| LEND AMERICA INC<br><br>MIN #1002862-2008222273-5 | NOVEMBER 6, 2008<br>(RECORDED DATE 11/26/08) | LEND AMERICA INC<br><br>Loan # 2008222273<br><br>FHA Case 09-16878 | NOVEMBER 6, 2008<br>(RECORDED DATE 11/26/08) |
| | | GINNIE MAE REMIC TRUST 2009-008 | CLOSING DATE:<br>February 27, 2009 |

The MORTGAGE and the Note have taken two distinctly different paths.   The MORTGAGE was never transferred. The $178,146.00 note may have been however pooled, sold, transferred with other loans and mortgages and this pool of loans and mortgages in this security offering of $953,178,508.

http://www.ginniemae.gov/doing_business_with_ginniemae/investor_resources/Prospectuses/ProspectusesLib/2009Feb20-008.pdf

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

# PARTIES/DEFENDANTS:

**Offering Circular Supplement**

**(To Multifamily Base Offering Circular dated April 1, 2008)**



# $953,178,508

## Government National Mortgage Association

# GINNIE MAE®

## Guaranteed REMIC Pass-Through Securities and MX Securities
## Ginnie Mae REMIC Trust 2009-008

# Goldman, Sachs & Co.

# Loop Capital Markets, LLC

**The date of this Offering Circular Supplement is February 20, 2009.**

The document is not available on the SEC web site. Following this section would normally be the "Assignment of Mortgage" type section of the Prospectus Supplement; but this security has no such verbiage. Furthermore, there is no pooling and servicing agreement (PSA) that is publically available. Thus, extracts of the "Conveyance of Loans" type section (normally Section 2.01) from any such PSA is not available.

http://www.ginniemae.gov/doing_business_with_ginniemae/investor_resources/Prospectuses/ProspectusesLib/2009Feb20-008.pdf

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015
-All Rights Reserved-



CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015
-All Rights Reserved-



**Certified Forensic Loan Auditors**

## PROSPECTUS SUPPLEMENT

Offering Circular Supplement
(To Base Offering Circular dated April 1, 2008)

 Ginnie Mae

# $953,178,508

# Government National Mortgage Association
# GINNIE MAE®

Guaranteed REMIC Pass-Through Securities
and MX Securities
Ginnie Mae REMIC Trust 2009-008

### The Securities

The Trust will issue the Classes of Securities listed on the front cover of this offering circular supplement.

### The Ginnie Mae Guaranty

Ginnie Mae will guarantee the timely payment of principal and interest on the securities. The Ginnie Mae Guaranty is backed by the full faith and credit of the United States of America.

### The Trust and its Assets

The Trust will own Ginnie Mae Certificates.

> The securities may not be suitable investments for you. You should consider carefully the risks of investing in them.
>
> See "Risk Factors" beginning on page S-9 which highlights some of these risks.

The Sponsor and the Co-Sponsor will offer the securities from time to time in negotiated transactions at varying prices. We expect the closing date to be February 27, 2009.

You should read the Base Offering Circular as well as this Supplement.

The securities are exempt from registration under the Securities Act of 1933 and are "exempted securities" under the Securities Exchange Act of 1934.

| Class of REMIC Securities | Original Principal Balance(2) | Interest Rate | Principal Type(3) | Interest Type(3) | CUSIP Number | Final Distribution Date(4) |
|---|---|---|---|---|---|---|
| **Security Group 1** | | | | | | |
| DA(1) | $ 63,133,250 | 5.00% | PAC/AD | FIX | 38374TDX0 | August 2035 |
| FA(1) | 53,632,720 | (5) | PT | FLT | 38374TDK7 | February 2039 |
| FB(1) | 74,933,709 | (5) | PT | FLT | 38374TDL5 | February 2039 |
| KD | 6,000,001 | 5.25 | PAC/AD | FIX | 38374TDM3 | February 2039 |
| PH(1) | 11,173,891 | (5) | PAC/AD | FLT | 38374TDN1 | August 2035 |
| PS(1) | 11,173,891 | (5) | NTL (PAC/AD) | INV/IO | 38374TDP6 | August 2035 |
| FZ | 20,319,429 | 5.25 | SUP | FIX/Z | 38374TDQ4 | February 2039 |
| SA(1) | 53,632,720 | (5) | NTL (PT) | INV/IO | 38374TDR2 | February 2039 |
| SB(1) | 74,933,709 | (5) | NTL (PT) | INV/IO | 38374TDS0 | February 2039 |
| **Security Group 2** | | | | | | |
| A(1) | 47,038,293 | 5.00 | SEQ | FIX | 38374TDT8 | November 2032 |
| B | 38,000,000 | 5.00 | SEQ | FIX | 38374TDU5 | February 2039 |
| **Security Group 3** | | | | | | |
| EC | 5,000,000 | 5.50 | PAC | FIX | 38374TDV3 | April 2035 |
| ED | 5,032,406 | 5.50 | PAC | FIX | 38374TDW1 | February 2039 |
| EI | 909,090 | 5.50 | NTL (PAC) | FIX/IO | 38374TDX9 | April 2035 |
| LA(1) | 144,000,429 | 5.00 | PAC | FIX | 38374TDY7 | April 2032 |
| LC(1) | 96,772,409 | 5.00 | PAC | FIX | 38374TDZ4 | December 2036 |
| LE(1) | 72,043,951 | 5.50 | PAC | FIX | 38374TEA8 | February 2039 |
| LI(1) | 21,894,348 | 5.50 | NTL (PAC) | FIX/IO | 38374TEB6 | December 2036 |
| YA | 80,221,040 | 5.50 | SCH/AD | FIX | 38374TEC4 | February 2039 |
| YZ | 50,000,000 | 5.50 | SUP | FIX/Z | 38374TED2 | February 2039 |
| **Security Group 4** | | | | | | |
| FE | 25,000,000 | (5) | PT | FLT | 38374TEE0 | February 2039 |
| FG | 50,000,000 | (5) | PT | FLT | 38374TEF7 | February 2039 |
| NA | 8,701,000 | 4.50 | SUP | FIX | 38374TEG5 | November 2038 |
| NB | 1,016,935 | 4.50 | SUP | FIX | 38374TEH3 | February 2039 |
| NC | 4,534,000 | 4.50 | PAC II | FIX | 38374TEJ9 | February 2039 |
| ND | 1,867,943 | 4.50 | PAC I | FIX | 38374TEK6 | April 2038 |
| NE | 3,101,000 | 4.50 | PAC I | FIX | 38374TEL4 | February 2039 |
| SE(1) | 50,000,000 | (5) | NTL (PT) | INV/IO | 38374TEM2 | February 2039 |
| SG(1) | 25,000,000 | (5) | NTL (PT) | INV/IO | 38374TEN0 | February 2039 |
| WA(1) | 30,481,122 | 4.50 | PAC I | FIX | 38374TEP5 | October 2037 |
| **Residual** | | | | | | |
| RR | 0 | 0.00 | NPR | NPR | 38374THM9 | February 2039 |

(1) These Securities may be exchanged for MX Securities described in Schedule I.
(2) Subject to increase as described under "Increase in Size" in this Supplement. The amount shown for each Notional Class (indicated by "NTL" under Principal Type) is its original Class Notional Balance and does not represent principal that will be paid.
(3) As defined under "Class Types" in Appendix I to the Base Offering Circular. The type of Class with which the Class Notional Balance of each Notional Class will be reduced is indicated in parentheses.
(4) See "Yield, Maturity and Prepayment Considerations — Final Distribution Date" in this Supplement.
(5) See "Terms Sheet — Interest Rates" in this Supplement.

## Goldman, Sachs & Co.          Loop Capital Markets, LLC

The date of this Offering Circular Supplement is February 20, 2009.

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

### TERMS SHEET

This terms sheet contains selected information for quick reference only. You should read this Supplement, particularly "Risk Factors," and each of the other documents listed under "Available Information."

**Sponsor:**   Goldman, Sachs & Co.

**Co-Sponsor:**   Loop Capital Markets, LLC

**Trustee:**   Wells Fargo Bank, N.A.

**Tax Administrator:** The Trustee

**Closing Date:**   February 27, 2009

**Distribution Dates:**   For the Group 1 and 4 Securities, the 16th day of each month or, if the 16th day is not a Business Day, the first Business Day thereafter, commencing in March 2009. For the Group 2 and 3 Securities, the 20th day of each month or, if the 20th day is not a Business Day, the first Business Day thereafter, commencing in March 2009.

**Trust Assets:**

| Trust Asset Group or Subgroup[1] | Trust Asset Type | Certificate Rate | Original Term To Maturity (in years) |
|---|---|---|---|
| 1A | Ginnie Mae I | 6.0% | 30 |
| 1B | Ginnie Mae I | 6.0% | 30 |
| 2 | Ginnie Mae II | 5.0% | 30 |
| 3 | Ginnie Mae II | 5.5% | 30 |
| 4A | Ginnie Mae I | 6.0% | 30 |
| 4B | Ginnie Mae I | 6.0% | 30 |

[1] The Group 1 and 4 Trust Assets consist of subgroups, Subgroup 1A, Subgroup 1B, Subgroup 4A and Subgroup 4B (each, a "Subgroup").

**Security Groups:** This series of Securities consists of multiple Security Groups (each, a "Group"), as shown on the front cover of this Supplement and on Schedule I to this Supplement. Payments on each Group will be based solely on payments on the Trust Asset Group with the same numerical designation.

S-3

http://www.ginniemae.gov/doing_business_with_ginniemae/investor_resources/Prospectuses/ProspectusesLib/2009Feb20-008.pdf

**CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015**
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

# SECTION 3:    FORECLOSURE

## Recorded Events on the Loan Including Foreclosure Issues and Securitization

| Recorded Chain of Mortgage Possession | | Chain of Note Possession | |
|---|---|---|---|
| **Date** | **Original Mortgage** | **Date** | **Note Holder** |
| November 26, 2008<br><br>Instrument # 2669.305<br><br>Official Records,<br>Newton County Georgia | CATHRYN LAFAYETTE<br>(Borrower)<br><br>LEND AMERICA INC<br>(Lender)<br><br>**MIN: 1002862-2008222273-5** | November 6, 2008<br>(Recorded date 11/26/08) | LEND AMERICA INC<br>Lender<br><br>Principal Amount: $178,146.00<br><br>**Loan #2008222273**<br><br>**FHA Case # 09-16878** |
| 08/07/2009, 09/08/2010,<br>11/10/2010, 10/05/2011,<br>04/04/2012, 05/09/2012<br><br>Instrument # Unknown<br><br>Official Records,<br>Newton County Georgia | *SIX (6)*<br><br>**NOTICES OF TRUSTEE'S SALE** | Closing Date:<br><br>February 27, 2009 | **GINNIE MAE REMIC**<br>**TRUST 2009-008**<br><br>Lender<br>Principal Amount:<br>$178,146.00 |
| September 14, 2011<br><br>Instrument # 2011.8019<br><br>Official Records,<br>Newton County Georgia | **ASSIGNMENT OF SECURITY**<br>**DEED**<br><br>*To: GMAC Mortgage, LLC.  Document*<br>*signed by Heather Harper for MERS*<br>*without disclosure of employment as*<br>*agent of Assignee* | | |
| October 14, 2011<br><br>Instrument # 2011.9126<br><br>Official Records,<br>Newton County Georgia | **ASSIGNMENT OF MORTGAGE #2**<br><br>*To: GMAC Mortgage, LLC.*<br><br>*Signed by GMAC Mortgage employees*<br>*Patricia Kelleher and Vickie Hinson for*<br>*MERS without disclosure of Assignee*<br>*role* | | |
| October 23, 2013<br><br>Instrument # 2013.3812<br><br>Official Records,<br>Newton County Georgia | **LIS PENDENS**<br><br>*released on 04/15/2014* | | |

*Only includes primary active loan.*
*Annotated Voluntary Lien Search included in Exhibit I.*

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

# REPORT SUMMARY

**Mortgage:**

- On November 6, 2008 (Recorded date 11/26/08), Debtor CATHRYN LAFAYETTE executed a negotiable promissory note and a security interest in the form of a MORTGAGE in the amount of $ 178,146.00.  This document was filed as document number 2669.305 in the Official Records of Newton County.  *The original lender of the promissory note is LEND AMERICA INC*
- *Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is not named as the payee of the note, but is named as acting solely as a "nominee" for the lender as the beneficiary of the security interest Security Deed.*

**Securitization (The Note):**

- The NOTE may have been sold, transferred, assigned and securitized into the GINNIE MAE REMIC TRUST 2009-008 with a Closing Date of February 27, 2009.

**SIX Notices of Trustee's Sale:**

- On 08/07/2009, 09/08/2010, 11/10/2010, 10/05/2011, 04/04/2012 and 05/09/2012, Six Notices of Trustee's Sale were recorded in the Official Records, Newton County with unknown instrument number.

**Assignment of Security Deed:**

- On September 14, 2011, an Assignment of Security Deed was recorded in the Official Records, Newton County as instrument number 2011.8019 to GMAC Mortgage, LLC. Document was signed by Heather Harper for Mortgage Electronic Registration Systems, Inc. without disclosure of US Bank employment in representing Assignee, not Assignor.  About two years had gone by since note was originated and examiner therefore recommends immediate production of the then notarized bill of sale; note endorsement; and verifiable proof of funds among LEND AMERICA INC; GMAC MTG LLC; the Government National Mortgage Association (Ginnie Mae); and any securitized trust into which loan may have been placed such as the qualified trust identified above.  Examiner considers this a document of impropriety requiring rescission for rightful foreclosure to take place until actual purchase by relevant parties is verified.

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

**Assignment of Mortgage:**

On October 14, 2011, an Assignment of Mortgage was recorded in the Official Records, Newton County as instrument number 2011.9126. GMAC employees Patricia Kelleher and Vickie Hickson stated they were MERS Assistant Secretaries without disclosure of Assignee role. Similar concerns as above are present with this document and subsequent foreclosure actions by GMAC Mortgage, LLC are dependent upon this invalid document.

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



Certified Forensic Loan Auditors

# ROBO SIGNING ANALYSIS AND FINDINGS

## ASSIGNMENT OF SECURITY DEED   Recorded 09/14/2011

**Heather Harper** signs for Mortgage Electronic Registration Systems, Inc., without disclosure of employment by US Bank and not MERS. This is an indication that US Bank attempted to assign the Mortgage to client GMAC Mortgage without an Assignor. This position of unilateral transfer is further strengthened by the fact that here is no evidence of verified proof of funds; a note endorsement; a bill of sale; a declaration of value; or transfer taxes as having been paid to Newton County, Washington "For Value Received".

1523 Piedmont Road NE, 5th Finance Center, Suite 300
Atlanta, GA 30305
STATE OF ___**Pennsylvania**___
COUNTY OF ___**Montgomery**___

File No. 09-16878 / FHA
MIN# 1002862-2008222273-5
Tel. 1-888-679-6377

### ASSIGNMENT OF SECURITY DEED

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. as nominee for Lend America, a New York Corporation, its successors and assigns (hereinafter referred to as "Assignor") hereby sells, assigns, transfers, sets over and conveys without recourse unto GMAC Mortgage, LLC (hereinafter referred to as "Assignee"), whose address is 1100 Virginia Drive Fort Washington, PA 19034, that certain Security Deed or Deed to Secure Debt executed by Cathryn LaFayette to Mortgage Electronic Registration Systems, Inc. as nominee for Lend America, its successors and assigns and dated November 26, 2008, recorded in Deed Book 2669, Page 305, Clerk's Office, Superior Court of Newton County, Georgia, together with the real property therein described, which has the property address of 440 Milton Drive, Covington, GA 30016; and also the indebtedness described in said Deed and secured thereby, having this day been transferred and assigned to the said Assignee together with all of Assignor's right, title and interest in and to the said Deed, the property therein described and the indebtedness secured; and the said Assignee is hereby subrogated to all the rights, powers, privileges and securities vested in Assignor under and by virtue of the aforesaid Security Deed or Deed to Secure Debt.

This Assignment of Security Deed is executed on this __7__ day of __September__, 20_11_.
Signed, sealed and delivered
in the presence of:

Mortgage Electronic Registration Systems, Inc. as nominee for Lend America, a New York Corporation, its successors and assigns

By: _Heather Harper_
Its:

By: _N. A_
Its:

SEAL
1999

Witness _Varinder Kaur_

Witness _Jacqueline Keeley_

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

**Heather Harper is noted as an employee of US Bank as noted in her personal profile at linkedin.com: She notes no employment by or involvement with MERS or LendAmerica.**



# Heather Harper

Senior Account Executive at US Bank

Greater Detroit Area | Banking

| | |
|---|---|
| Current | US Bank Home Mortgage |
| Previous | US Bank, Advanced Family Mortgage |

Send Heather InMail ▼

**301**
connections

in www.linkedin.com/pub/heather-harper/45/6ab/624

Background

Experience

**Account Executive**
US Bank Home Mortgage
February 2000 – Present (15 years)

**Underwriting Supervisor**
US Bank
February 2000 – May 2005 (5 years 4 months)

**USbank.**

**Loan Originator & Processor**
Advanced Family Mortgage
1997 – 2000 (3 years)

**https://www.linkedin.com/pub/heather-harper/45/6ab/624**

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

## ASSIGNMENT OF SECURITY DEED   Recorded 10/11/10

Following Assignment above recorded approximately four weeks earlier, GMAC Mortgage employees Patricia Kelleher and Vickie Hickson state they are Assistant Secretaries of MERS without disclosure of Assignee employment.  It is clear by these two Assignments that MERS has been rendered a non-entity in this case.  The signers have proven they believe or have been told they can sign for MERS without disclosure of their true employment or compensation rendered to their employers for instituting such foreclosure actions.  As in Assignment above, no evidence of a negotiated transfer is presented "for value received."

When Recorded Return to:
After: Ausley McMullen Foreclosure Services
McCurdy & Candler, LLC
1525 Piedmont Road NE, 5th Piedmont Center, Suite 303
Atlanta, GA 33235

STATE OF _____Iowa_____
COUNTY OF _____Blackhawk_____

≠06-02182943

File No. 09-16878 / FHA

MIN# 1002861-2008223373-5

Tel. 1-888-679-6377

### ASSIGNMENT OF SECURITY DEED

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. as nominee for Lend America, a New York Corporation, its successors and assigns (hereinafter referred to as "Assignor") hereby sells, assigns, transfers, sets over and conveys without recourse unto GMAC Mortgage, LLC (hereinafter referred to as "Assignee"), whose address is 1100 Virginia Drive Fort Washington, PA 19034, that certain Security Deed or Deed to Secure Debt executed by Cathryn LaFayette to Mortgage Electronic Registration Systems, Inc. as nominee for Lend America, its successors and assigns and dated November 26, 2008, recorded in Deed Book 2669, Page 305, Clerk's Office, Superior Court of Newton County, Georgia, together with the real property therein described, which has the property address of 440 Milton Drive, Covington, GA 30016; and also the indebtedness described in said Deed and secured thereby, having this day been transferred and assigned to the said Assignee together with all of Assignor's right, title and interest in and to the said Deed, the property therein described and the indebtedness secured; and the said Assignee is hereby subrogated to all the rights, powers, privileges and securities vested in Assignor under and by virtue of the aforesaid Security Deed or Deed to Secure Debt.

This Assignment of Security Deed is executed on this __10__ day of ___October___, 20__11__.
Signed, sealed and delivered
in the presence of:

Mortgage Electronic Registration Systems, Inc. as nominee for Lend America, a New York Corporation, its successors and assigns

By: _____
Its:  Patricia Kelleher, Assistant Secretary

By: _____
Its:  Vickie Hickson, Assistant Secretary

Witness Julie Wessely, Authorized Officer

Witness Patricia J. Gary, Authorized Officer

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

Sample documents evidencing GMAC employment of Patricia Kelleher

### (vi)    The Deutsche Quiet Title Action.

31.    On June 3, 2011, the Movant filed a *qui tam* action (the "**Deutsche Quiet Title Action**" and, together with the MERS Action , the Declaratory Judgment Action, the Haffey – GMACM Action, the Bluegrass Action, and the Foreclosure Action, the "**Actions**") on behalf of the Fayette County Clerk, captioned *Haffey v. Gentry Mech. Sys., Inc.*, Case No. 11-cv-188-JBC (E.D. Ky. June 3, 2011). This action names GMAC Mortgage employee, Patricia Kelleher, as a defendant.

http://www.kccllc.net/rescap/document/121202013012200000000004

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

RECORD AND RETURN TO:
GMAC MORTGAGE LLC
ATTN NICCI BROWN/CRT DEPT
3451 HAMMOND AVE
WATERLOO IA 50702
GMAC #: 7440723450/MIYASATO

## ASSIGNMENT OF MORTGAGE

For value received, NEW CENTURY MORTGAGE CORPORATION, 18400 VON KARMAN, SUITE 1000, IRVINE, CA 92612, hereby sells, assigns, and transfers to HOMECOMINGS FINANCIAL, LLC, ONE MERIDIAN CROSSING, MINNEAPOLIS, MN 55423, its successors and assigns all its right, title and interest to a certain Mortgage described as follows:

EXECUTION DATE:        10/19/2005
ORIGINAL BORROWER:     ALAN KIMO MIYASATO AND VALERIE MAE MIYASATO,
                       HUSBAND AND WIFE AS TENANTS BY THE ENTIRETY
ORIGINAL LENDER:       US FINANCIAL MORTGAGE CORP.
CITY & COUNTY:         HONOLULU
STATE:                 HAWAII

REGISTRAR OF LAND COURT:
RECORDING DATE:  10/31/2005
DOC NUMBER (S):  3347976
CERT NUMBER (S): 777,464

LEGAL DESCRIPTION:   SEE ATTACHED LEGAL DESCRIPTION

Signed December 2, 2009
NEW CENTURY MORTGAGE CORPORATION,
BY GMAC MORTGAGE, LLC. ATTORNEY IN FACT

*Patricia Kelleher*
PATRICIA KELLEHER
LIMITED SIGNING OFFICER

State of IOWA
County of BLACK HAWK

On this December 2, 2009, before me, a Notary Public in and for the above county and state, personally appeared PATRICIA KELLEHER, who being by me known to be the LIMITED SIGNING OFFICER of said company, that the seal affixed to the said instrument is the seal of said company by authority of its board of directors, and they acknowledged the execution of said instrument to be the voluntary act and deed of said company, by it voluntarily executed.

SALLY NELSON
Notarial Seal - Iowa
Commission # 222056
My Commission Expires 4-20-11

*Sally Nelson*
SALLY NELSON
Notary in and for said County and State
MY COMMISSION EXPIRES:  4/20/2011

Prepared by: NICCI BROWN, GMAC MORTGAGE LLC, 3451 HAMMOND AVE, WATERLOO IA 50702

Ms. Kelleher states her signature is "by GMAC Mortgage, LLC, as Attorney in Fact" for client New Century.

This is an admission of her true role. Such admission was not made in the case of Cathryn Lafayette loan.
https://doctelportal.files.wordpress.com/2013/04/patricia-kelleher-sally-nelson-miyasato-2005.pdf

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

Similarly, Vickie Hickson admits to GMAC Mortgage, LLC employment:

**2013006507   00021**
FORSYTH CO. NC FEE $26.00
PRESENTED & RECORDED
02-13-2013 10:34:30 AM
C. NORMAN HOLLEMAN
REGISTER OF DEEDS
BY: PATSY RUTH DAVIS
DPTY

**BK: RE 3106**
**PG: 1139-1139**

Prepared By: Rachael Stammer, GMAC MORTGAGE, LLC 3451 Hammond Ave, Waterloo, IA 50702 1-800-766-4622

_____

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Forsyth, North Carolina
SELLER'S SERVICING #:0640119794 "SPRINKLE"

Date of Assignment: February 7th, 2013
Assignor: GMAC MORTGAGE, LLC at 1100 VIRGINIA DRIVE, FT. WASHINGTON, PA 19034
Assignee: ALLY BANK, A UTAH STATE BANK at 6985 SOUTH UNION PARK CENTER, MIDVALE, UT 84047

Executed By: MARTHA KRYSTY SPRINKLE AND ALICE MCDOWELL, JOINT TENANCY To: MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR F&T MORTGAGE, A
DIVISION OF METROCITIES MORTGAGE, LLC, ITS SUCCESSORS AND/OR ASSIGNS
Date of Deed of Trust: 07/24/2008 Recorded: 07/29/2008 in Book/Reel/Liber: 2846 Page/Folio: 3430-3448 as
Instrument No.: 2008039130 in the County of Forsyth, State of North Carolina.

Property Address: 7325 RIDGE RD, TOBACCOVILLE, NC 27050

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of
Trust having an original principal sum of $84,800.00 with interest, secured thereby, with all moneys now owing or
that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust and the said property unto the said Assignee forever, subject to
the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the
day and year first above written:

*Assistant Vice-President

GMAC MORTGAGE, LLC
On 2-7-2013

By Vickie Hickson
Vickie Hickson, Assistant Vice-President

http://www.forsythdeeds.com/view_image.php?file=/img/nc/forsyth/re/003106/001139.tif&typ
e=pdf

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

Examiner recommends deposition of each signer, admission to their true employment, accounting support documents they reviewed (e.g. verifiable proof of funds tied to reconciled bank statements at time of transfer; purchase/sale agreements), company procedure manuals and seminars attended purporting to justify Assignees concealing their identity by posing as Assignors using the MERS or Attorney-in-Fact mechanisms.

AUTOS

# General Motors Bailout Cost Taxpayers $11.2 Billion

Sam Frizell  @Sam_Frizell   April 30, 2014

 

**The total cost of the government's bailout for General Motors has come to $11.2 billion after the Treasury sold the last of its assets in December**

U.S. taxpayers lost more than $11.2 billion as a result of the federal bailout of General Motors, according to a government report released Wednesday.

http://time.com/82953/general-motors-bailout-cost-taxpayers-11-2-billion/

The net cost to US taxpayers for the company known as General Motors was $11.2 billion according to Time Magazine. This company as shown above cares not whether it causes its own employees to bear false witness by stating they are Assignors without disclosing Assignee employment. The rich are being favored over the poor in judgment in this case.

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

GMAC Mortgage has furthermore cancelled the debt per issuance of the client-provided 2012 Corrected IRS Cancellation of Debt form 1099-C that that client must report as taxable income. Such charge-off may be considered as the note having been satisfied as box 4 debt description states that "Asset Transfer per Acquisitions Purchase Account #" without additional detail. Examiner calls for confirmation, and as necessary, deposition of GMAC Mortgage employees responsible for filing such forms with the IRS, that would have been performed by 2/29/12 using a 1096 transmittal. Determination must be made whether such statement was filed falsely and whether such asset transfer to an unknown party was made. In any case, a finding of document as valid is an admission by GMAC Mortgage of having cancelled the debt. The amount shown as $178,146 is for the amount of the original principal.

☐ VOID  ☑ CORRECTED

| CREDITOR'S name, street address, city, state, ZIP code, and telephone no. | 1 Date of identifiable event | OMB No. 1545-1424 | |
|---|---|---|---|
| Cothrop Lafayette WHITE 4740 Milican Drive Covington, LA 30016 | $311-26-11$ | 2012 | **Cancellation of Debt** |
| | **2** Amount of debt discharged $178,146.00 | Form **1099-C** | |
| | **3** Interest if included in box 2 $ | | |

| CREDITOR'S federal identification number | DEBTOR'S identification number | **4** Debt description | Copy C |
|---|---|---|---|
| 31-3127473 | 23169450 | Asset Transfer per Acquisition Purchase Account # | For Creditor |
| **DEBTOR'S name** GMAC Mortgage | | 002189943-700780075 | For Privacy Act and Paperwork Reduction Act Notice, see the 2012 General Instructions for Certain Information Returns |
| Street address (including apt. no.) 3451 Hammond Ave | | **5** Check here if the debtor was personally liable for repayment of the debt ▶ ☑ | |
| City, state, and ZIP code Waterloo, IA 50703 | | | |
| Account number (see instructions) 002189943-700780075 | **6** Identifiable event code | **7** Fair market value of property $178,146.00 | |

Form **1099-C**  Department of the Treasury - Internal Revenue Service

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

**American Banker** states that foreclosure support documents (e.g. Assignments of Mortgage) should be prepared at time of transfer instead of by bank employees claiming to represent lenders that no longer exist:



**AMERICAN BANKER** | Consumer Finance

Today's Paper | Magazine | iPad | Video                    Women in Banking | FinTech 100

MERGERS &     REGULATION   COMMUNITY   CONSUMER   BANK          BANKTHINK    SPECI
ACQUISITIONS  & REFORM     BANKING     FINANCE    TECHNOLOGY                 REPOR

by Kate Berry
AUG 31, 2011 5:47pm ET

🖶 Print   ✉ Email   🖨 Reprints

(15) Comments

🐦 Tweet  66   in Share  21   👍 Like  76   g +1

Some of the largest mortgage servicers are still fabricating documents that should have been signed years ago and submitting them as evidence to foreclose on homeowners.

The practice continues nearly a year after the companies were caught cutting corners in the robo-signing scandal and about six months after the industry began negotiating a settlement with state attorneys general investigating loan-servicing abuses.

Several dozen documents reviewed by *American Banker* show that as recently as August some of the largest U.S. banks, including Bank of America Corp., Wells Fargo & Co., Ally Financial Inc., and OneWest Financial Inc., were essentially backdating paperwork necessary to support their right to foreclose.

Some of documents reviewed by *American Banker* included signatures by current bank employees claiming to represent lenders that no longer exist.

**RELATED LINKS**

U.S. Bank Stands Out as a Mortgage Bond Trustee with Teeth

Robo-Signing Settlement Needs to Go All the Way

Are the State AG Mortgage Settlement Talks Falling Apart?

N.Y. AG Moves to Intervene in B of A-Bondholder Settlement

**RELATED GRAPHIC**

🔍 Enlarge This Image

http://www.americanbanker.com/issues/176_170/robo-signing-foreclosure-mortgage-assignments-1041741-1.html

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

# BLOOMBERG SEARCH SECTION

On **January 5, 2015**, I researched the Bloomberg online Database at the request of **Certified Forensic Loan Auditors, LLC** on behalf of **Cathryn Lafayette** whose property address is noted herein above. The Loan Level Data search conducted using Bloomberg's terminal did not reveal matching characteristics based on Original Amount: **$178,146.00**; Origination Date: **November 6, 2008 (Recorded date 11/26/08)**; Location of Property: **GA**; Property Type: **Single Family Residence**; Occupancy: **Owner Occupied**; Zip Code **30016**. Examiner did, however, locate a REMIC TRUST that matches the characteristics for securitizing this loan, namely the **GINNIE MAE REMIC TRUST 2009-008** issued February 27, 2009.

This is also Federal Housing Administration (FHA) loan. Most of the loans Ginnie Mae insures are FHA or Veterans Administration (VA) loans. Ginnie Mae is part of the Federal Government within the U.S. Department of Housing and Urban Development (HUD). GINNIE MAE guarantees principal and interest of the securitized trusts that it formed. This is an indication that the loan is securitized with Ginnie Mae as the sponsor of the mortgage backed securities (MBS) mortgage pool. As with Fannie Mae and Freddie Mac, loan level detail is not available for Ginnie Mae MBS within Bloomberg and prospectuses and related investor information is not filed with the Securities and Exchange Commission.
http://www.ginniemae.gov/about/about.asp?Section=About

**Although LEND AMERICA INC originated the loan, any subsequent purchaser may not have properly endorsed the subject note nor perfected the security interest in the note pursuant to the GEORGIA Uniform Commercial Code. There is no known connection between the <u>original lender</u> and GMAC Mortgage, LLC.**

**Identification of exact Ginnie Mae securitized or corporate portfolio may be gotten through a Qualified Written Request, a Request for Information under Regulations X or Z, voluntary lender disclosure, a Freedom of Information Act request as applicable, or discovery through litigation.**

Screen shots of this trust from the Bloomberg System follow:



**Certified Forensic Loan Auditors**

## DESCRIPTION OF SECURITY FROM BLOOMBERG

```
◄ ► Analyze Agency CMO Menu ⚹ GNR 2009-8 NE Mtge DES          Message ☆ 📁 🗐 ⚙ ?
GNR 2009-8 NE      108-21³₄ /109-05⁵₈  CUSIP 38374TEL4    Yield 3.092/3.016
As of 02 Jan  Prepay 323PSA  WAL 7.09 Collateral 100.0% GNSF  6%         BVAL
GNR 2009-8 NE Mtge          99 Feedback                        Security Description
CUSIP 38374TEL4  6.500(281)73   GNSF 6 S         95 Buy      96 Sell
   1) Bond Summary       2) Group Summary       3) Deal Summary      4) Comments
Issuer  GOVERNMENT NATIONAL MORTGAGE ASSOCIATION            5) Prospectus
Series  2009-8    Class NE   Maturity 02/16/2039  ISIN   US38374TEL44  6) Lead Mgr GS
7) Class Description PAC-1(11)                  BBGID  BBG000SFHCR3  8) Trustee  WFB
Current (Dec 2014)        Original Issue          Payment Details    Additional Info
Balance      3,100,000   Balance USD  3,100,000  Next Pay  01/16/2015 TRACE Eligible
Factor    1.000000000   WAL  20.0Yr @ 200PSA  Rcd Date  12/31/2014
Coupon          4.50%   1st Coupon      4.50%  Pay Date        16th
Beg Accrue  12/01/2014  1st Payment  03/16/2009  Frequency    Monthly
End Accrue  12/31/2014  1st Settle   02/27/2009  Pay Delay    15 Days
Class/Grp Pct      19%  Dated Date   02/01/2009  Day Count    30/360
  [ No Band  Dec2014 ]  PX           02/20/2009  Call  1% cleanup call  FFIEC    Fail
                        Class/Grp Pct      2.5%                Min Size  1,000
                        Collar     [ 100 250 ]                Incr         1
```

```
9) Historical Paydown (CPD)                                        PSA  CPR
      Jan15  Dec  Nov  Oct  Sep  Aug  Jul  Jun  May  Apr  Mar Feb14 1m  259 15.6
PSA     -   259  537  464  417  176  303  312  361  478  581  482 3m  426 25.5
CPR     -  15.6 32.2 27.9 25.0 10.6 18.2 18.7 21.7 28.7 34.9 29.0 6m  365 21.9
Fct     -  1.00 1.00 1.00 1.00 1.00 1.00 1.00 1.00 1.00 1.00 1.00 12m 424 25.5
Cpn     -  4.50 4.50 4.50 4.50 4.50 4.50 4.50 4.50 4.50 4.50 4.50 Life 557 28.4
```

## DEAL DESCRIPTION

```
◄ ► Analyze Agency CMO Menu ⚹ GNR 2009-8 NE Mtge DES          Message ☆ 📁 🗐 ⚙ ?
GNR 2009-8 NE      108-21³₄ /109-05⁵₈  CUSIP 38374TEL4    Yield 3.092/3.016
As of 02 Jan  Prepay 323PSA  WAL 7.09 Collateral 100.0% GNSF  6%         BVAL
GNR 2009-8 NE Mtge          99 Feedback                        Security Description
CUSIP 38374TEL4  6.500(281)73   GNSF 6 S         95 Buy      96 Sell
   1) Bond Summary       2) Group Summary       3) Deal Summary      4) Comments
Issuer  GOVERNMENT NATIONAL MORTGAGE ASSOCIATION            5) Prospectus
Series  2009-8    5) Collateral   143 Pools: 60% GNSF 5.77 S    Group  ALL collateral
Deal (Dec 2014)          Original Issue            Collat PSA  CPR   60% GNSF 5.77 S
Balance    160,746,198  Balance USD  953,199,513  1 Month  278  16.7     -      -
Net Cpn        5.766%   Net Cpn        5.682%  3 Month  369  22.1     -      -
WAC            6.25%    WAC            6.163%  6 Month  373  22.4     -      -
WAM   22:11  275 mo    WAM   29:4  352 mo  12 Month 392  23.5     -      -
Age    6:4   76 mo     Age    0:7   7 mo   Life     478  25.2     -      -
Next Pay       MIXED   1st Pmt        MIXED  Collateral        Payment Details
Rcd Date  12/31/2014   1st Settle  02/27/2009  Country    US  Frequency   Monthly
B.Median               PX                                     Pay Date    Mixed
PAC  66.05%  SUP  0%   PAC  61.66%  SUP  8.4%                 Pay Delay   Mixed
Beg Accrue     MIXED   Dated Date     MIXED                   Day Count   30/360
```

```
9) Historical Paydown for Group ALL collateral                  10) Buyout (SEV)
    Dec14 Nov  Oct  Sep  Aug  Jul  Jun  May  Apr  Mar  Feb Jan14    VPR  Buyout
PSA   278  402  422  360  376  393  496  378  428  356  413  387 1m   -   6.03
CPR  16.7 24.1 25.3 21.6 22.6 23.6 29.8 22.7 25.7 21.4 24.8 23.2 3m   -   5.65
WAM   275  276  277  278  279  280  281  282  283  285  286  287 6m   -   5.66
WAC  6.25 6.25 6.25 6.25 6.24 6.24 6.24 6.24 6.24 6.24 6.24 6.24 12m  -   6.41
```

CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015
-All Rights Reserved-



**Certified Forensic Loan Auditors**

## STRUCTURED FINANCE NOTES SCREEN
### Lists the primary parties to the securitization transaction

```
◄ ►  Description Menu ▼  GNR 2009-8 NE Mtge ▼  SFNS ▼                    · Message  ☆ ⌂ 🖹 ⚙ ?
  <HELP> for explanation, <MENU> for similar functions.

  95) Documents ▾                                                    Structured Finance Notes
  2I) Related Parties
  GNR 2009-8
  Underwriter
    Lead Manager      Goldman Sachs & Co


  Servicer                                    Trustee
                                              Wells Fargo Bank
                                              Paying Agent



  Originator/Seller              Deal%         Asset Manager

                                              Swap Counterparty
```

### Trust shows an issue date of 02/27/2009

```
◄ ►  Description Menu ▼  GNR 2009-8 NE Mtge ▼  RCHG ▼                    Message  ☆ ⌂ 🖹 ⚙ ?
  <HELP> for explanation, <MENU> for similar functions.
No ratings are recorded for this security
GNR 2009-8 NE Mtge                   1) Setup Alert                        Ratings History
CUSIP  38374TEL4                                  Coupon       4.5%
CMO    PAC-1(11)                                  Maturity Date  2/16/2039
                                                  Issue Date     2/27/2009
          No history available                    Agencies
                                                  ☐ Standard & Poors  ☐ Moody's    ☐ Other
                                                  ☐ Fitch             ☐ DBRS
                                                  ☐ KBRA              ☐ Morningstar
Agency                       Rating Type         Rating                    Effective Date
```

CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015
-All Rights Reserved-



**Certified Forensic Loan Auditors**

## VIEW ALL LOAN CLASSES SCREEN
### Shows the splitting of the investment trustinto separate investment classes
### (first 19 of 100 classes shown)

| | Structure Menu ⌄ | GNR 2009-8 NE Mtge ▾ | VAC ▾ | | | Message ☆ 📥 🗐 ⚙ ? |

VAC

\<Menu> for series list

99) Options   ▾                                                                Page 1/6            View All Classes

GNR 2009-8  GOVERNMENT NATIONAL MORTGAGE ASSOCIATION                                                    100 Classes

Template  Agency  ⌄

| | CF Class | Orig(000) | Cpn | OWAL | Factor | Cusip | Description | Group Des |
|---|---|---|---|---|---|---|---|---|
| 1) | ÷ DA | 63,135 | 3.000 | 4.10 | 0.2686 | 38374TDJ0 | AD, PAC(11) | 1: 30YR/6.0/GNMA/G1 |
| 2) | ÷ KD | 6,800 | 5.250 | 14.79 | 1.0000 | 38374TDM3 | AD, PAC(11) | 1: 30YR/6.0/GNMA/G1 |
| 3) | ÷ PF | 81,174 | 0.861 | 4.10 | 0.2686 | 38374TDN1 | FLT, AD, PAC(11) | 1: 30YR/6.0/GNMA/G1 |
| 4) | ÷ PS | 81,174 | 6.139 | 4.10 | 0.2686 | 38374TDP6 | IO, INV, NTL, AD, PAC | 1: 30YR/6.0/GNMA/G1 |
| 5) | Pd PZ | 20,319 | 5.250 | 6.59 | 0.0000 | 38374TDQ4 | Z, SUP | 1: 30YR/6.0/GNMA/G1 |
| 6) | Pd A | 47,038 | 5.000 | 2.35 | 0.0000 | 38374TDT8 | SEQ | 2: 30YR/5.0/GNMA2/G2 |
| 7) | ÷ B | 30,000 | 5.000 | 9.28 | 0.3517 | 38374TDU5 | SEQ | 2: 30YR/5.0/GNMA2/G2 |
| 8) | Pd EC | 5,000 | 4.500 | 3.99 | 0.0000 | 38374TDV3 | PAC(11) | 3: 30YR/5.5/GNMA2/G3 |
| 9) | ÷ ED | 3,032 | 5.500 | 12.94 | 0.4462 | 38374TDW1 | PAC(11) | 3: 30YR/5.5/GNMA2/G3 |
| 10) | Pd EI | 909 | 5.500 | 3.99 | 0.0000 | 38374TDX9 | IO, NTL, PAC | 3: 30YR/5.5/GNMA2/G3 |
| 11) | Pd LA | 144,065 | 5.000 | 2.99 | 0.0000 | 38374TDY7 | PAC(11) | 3: 30YR/5.5/GNMA2/G3 |
| 12) | Pd LC | 96,772 | 5.000 | 7.97 | 0.0000 | 38374TDZ4 | PAC(11) | 3: 30YR/5.5/GNMA2/G3 |
| 13) | ÷ LE | 72,049 | 5.500 | 15.31 | 0.7315 | 38374TEA8 | PAC(11) | 3: 30YR/5.5/GNMA2/G3 |
| 14) | Pd LI | 21,894 | 5.500 | 4.99 | 0.0000 | 38374TEB6 | IO, NTL, PAC | 3: 30YR/5.5/GNMA2/G3 |
| 15) | Pd YA | 80,221 | 5.500 | 2.18 | 0.0000 | 38374TEC4 | AD, SCH | 3: 30YR/5.5/GNMA2/G3 |
| 16) | Pd YZ | 50,000 | 5.500 | 12.17 | 0.0000 | 38374TED2 | Z, SUP | 3: 30YR/5.5/GNMA2/G3 |
| 17) | Pd NA | 8,701 | 4.500 | 6.90 | 0.0000 | 38374TEG5 | SUP | 4: 30YR/6.0/GNMA/G4 |
| 18) | Pd NB | 1,017 | 4.500 | 24.51 | 0.0000 | 38374TEH3 | SUP | 4: 30YR/6.0/GNMA/G4 |
| 19) | Pd NC | 4,834 | 4.500 | 3.65 | 0.0000 | 38374TEJ9 | PAC-2(22) | 4: 30YR/6.0/GNMA/G4 |

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

## COLLATERAL COMPOSITION SCREENS



*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) ANALYSIS

- The Mortgage shows a MIN number of 1002862-2008222273-5 and the MERS SERVICER ID website https://www.mers-serviceid.org/sis/search indicates that the loan is serviced by GMAC Mortgage, LLC and also shown as the stated investor.

**MERS ServicerID**
www.mers-serviceid.org

**Process Loans, Not Paperwork!™**

---

**1 record matched your search:**

Need Help?

MIN: **1002862-2008222273-5**          Note Date: **11/26/2008**          MIN Status: **Inactive**

Servicer:   GMAC Mortgage, LLC                                        Phone: **(800) 766-4622**
           **fort washington, PA**

If you are a borrower on this loan, you can click here to enter additional information and display the investor name.

---

Return to Search

---

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to www.mersinc.org

Copyright © 2012 by MERSCORP Holdings, Inc.

---

Select borrower type and enter borrower information to see Investor for MIN 1002862-2008222273-5.

◉ **Investor for Individual Borrower**

> *Your entries may be either upper or lower case.*
> *Fields marked ★ are required.*
>
> **Last Name:** lafayette                                    ★
> **SSN:** [    ] - [    ] - [    ]  ★
>
> ☐ *By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer. ★*
>
> [ Submit ]

○ **Investor for Corporation/Non-Person Entity Borrower**

---

Servicer:   GMAC Mortgage, LLC                                        Phone: **(800) 766-4622**
           **fort washington, PA**

Investor:   **GMAC Mortgage, LLC**

---

# SECURITIZING A LOAN

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

ξ For traditional lending prior to Securitization, the original Deed recording was usually the only recorded document in the Chain of Title. That is because banks kept the loans, and did not sell the loan, hence, only the original recording being present in the banks name.

The advent of Securitization, especially through "Private Investors" and not Fannie Mae or Freddie Mac involved an entirely new process in mortgage lending. With Securitization, the Notes and Deeds were sold once, twice, three times or more. Using the traditional model would involve recording new Assignments of the Deed and Note as each transfer of the Note or Deed of Trust occurred. Obviously, this required time and money for each recording.

(The selling or transferring of the Note is not to be confused with the selling of Servicing Rights, which is simply the right to collect payment on the Note, and keep a small portion of the payment for Servicing Fees. Usually, when a homeowner states that their loan was sold, they are referring to Servicing Rights.)

ξ Securitizing a Loan

Securitizing a loan is the process of selling a loan to Wall Street and private investors. it is a method with many issues to be considered. The methodology of securitizing a loan generally followed these steps:

- A Wall Street firm would approach other entities about issuing a "Series of Bonds" for sale to investors and would come to an agreement. In other words, the WallStreet firm "pre-sold" the bonds.

- The Wall Street firm would approach a lender and usually offer them a warehouse Line of Credit. The Warehouse Credit Line would be used to fund the loan. The Warehouse Line would be covered by restrictions resulting from the initial Pooling & Servicing Agreement Guidelines and Mortgage Loan Purchase Agreement. These documents outlined the procedures for the creation of the loans and the administering of the loans prior to, and after, the sale of the loans to Wall Street.

- The Lender, with the guidelines, essentially went out and found "buyers" for the loans, people who fit the general characteristics of the Purchase Agreement. (Guidelines were very general and most people could qualify." The Lender would execute the loan and fund it, collecting payments until there were enough loansfunded to sell to the Wall Street firm who could then issue the bonds.

- Once the necessary loans were funded, the lender would then sell the loans to the "Sponsor", usually either a subsidiary of the Wall Street firm, of a specially created Corporation of the lender. At this point, the loans are separated into "tranches" of loans, where they will be eventually turned into bonds.

- Next, the loans were "sold" to the "Depositor." This was a "Special Purpose Vehicle"

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

designed with one purpose in mind. That was to create a "bankruptcy remote vehicle" where the lender or other entities are protected from what might happen to the loans, and/or the loans are "protected" from the lender. The "Depositor" would be, once again, created by the Wall Street firm or the lender.

- Then the "Depositor" would place the loans into the Issuing Entity, which is another entity created solely for the purpose of selling the bonds.

- Finally, the bonds would be sold, with a Trustee appointed to ensure that the bondholders received their monthly payments.

ξ LEND AMERICA INC was a "correspondent lender" that originated mortgage loans. These loans, in turn, may have been sold and transferred into a "federally-approved securitization" trust named the GINNIE MAE REMIC TRUST 2009-008.

ξ The Note and Deed have taken two distinctly different paths. The Note may have been securitized into the GINNIE MAE REMIC TRUST 2009-008.

ξ The loan was originally made to LEND AMERICA INC and may have been sold and transferred to GINNIE MAE REMIC TRUST 2009-008. There is no record of Assignments to either a Sponsor or Depositor as may be required by a Pooling and Servicing Agreement.

In Carpenter v. Longan 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity."

An obligation can exist with or without security. With no security, the obligation is unsecured but still valid. A security interest, however, cannot exist without an underlying existing obligation. It is impossible to define security apart from its relationship to the promise or obligation it secures. The obligation and the security are commonly drafted as separate documents – typically a promissory note and a Mortgage. If the creditor transfers the note but not the Mortgage, the transferee receives a secured note; the security follows the note, legally if not physically. If the transferee is given the Mortgage without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw 91952) 39 C.2d 179, 246 P.2d 23; Polhemus v. Trainer (1866) 30C 685).

"Where the mortgagee has "transferred" only the mortgage, the transaction is a nullity and his "assignee" having received no interest in the underlying debt or obligation, has a worthless piece of paper (4 Richard R. Powell), Powell on Real Property, § 37.27 [2] (2000).

By statute, assignment of the mortgage carries with it the assignment of the debt. . . Indeed, in the event that a mortgage loan somehow separates interests of the note and the Mortgage, with the Mortgage lying with some independent entity, the mortgage may become unenforceable. The practical effect of splitting the Mortgage from the promissory note is to make it impossible

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



Certified Forensic Loan Auditors

for the holder of the note to foreclose, unless the holder of the Mortgage is the agent of the holder of the note. Without the agency relationship, the person holding only the trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. The mortgage loan becomes ineffectual when the note holder did not also hold the Mortgage."

## Securitization Summary:

1.      Generally, if the Deed of Trust and the Note are not together with the same entity, there can be no legal enforcement of the Note. The deed of trust enforces the Note and provides the capability for the lender to foreclose on the property. Thus, if the Deed of Trust and the Note are separated, foreclosure legally cannot occur. The Note cannot be enforced by the Deed of Trust if each contains a different mortgagee/beneficiary; and, if the Deed of trust is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowners' property.

2.      No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. the NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void ab initio.  This is an indication that either the Trust has either voided its intended Tax Free Status, or the asset is not in fact owned by it.

3.      In the event that the loan was sold, pooled and turned into a security, such event would indicate that the alleged holder can no longer claim that it is a real party of interest, as the original lender has been paid in full.

4.      Further said, once the Note was converted into a stock, or stock equivalent, that event would indicate that the Note is no longer a Note. If both the Note and the stock, or stock equivalent, exist at the same time, that is known as double dipping. Double dipping is a form of securities fraud.

5.      Once a loan has been securitized, which the aforementioned loan may have been done many times, that event would indicate that the loan forever loses its security component (i.e., the Mortgage), and the right to foreclose through the Mortgage is forever lost.

6.      The findings of this report indicate that the Promissory Note may have been converted into a stock as a permanent fixture. As a stock it is governed as a stock under the rules and regulations of the SEC; hence, the requirement for the filings of the registration statements, pooling and servicing agreements, form 424B-5, et.al. There is no evidence on Record to indicate that the Mortgage was ever transferred concurrently with the purported legal transfer of the Note, such that the Mortgage and Note has been irrevocably separated, thus making a nullity out of the purported security in a property, as claimed.

CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015
-All Rights Reserved-



**Certified Forensic Loan Auditors**

7.  Careful review and examination reveals that this may have been a securitized loan. The Assignment of Deed of Trust pretended to be an A to D transaction when in fact the foreclosing party was hiding the A to B, B to C, and C to D facts of true sales, where A is the original lender, B the sponsor/seller, C any bankruptcy-remote depositor, and D, the issuing mortgage-backed securities trust. They also hid the legal SEC filings, governing the transaction according to our findings. But to be controlled by those SEC filings, the true original loan Note and Deed of Trust had to be provided by the Document Custodian certified to have been in possession of them by them on or about February 27, 2009. Because it was not, the claim of ownership by the Trust cannot be substantiated and the loan servicing rights not established at law by agreement. I supply this report as written testimony and am available for oral testimony.

## DISCLAIMER

This report was based exclusively on the documentation provided. It also required that we make reasonable assumptions respecting disclosures and certain loan terms that, if erroneous, may result in material differences between our findings and the loan's actual compliance with applicable regulatory requirements. While we believe that our assumptions provide a reasonable basis for the review results, we make no representations or warranties respecting the appropriateness of our assumptions, the completeness of the information considered, or the accuracy of the findings. The contents of this report are being provided with the understanding that we are not providing legal advice, nor do we have any relationship, contractual or otherwise, with anyone other than the recipient. We do not, in providing this report, accept or assume responsibility for any other purpose.



Certified Forensic Loan Auditors

## AFFIDAVIT OF FACTS

**STATE OF CALIFORNIA** )

) sv.: **AFFIDAVIT**

**COUNTY OF LOS ANGELES** )

**RE: Cathryn Lafayette**

I, MICHAEL CARRIGAN, a citizen of the United States and the State of California over the age of 21 years, and declare as follows, under penalty of perjury that the facts stated herein are true, correct and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein:

1. That I am a subscriber of the Bloomberg Professional Service, certified and licensed to use such service. I have completed the required training and engaged in continuing education with Bloomberg – both online and at Bloomberg live training events, to stay abreast with Bloomberg's latest progress and developments. I have the requisite knowledge and the trained ability to navigate and perform effective searches on the on the Bloomberg terminal.

2. I am a Certified Mortgage Securitization Auditor and my qualifications, expertise and experience provide me with the background necessary to certify the audit services and to be qualified as an expert in this field. I have produced approximately two thousand five hundred Securitized Analysis Reports in residential real estate mortgage investigation in 45 states, the District of Columbia and Puerto Rico, have testified as an expert witness, and have trained auditors in California, Florida, Nevada, New York, New Jersey and Virginia and via the Internet in webinar format. I have a Bachelor's degree with a concentration in Accounting in Business Administration from California State University, Fullerton; a Master's in Business Administration from the UCLA Anderson School of Management; and have had formal training and career experience in accounting; financial reporting; internal control; SEC reporting; financial planning and analysis; financial forecasting; initial public and secondary offerings; corporate tax; corporate finance; investment management; equity, fixed income and derivative securities; credit analysis; asset valuation; ethics; investment advisory services including Series 7 and 66 licensing; real estate investment; real estate finance; real estate principles; redevelopment; government accounting; and procurement.

3. I have the trained skills and qualifications to navigate and perform searches on the Bloomberg terminal in regards to the automated tracking and determination of mortgage and loan related documents and information.

4. The contents of this report are factual, but it is provided for information purposes only and is not to be construed as "legal advice."[1]

---

[1] The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the contents of this report and how to properly use it.

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

5.    On January 5, 2015, I researched the Bloomberg online Database at the request of CATHRYN LAFAYETTE whose property address is 440 Milton Drive, Covington, GA 30016.

6.    Based on the information I was provided, CATHRYN LAFAYETTE signed a Promissory Note in favor of LEND AMERICA INC on November 6, 2008 (Recorded date 11/26/08).

7.    The loan was not identified in any publically reporting trust. A qualifying trust formed shortly after the execution of the loan on November 6, 2008 (Recorded date 11/26/08) is the GINNIE MAE REMIC TRUST 2009-008 with a closing date of February 27, 2009. The **underwriters** are Goldman, Sachs & Co. and Loop Capital Markets LLC, the Sponsor is Ginnie Mae and **Trustee** is Wells Fargo Bank, NA. There is no known connection between the original lender, LEND AMERICA INC and GMAC Mortgage, LLC, to whom the <u>Assignment of Mortgage was assigned</u>.

By:

_____

Michael Carrigan
Certified Mortgage Securitization Auditor / Bloomberg Specialist

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

**STATE OF CALIFORNIA** )
) sv: **ACKNOWLEDGEMENT**
**COUNTY OF LOS ANGELES** )


On _____, 2015 before me, _____
(Notary Public)

personally appeared **MICHAEL CARRIGAN**, who proved to me on the basis of satisfactory evidence to be the man whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument under the penalty of perjury.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____ (Seal)


My commission Expires _____

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

# EXHIBIT I

## Voluntary Lien Report

**Transaction Details for
440 MILTON DR, COVINGTON GA 30016
APN: 0012E-00000-182-000**

**History Record #: 1**
*Foreclosure:*
Recording Date: 04/15/2014
Document Number: 2014.1252
RESCISSION OF LIS
Document Type: PENDENS/NOTICE OF
DEFAULT/NOTICE OF SALE
Trustee: LAFAYETTE CATHRYN
Title Company:
Defendant: GMAC MTG LLC

Filing Date:
Orig Recording Date: 10/23/2013

Orig Doc Number: 173-000324

Trustee Phone:
Unpaid Balance:

**History Record #: 2**
*Foreclosure:*
Recording Date: 10/23/2013
Document Number: 2013.3812
Document Type: LIS PENDENS
Trustee:
Title Company:
Defendant1: GMAC MTG LLC
Defendant2: OWEN LOAN SERVICING LLC

Filing Date: 10/21/2013
Orig Recording Date:
Orig Doc Number:
Trustee Phone:
Unpaid Balance:

**History Record #: 3**
*Foreclosure:*
Recording Date: 05/09/2012
Document Number:
Document Type: NOTICE OF SALE
Trustee: MCCURDY & CANDLER LLC
Title Company:
Defendant: LAFAYETTE CATHRYN

Filing Date:
Orig Recording Date: 11/26/2008
Orig Doc Number: 2669-000305
Trustee Phone:
Unpaid Balance:

**History Record #: 4**
*Foreclosure:*
Recording Date: 04/04/2012
Document Number:
Document Type: NOTICE OF SALE
Trustee: MCCURDY & CANDLER LLC
Title Company:
Defendant: LAFAYETTE CATHRYN

Filing Date:
Orig Recording Date: 11/26/2008
Orig Doc Number: 2669-000305
Trustee Phone:
Unpaid Balance:

**History Record #: 5**
*Assignment:*
Recording Date: 10/14/2011
Document Number: 2011.9126
Document Type: ASSIGNMENT
New Lender: GMAC MTG LLC
Previous Lender: LEND AMERICA
Borrower: LAFAYETTE CATHRYN

Orig Recording Date: 11/26/2008
Orig Doc Number: 2669-000305

**History Record #: 6**
*Foreclosure:*
Recording Date: 10/05/2011
Document Number:
Document Type: NOTICE OF SALE
Trustee: MCCURDY & CANDLER LLC
Title Company:
Defendant: LAFAYETTE CATHRYN

Filing Date:
Orig Recording Date: 11/26/2008
Orig Doc Number: 2669-000305
Trustee Phone:
Unpaid Balance:

**History Record #: 7**
*Assignment:*
Recording Date: 09/14/2011
Document Number: 2011.8019

Orig Recording Date: 11/26/2008
Orig Doc Number: 2669-000305

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



## Certified Forensic Loan Auditors

Document Type: **ASSIGNMENT**
New Lender: **GMAC MTG LLC**
Previous Lender: **LEND AMERICA**
Borrower: **LAFAYETTE CATHRYN**

**History Record #: 8**
*Foreclosure:*
Recording Date: **11/10/2010**
Document Number:
Document Type: **NOTICE OF SALE**
Trustee: **MCCURDY & CANDLER LLC**
Title Company:
Defendant: **LAFAYETTE CATHRYN**

Filing Date:
Orig Recording Date: **11/26/2008**
Orig Doc Number: **2669-000305**
Trustee Phone:
Unpaid Balance:

**History Record #: 9**
*Foreclosure:*
Recording Date: **09/08/2010**
Document Number:
Document Type: **NOTICE OF SALE**
Trustee: **MCCURDY & CANDLER LLC**
Title Company:
Defendant: **LAFAYETTE CATHRYN**

Filing Date:
Orig Recording Date: **11/26/2008**
Orig Doc Number: **2669-000305**
Trustee Phone:
Unpaid Balance:

**History Record #: 10**
*Foreclosure:*
Recording Date: **08/07/2009**
Document Number:
Document Type: **NOTICE OF SALE**
Trustee: **A DEMARLO**
Title Company:
Defendant: **LAFAYETTE CATHRYN**

Filing Date:
Orig Recording Date: **11/26/2008**
Orig Doc Number: **2669-000305**
Trustee Phone:
Unpaid Balance:

**History Record #: 11**
*Foreclosure:*
Recording Date: **05/08/2009**
Document Number:
Document Type: **NOTICE OF SALE**
Trustee: **MICHAEL R WING**
Title Company:
Defendant: **LEGACY CMNTYS OF LAKEWOOD ESTATES**

Filing Date:
Orig Recording Date: **02/21/2008**
Orig Doc Number: **2577-000490**
Trustee Phone:
Unpaid Balance:

**History Record #: 12**
*Finance:*
Recording Date: **11/26/2008**
Document Number: **2669.305**
Document Type: **TRUST DEED / MORTGAGE**
Lender: **LEND AMERICA INC**
Loan Amount: **$178,146.00**
Borrower: **LAFAYETTE CATHRYN**

Finance Type: **REFINANCE**
Mortgage Loan Type: **FEDERAL HOUSING AUTHORITY (FHA)**
Mortgage Term:
Mortgage Rate Type: **FIXED**
Mortgage Rate:

**History Record #: 13**
*Sale/Transfer:*
Recording Date: **11/26/2008**
Document Number: **2669.304**
Document Type: **DEED**
Title Company:
Buyer: **LAFAYETTE,CATHRYN**
Seller: **LEGACY COMMUNITIES OF LAKE**

Sale Date: **11/26/2008**
Sale Price: **$178,674.00**
Sale Type:

**History Record #: 14**
*Sale/Transfer:*
Recording Date: **02/14/2008**
Document Number: **2577.489**
Document Type: **DEED**
Title Company:
Buyer: **LEGACY COMMUNITIES OF LAKEWOOD**
Seller: **LEGACY INVESTMENT GRP LLC**

Sale Date: **02/14/2008**
Sale Price: **$232,800.00**
Sale Type:

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*



**Certified Forensic Loan Auditors**

**Voluntary Lien Date Ranges for Newton, GA**

|  | Sales | Mortgages | Assignments | Releases | Foreclosures |
|---|---|---|---|---|---|
| Start Date | 01/02/2006 | 01/03/2006 | 01/01/2005 | 01/01/2005 | 01/01/2005 |
| End Date | 12/23/2014 | 12/23/2014 | 12/23/2014 | 12/23/2014 | 12/19/2014 |

Source: www.datatree.com

1. Item 12. Cathryn Lafayette refinanced property for $178,146 on 11/26/2008 with primary active loan, which is the subject of this report.

2. Item 5 and 7. Foreclosure actions brought by foreclosing parties with impropriety as noted in body of report. Assignments made two years after loan execution without supporting detail by employee of foreclosure agent working for Assignee Wells Fargo Bank, not bona fide Assignor LEND AMERICA INC Examiner recommends immediate rescission of document for lawful foreclosure to occur pending review of purchase documents (e.g. bills of sale; verifiable proof of funds; note endorsements) among LEND AMERICA INC, Wells Fargo Bank, Ginnie Mae, and any securitized trusts sponsored by Ginnie Mae, such as the qualified Ginnie Mae trust identified.

3. Items 1 and 10. Foreclosure action related to primary active loan.

4. Items 11 and 13. Prior activities made by owner that are not part of subject loan.

*Remaining item 14 relate to prior ownership*

*CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015*
*-All Rights Reserved-*

Contacts Regarding my House

No Valid Lien

Has Ticket number that Cyndee Rae originated who stated that Tia told her that they were not going to pursue any foreclosure and was giving the house to me because there was not a valid Lien and that Ocwen had sent them a Title showing they were in First Lien position which was a fraud. According to Cyndee Rae, Ocwen told her that their own Title Company, "Source", Completed the Title work showing themselves as first Lien holder.

Cyndee Rae Number is 602-233-8730n  email: cyndeerae@moneyandcredit.biz  Counselor third Party.

# Tia S. Tatum

Housing Program Specialist
HUD's National Servicing Center (NSC)
Office of Single Family Asset Management (OSFAM)
301 NW 6th St., Room 200
Oklahoma City, OK  73102
(866)449-1661
(405)609-8450
(405)609-8405 Fax


****Amy Foster   Director of FHA  HUD
    405-609-8487

BK:2669   PG:314

FHA Case Number:  105-4098134-703
Loan Number:  2008222273

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this           26th           day of
NOVEMBER, 2008                       , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note ("Note") to  LEND AMERICA

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

440 MILTON DRIVE, COVINGTON, GEORGIA 30016

[Property Address]

The Property is part of a planned unit development ("PUD") known as:

LAKEWOOD ESTATES

[Name of Planned Unit Development]

PUD COVENANTS.  In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and
facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance
carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all
improvements now existing or hereafter erected on the mortgaged premises, and such policy is
satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against
the hazards Lender requires, including fire and other hazards included within the term "extended
coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the
provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of
one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii)
Borrower's obligation under Paragraph 4 of the Security Instrument to maintain hazard insurance
coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners' Association policy.  Borrower shall give Lender prompt notice of any lapse in
required hazard insurance coverage and of any loss occurring from a hazard.  In the event of a
distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the
Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are
hereby assigned and shall be paid to Lender for application to the sums secured by this Security
Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments
creating and governing the PUD.

FHA - MULTISTATE PUD RIDER
(7/91)                                    Page 1 of 2                    DocMagic ℰℱⓡⓜⓢ 800-649-1362
                                                                        www.docmagic.com

UsOxp.rdr.xml

BK=2669    PG=315

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

X _____ (Seal)
CATHRYN LAFAYETTE        Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

FHA - MULTISTATE PUD RIDER
(7/91)                                    Page 2 of 2                    DocMagic eFnrms  800-649-1362
                                                                        www.docmagic.com



**TFA National Operations Agency, LLC**
**2944 Fuller Ave NE**
**Suite 200**
**Grand Rapids, MI 49505**
**(616)365-3586**

Date: 04/23/2009
File Number: 1399683
Invoice #: 1081492
Other Company's File Number:

A Mortgage Pro                                    **Loan Amount: $185,000.00**
4500 Hugh Howell Road
Suite 320
Tucker, GA 30084

Borrower(s):          Cathryn Lafayette

Property:             440 Milton Drive
                      Covington, GA 30016

| Description | Amount | Qty | Total |
|---|---|---|---|
| Mortgage Policy Premium | $370.00 | 1 | $370.00 |
| Closing Fee | $510.00 | 1 | $510.00 |
| Search Fee | $175.00 | 1 | $175.00 |
| Courier Fee | $40.00 | 1 | $40.00 |
| Estimated Recording Fee | $40.00 | 1 | $40.00 |
| Mortgage Tax | $555.00 | 1 | $555.00 |
| Total | | | $1,690.00 |

Balance: $1,690.00

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE A

Date Issued: April 22, 2009

Commitment No: **1399683**                              Other Reference No:

Issued by:        **TFA National Operations Agency, LLC**
**2944 Fuller Ave NE**
**Suite 200**
**Grand Rapids, MI 49505**

1.       Effective Date: **April 07, 2009 7:59 AM**

2.       The policy or policies to be issued are:                 POLICY AMOUNT

   (a)       ALTA Owner's Policy - (10-17-92)                          **$0.00**
             Proposed Insured:

   (b)       ALTA Loan Policy - (10-17-92)                          **$185,000.00**

             Proposed Insured:      A Mortgage Pro, its successors and/or assigns, as their interests may appear

3.       Fee Simple interest in the land described in this Commitment is owned, at the effective date, by:

Cathryn Lafayette

SOURCE OF TITLE:

Deed Book 2669, Page 304
Recorder's Office Newton County, Georgia.

**(Continued on second page)**

| | | |
|---|---|---|
| **Old Republic National Title Insurance Company** | **This Commitment is invalid unless the Insuring provisions and Schedules A and B are attached.** | Countersigned<br>**TFA National Operations Agency, LLC** |
| | | By _____<br>Countersigned by |

## Continuation of Schedule A

4.    Legal description of the land:

All that tract or parcel of land and being in Land Lot 169 of the 10th District, Newton County, Georgia being Lot 182, The Reserves at Lakewood Estates Subdivision. Unit Two. as per plat recorded in Plat Book 45, Page 196-207, Newton County, Georgia records. which recorded plat is incorporated herein by this reference and made a part of this description.

**Commonly known as: 440 Milton Drive Covington, GA   30016**

**Old Republic National Title Insurance Company**

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE B - SECTION I

Commitment No: 1399683                                    Effective Date: **April 07, 2009**

The following are the requirements to be complied with:

Proper instruments(s) creating the estate or interest to be insured must be executed and duly filed for record to wit:

1. Mortgage from Cathryn Lafayette, with proper marital status and release of dower, if necessary, to A Mortgage Pro to secure $185,000.00.

2. Cancellation of the mortgage(s) shown on Schedule B, Section 2.

3. Cancellation of the lien(s) shown on Schedule B, Section 2.

4. Proof of payment of all common element charges that are due.

5. Pay unpaid taxes and assessments unless shown as paid:

   2008 County Taxes in the amount of $ 141.72 are Paid .
   Tax Parcel Identification:
   Tax Parcel No.: 0012E-00000-182-000
   Land: $11,200.00
   Building: $0.00
   Total: $11,200.00

**Old Republic National Title Insurance Company**

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE B - SECTION II

Commitment No: 1399683                                       Effective Date: April 07, 2009

The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company.

1. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the Proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possessions thereof.

3. Encroachments, overlaps, boundary line disputes and any matters which would be disclosed by an accurate survey and inspection of the premises.

4. Any lien or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

5. Rights of parties in actual possessions of all or any part of the premises.

6. Special assessments and special taxes, if any and taxes not yet due and payable.

7. Easements or claims of easements, not shown by the public records.

### SPECIAL EXCEPTIONS

8. Mortgage from Cathryn Lafayette, to MERS and Lend America, filed for record December 10, 2008, and recorded in Deed Book 2669, Page 305, Recorder's Office, Newton County, Georgia, to secure $178,146.00.

9. Lien in Instrument No. 005256, Dr. Cathryn Lafayette (vs) Stephen Beaur/Legacy Communities of Lakewood Estates, LLC, filed for record November 12, 2008 in the amount of $41,750,980.00, plus interest and costs. (legal description is same as subject property on Schedule A)

10. The lien of all taxes for the year 2009 and thereafter, but which are not yet due and payable.

11. Covenants, conditions and restrictions, if any appearing in the public records.

12. Any easements or servitudes in the public records.

13. Any lease, grant, exception or reservation of minerals or mineral rights appearing in the public records.

14. No search of Federal Bankruptcy Records has been made and an exception in this regard will appear on any Policy to be issued by the Company.

**Old Republic National Title Insurance Company**

NOTE:   Pertaining to the covenants and restrictions, if any, described in Schedule B of this Commitment/Policy, the following is expressly omitted therefrom:   any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin unless and only to the extent that such covenant (a) is exempt under Chapter 42, Section 3607 of the United States Code or (b) related to handicap but does not discriminate against handicapped persons.   Any covenant and restriction, or any part thereof, omitted as described above shall in no event be construed as forming a part of this Commitment/Policy, Schedule B of this Commitment/Policy or as an existing covenant and restriction disclosed by the public records.

NOTE: No liability is assumed by company for ascertaining the status of utility charges, and the insured is cautioned to obtain the current status of these payments.

Old Republic National Title Insurance Company

Customer Name: **CATHRYN LAFAYETTE**                    Control Number: **000162829034749**

## Document Center Summary

**Trailing Documents/Forms for Customer**

| **Forms** | **Form No.** |
| --- | --- |
| New Business Application | SAR993-1 |
| Gramm-Leach Bliley Privacy Notice | X66702 -1v3 |
| Residential Component Technology Estimator | |
| Evidence of Insurance | |
| Credit Card Authorization Form | |

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

GEORGIA

HOME OFFICE                                          Application No.: 000162829034749
NORTHBROOK, ILLINOIS
Applicant Name  :  CATHRYN LAFAYETTE
Address         :  440 MILTON DRIVE
City            :  COVINGTON                St. : GA   Zip Code : 30016
Home Phone No.  :  (770)572-7368            County: NEWTON

LOCATION OF PROPERTY : SAME

---

**POLICY DISTRIBUTION/BILLING**
Policy sent to:                    INSURED
Initial premium notice sent to:    INSURED
Renewal premium notice sent to:    INSURED

---

**MORTGAGEE/THIRD PARTY INFORMATION**

FIRST MORTGAGEE
Loan Number :                          Mortgage Balance: $185700
Name     :   LEND AMERICA ISAOA
Address  :   520 BROADHOLLOW ROAD        Directory Code:
City     :   MELLVILLE                   St. : NY   Zip Code : 11717

---

ADDITIONAL INSURED INFORMATION : NONE

---

**ADULT OCCUPANTS**

| OCC. NO. | OCCUPANT NAME | SOCIAL SEC. NO. | RELATION TO INS. | BIRTH DATE | SEX | MARITAL STATUS | OCCUPATION | PRESENT EMPLOY. DATE |
|---|---|---|---|---|---|---|---|---|
| 1 | CATHRYN LAFAYETTE | XXX-XX-7493 | SA | 04/14/1948 | F | DI | EM DOCTOR | 1983 |

---

CHILDREN IN HOUSEHOLD: NONE
Total number of residents in household including children: 1

---

**HOUSEHOLD INFORMATION**
Date applicant moved into present residence: 10/2008
Is the residence regularly unoccupied during the day or evening by all adult occupants in the household?: YES - DAYTIME
Number of dogs on premises: NONE          Does anyone in the household smoke?: NO

---

**POLICY TYPE - DELUXE PLUS HOMEOWNERS**

---

**LOCATION OF PROPERTY**
Location of Property: COVINGTON

Page 1 of 6

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

GEORGIA

HOME OFFICE                                         Application No.: 000162829034749
NORTHBROOK, ILLINOIS
  County: NEWTON                                    Territorial Zone: 052
  Primary Responding Fire Dept.: COVINGTON
  Is the property located within the city, T.S. or F.D. ? YES
  Miles to Fire Department: 1                       Feet to Fire Hydrant: 250
  Subscription Fire Dept.: NO
  ADJUSTED PER RULE 4C/5D:  NO                      Town Class Rating: 03
  Is a pre-approved alternate water supply available?: NO

---

COVERAGES
  The premium stated below reflects the applicable loss deductibles listed under the section titled "Loss Deductibles Applied".

| SECTION I COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| Dwelling Protection | $251058 | $615.00 |
| Other Structures Protection | $25106 | INCL |
| Personal Property Protection | $188294 | INCL |

| SECTION I OPTIONAL/INCREASED COVERAGES SELECTED | | |
|---|---|---|
| Building Structure Reimbursement Extended Limits (Dwelling & Other Structures) | | INCL |
| Personal Property Reimbursement | | INCL |
| Property Insurance Adjustment | | INCL |

| SECTION II COVERAGES | | |
|---|---|---|
| Family Liability Protection - each occurrence | $300000 | $20.00 |
| Guest Medical Protection - each person | $5000 | $9.00 |
| Total Section II Premium | | $29.00 |

SECTION III OPTIONAL COVERAGES/INCREASED COVERAGES APPLIED
    NONE

---

SCHEDULED PERSONAL PROPERTY COVERAGES : NONE

---

LOSS DEDUCTIBLES APPLIED
  The following loss deductibles apply as specified below.
  All Peril                      $1000

---

DISCOUNTS APPLIED
  The following discounts have been applied to reduce your insurance premium.
  Home Buyer
  Age of Home

---

VALUE OF PERSONAL PROPERTY - APPROXIMATE VALUE OF PERSONAL PROPERTY IN
THE FOLLOWING CATEGORIES: (Note: The values listed are not an indication of amount of
coverage. You must purchase increased protection for items in these categories over the dollar amounts

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

GEORGIA

HOME OFFICE                                    Application No.: 000162829034749

NORTHBROOK, ILLINOIS

specified in the policy in order to extend the Personal Property Protection Coverage. See the policy for
the coverage limits on these items and see above under the section titled "Section III Optional
Coverages/Increased Coverages Applied" for your specific increased limits.)

| Jewelry: | Watches: | Furs: |
|---|---|---|
| Silverware: | Cameras: | Stereo: |

---

## PREMIUM INFORMATION

| Total Estimated Annual Policy Premium: | $644.00 | |
|---|---|---|
| Amount Paid: | $644.00 | Credit/Debit Card |

---

## ESTIMATOR

Residential Component Technology(tm)

| | | |
|---|---|---|
| RCT Cost Date: | 11/15/2007 | |
| Estimated Replacement Cost: | $251,058 | |
| Detached Structure Cost: | $0 | |
| Zip Code: | 30016 | |
| Style/Number of Stories: | 2 Story , 2 Story | |
| Year Built: | 2000 | |
| Construction Class: | 2.5 | |
| No. of Families: | 1 | |
| Living Area Square Footage: | 2788 | |
| Cathedral Ceiling: | None | |
| Foundation: | 100 % | Slab |
| Garages: | 1 | Attached  Garage  - 2 Car |
| Kitchens: | 1 | Average |
| Bathrooms: | 3 | Bath - Full - Average |
| | 1 | Bath - Half - Average |
| Sheds: | None | |
| Fireplaces: | 1 | Single |
| Wood Stove: | None | |
| Swimming Pool: | None | |
| Screened Porches: | None | |
| Solar Rooms: | None | |
| No. of Tennis Courts: | None | |
| Attached Barns: | None | |
| No. of Gazebos: | None | |
| Screened Pool Enclosure: | None | |
| Hot Tub: | None | |
| Wood Deck: | None | |
| Composite Deck: | None | |
| Redwood Deck: | None | |
| Open Porch: | 10 Sq. Ft. | |
| Exterior Wall Type: | 100 % | Vinyl Siding |
| Roof Type: | 100 % | Asphalt/Fiberglass Shingle |
| Flooring: | 10 % | Hardwood |

Page 3 of 6

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

GEORGIA

HOME OFFICE                                          Application No.: 000162829034749
NORTHBROOK, ILLINOIS

                                    30 %   Ceramic Tile
                                    60 %   Wall to Wall Carpet - Acrylic/Nylon
        Heat and Air Conditioning:  100 %  Heat & Central Air Conditioning - Average Cost
        Interior Wall Partitions:   100 %  Drywall/Sheetrock Wall Type
                                    100 %  8ft. Wall Height
        Special Exterior Features:  None
              Residential Component Technology(tm) and RCT(tm) are trademarks of
                             Marshall & Swift/Boeckh.

---

## DWELLING INFORMATION
Mo/Year Dwelling Purchased: 10/2008
Purchase Price: $185700                              Current Market Value: $185700
No. Apts./Family Units: 1
No. of Rooms: 9.0                                    Roof Type: Asphalt/Fiberglass Shingle
Construction: Frame (Not Otherwise Described)
Applicant lives in the building as: OWNER
Unit Residence: Primary                              Unit type: HOUSE
Dwelling in Course of Construction: NO

---

## PROTECTIVE DEVICES INSTALLED
Deadbolt Locks (all exterior doors)
Smoke Detector (each floor)
Fire Extinguisher

Was residence constructed by a Licensed Contractor?: YES
Was the residence remodeled or renovated?: NO
Does the insured have an alternative or supplemental heating source (excluding fireplaces)?: NO

Is the property to be insured, or premises of applicant located on a farm?: NO
Is there any non residential property (schools, churches, gas stations, etc.) within 40 feet of the property to be insured?: NO
Is there any store, business or professional activity in the building, at the applicant's premises, or at additional premises owned by the applicant?: NO
Is the dwelling on a solid and continuous foundation?: YES
Will the residence be occupied within the next 30 days?: YES

---

5 YEAR LOSS HISTORY (including losses at present and prior residences): NONE

---

PRIOR PROPERTY INSURANCE: NONE
In the past 5 years have you been rejected, cancelled or nonrenewed insurance similar to the coverage applied for on this application?: NO
Effective date of first qualifying Allstate property policy providing continuous coverage to date: 10/17/2008

---

OTHER ALLSTATE POLICIES (CROSS INDEX): NONE

---

Page 4 of 6

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

GEORGIA

HOME OFFICE                                    Application No.: 000162829034749
NORTHBROOK, ILLINOIS
REMARKS: NONE

NOTICE: As part of Allstate's underwriting/qualification procedure and subject to applicable laws and regulations, we may obtain information regarding you and other individuals who may be covered by the insurance you are applying for, including: (i) driving record, based on state motor vehicle reports and loss information reports; (ii) your prior insurance record, if any, which will be obtained from your current or prior carrier(s); (iii) credit reports; and (iv) claim history, based on loss information reports.

Any insurance bound is limited to a period of 60 days from its effective date and expires on the last day of such limited period. The Company may sooner terminate such insurance by mailing to the Applicant, at the address herein given, written notice of rejection of this application. Such termination shall be effective at the earlier of A) THE DATE AND TIME INDICATED ON THE TERMINATION NOTICE OR B) AS OF THE TIME APPLICANT SECURES OTHER HOMEOWNERS, RENTERS OR CONDOMINIUM OWNERS INSURANCE. Upon such expiration, or termination, refund of premium may be tendered or paid by check of the Company or its Agent, and if not then, as soon as practicable thereafter.

Any insurance bound hereunder shall otherwise be subject in all respects to the terms and conditions of the regular policy forms of the Company at present in use and to the statements in this application. Any insurance is bound only for such items, perils, coverages, forms of coverage, limits of insurance and amounts of insurance as are indicated on the face hereof, and only those additional Homeowners coverages are bound for which a premium is indicated.

If you believe your credit information was adversely impacted by extraordinary medical or other circumstances, you have the right to appeal this decision. Please contact your Allstate Representative for additional information.

I understand that upon issuance of the insurance applied for, the Property Insurance Adjustment (P.I.A.) condition will apply to the policy. In accordance with terms of this condition, the limits of liability may be adjusted at each anniversary of the policy.

BINDER PROVISION - In reliance on the statements in this application and subject to the terms and conditions of the policy authorized for the Company's issuance to the applicant, the Company named above binds the insurance applied for, to
become effective:        12:01 AM          10/17/2008
Transaction time/date:   05:17 PM          10/16/2008
To the best of my knowledge the statements made on this application, including any attachments, are true. I request the Company, in reliance on these statements, to issue the insurance applied for. The Company may recompute the premium shown if the statements made herein are not true. In the event of any misrepresentation or concealment made by me or with my knowledge in connection with this application, the Company may deem this binder and any policy issued pursuant to this application, void from its inception. This means that the Company will not be liable for any claims or damages which would otherwise be covered.

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

GEORGIA

HOME OFFICE                                    Application No.: 000162829034749
NORTHBROOK, ILLINOIS

I have read this entire application, including the binder provision, before signing.

_____               _____
Applicant's Signature                                      Date

( )   I have inspected the premises.            ( )   I have not inspected the premises

                                                039897              PBY
_____               _____
Agent's Signature                               Number          Location Code


_____
Producer's Signature

SAR993-1

Page 6 of 6

Important Notice
Allstate's Privacy Policy

At Allstate, we value you as a customer and share your concerns about privacy. To help you understand how we treat the nonpublic personal information ("customer information") that we obtain from you or other sources in the course of providing you with products and services, this notice describes our use and protection of that information.

Whether you're doing business with us through your local agent or broker, our Customer Information Center, or allstate.com, we want you to know that Allstate respects your privacy and protects your information.

* We do not sell customer information.

* We do not share your customer information with persons, companies, or organizations outside of Allstate that would use that information to contact you about their own products and services.

* We expect persons or organizations that provide services on our behalf to keep customer information confidential and to use it only to provide the services we've asked them to perform.

* Within Allstate, we communicate to our employees regarding the need to protect customer information, and we've established physical, electronic, and procedural safeguards to protect customer information.

Below we've provided answers to questions that might be on your mind regarding privacy. You may be wondering ...

What do we do with your customer information?
Allstate does not sell your customer information, or medical information, to anyone. Nor do we share it with companies or organizations outside of Allstate that would use that information to contact you about their own products and services. If that practice were ever to change, we would, of course, offer you the ability to opt out of this type of information sharing, and we would offer you the opt-out with time for you to respond before the change in our practice took place.

Your agent or broker may use customer information to help you with your overall insurance program. We may also communicate with you about products, features, and options you have expressed an interest in or that we believe may be of interest to you. We may, without authorization but only as permitted or required by law, provide customer information to persons or organizations both inside and outside of Allstate to fulfill a transaction you have requested, service your policy, market our products to you, investigate or handle claims, detect or prevent fraud, participate in insurance support organizations, or comply with lawful requests from regulatory and law enforcement authorities. These persons or organizations may include: our affiliated companies, companies that perform marketing services on our behalf, other financial institutions with which we have a joint marketing agreement for the sale of our own products, and your agent or broker.

What kind of customer information do we have, and where did we get it?
Much of the customer information that we have about you comes directly from you. When submitting your application or request for insurance or other products and services we offer, or requesting an insurance quote, you may give us information such as your name, address, and Social Security number.

We keep information about your transactions with our affiliates, others or us-for example, the types of products and services you purchase from us, premiums, account balances, and payment history.

We also may collect information from outside sources, including consumer reporting agencies and health care providers. This information may include loss information reports, motor vehicle reports, credit reports, and medical information.

How do we protect your customer information?
When we share customer information with companies working on Allstate's behalf, we expect those companies to use that information only to provide the service we have asked them to perform. Within Allstate, customer information is available to those individuals who may need to use it to fulfill and service the needs of Allstate customers. We communicate the need to protect customer information to all employees and agents, especially those individuals who have access to it. Plus, we've established physical, electronic, and procedural safeguards to protect customer information.

Finally, should your relationship with Allstate end, your customer information will remain protected in accordance with our privacy practices as outlined in this Important Notice.

How can you find out what information we have about you?
You may request to either see, or obtain from us by mail, the customer information about you in our records. If you believe that information is incomplete or inaccurate, you may request that we make any necessary corrections, additions or deletions to the disputed customer information. To fulfill your request, we may make arrangements with an insurance support organization or a consumer reporting agency to copy and disclose customer information to you on our behalf. You may also request a more complete description of the entities to which we disclose customer information, or the circumstances that might warrant such disclosures. Please send any of the requests listed above in writing to: Allstate Insurance Company, Customer Privacy Inquiries, P.O. Box 11904, Roanoke, VA 24022.

If you are an Internet user ...
Our website, allstate.com, provides information about Allstate, our products, and the agencies and brokers that represent us. You may also perform certain transactions on the website. When accessing allstate.com, please be sure to read the Privacy Statement that appears there.

To learn more, the allstate.com Privacy Statement provides important information relating to your use of the website, including, for example, information regarding: 1) our use of online collecting devices known as "cookies"; 2) our collection of information such as IP address (the number assigned to your computer when you use the Internet), browser and platform types, domain names, access times, referral data, and your activity while using our site; 3) who should use our web site; 4) the security of information over the Internet and 5) links and co-branded sites.

We hope you have found this Important Notice helpful.  If you have any questions or would like more information, please don't hesitate to contact your Allstate agent or call the Allstate Customer Information Center at 1-800-Allstate.

X66702 -1v3

This notice is being provided on behalf of the following companies:

ALLSTATE COUNTY MUTUAL INSURANCE COMPANY
ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY
ALLSTATE INDEMNITY COMPANY
ALLSTATE INSURANCE COMPANY
ALLSTATE INVESTMENT MANAGEMENT COMPANY
ALLSTATE MOTOR CLUB, INC.
ALLSTATE NEW JERSEY INSURANCE COMPANY
ALLSTATE NEW JERSEY PROPERTY AND CASUALTY INSURANCE COMPANY
ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY
ALLSTATE TEXAS LLOYD'S
ALLSTATE TEXAS LLOYD'S, INC.
FORESTVIEW MORTGAGE INSURANCE COMPANY
GENERAL UNDERWRITERS AGENCY, INC.
ROADWAY PROTECTION AUTO CLUB, INC.


(ed. 05/2005)

# ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

Control #:   000162829034749

ESTIMATOR

Residential Component Technology(tm)

| | | |
|---|---|---|
| Estimated Replacement Cost: | $251,058 | |
| Detached Structure Cost: | $0 | |
| Zip Code: | 30016 | |
| Style/Number of Stories: | 2 Story  2 Story | |
| Year Built: | 2000 | |
| No. of Families: | 1 | |
| Living Area Square Footage: | 2788 | |
| Cathedral Ceiling: | None | |
| Foundation: | 100 % | Slab |
| Garages: | 1 | Attached  Garage  - 2 Car |
| Kitchens: | 1 | Average |
| Bathrooms: | 3 | Bath - Full  -  Average |
| | 1 | Bath - Half  -  Average |
| Sheds: | None | |
| Fireplaces: | 1 | Single |
| Wood Stove: | None | |
| Swimming Pool: | None | |
| Screened Porches: | None | |
| Solar Rooms: | None | |
| No. of Tennis Courts: | None | |
| Attached Barns: | None | |
| No. of Gazebos: | None | |
| Screened Pool Enclosure: | None | |
| Hot Tub: | None | |
| Wood Deck: | None | |
| Composite Deck: | None | |

Page 1 of 2

**ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY**

Control #:   000162829034749

| | |
|---|---|
| Redwood Deck: | None |
| Open Porch: | 10  Sq. Ft. |
| Exterior Wall Type: | 100 %   Vinyl Siding |
| Roof Type: | 100 %   Asphalt/Fiberglass Shingle |
| Flooring: | 10 %    Hardwood<br>30 %    Ceramic Tile<br>60 %    Wall to Wall Carpet - Acrylic/Nylon |
| Heat and Air Conditioning: | 100 %   Heat & Central Air Conditioning - Average Cost |
| Interior Wall Partitions: | 100 %   Drywall/Sheetrock Wall Type<br>100 %   8ft.Wall Height |
| Special Exterior Features: | None |

Residential Component Technology(tm) and RCT(tm)
are trademarks of Marshall & Swift / Boeckh.

Control #:   000162829034749

EVIDENCE OF INSURANCE

Coverage afforded by the policy is provided by the ALLSTATE PROPERTY AND CASUALTY INSURANCE
COMPANY
Number : 000162829034749

Insured's name, mailing address and zip code:
    CATHRYN LAFAYETTE
    440 MILTON DRIVE
    COVINGTON
    St. : GA    Zip Code : 30016

Location of Premises (If different than shown above):
    SAME

MORTGAGEE/THIRD PARTY INFORMATION

    FIRST MORTGAGEE
    Name                 :    LEND AMERICA ISAOA
    Address              :    520 BROADHOLLOW ROAD
    City                 :    MELLVILLE                        St. : NY    Zip Code : 11717

| The POLICY PERIOD will begin on the date shown and will continue with no fixed date of expiration. The PREMIUM PERIOD will be Annual and begins on the same date shown. | The POLICY PERIOD and PREMIUM PERIOD will begin at 12:01 a.m. Standard Time on 10/17/2008   to 10/17/2009 |
|---|---|

Insurance is provided as follows:
    POLICY TYPE -  DELUXE PLUS  HOMEOWNERS
    Policy Limit of Liability
        Section I Dwelling Protection            $251058
    Total Annual Policy Premium                  $644.00
        Amount Paid:                             $644.00    Credit/Debit Card

    Replacement Cost up to the Dwelling Covg Limits.
    Personal Property Reimbursement

## EVIDENCE OF INSURANCE

Deductibles
 $1000  to loss to the covered property from all insured perils.

---

Number : 000162829034749

PROVISIONS: This form is not the contract of insurance. The provisions of the policy shall prevail in all respects.

All premiums for the insurance policy shall be computed in accordance with Allstate's rules, forms, premiums and minimum premiums applicable to the insurance afforded which are in effect at the inception of the insurance and upon each anniversary thereof, including the date of interim changes.

It is understood that should the insurance protection evidenced herein terminate for any reason, due notice will be given to the Insured, to the mortgagee, and to all other interested parties in accordance with the standard mortgagee clause , (438 BFU).

A copy of the Policy Declarations reflecting the annual premium will be sent, if required, to the mortgagee and to any other interested parties.

Date    : 10/16/2008
Countersigned at : Tucker
Authorized Agent : Wil Williamson
       1861 Mount'Ind Blvd   Suite 106B
       Tucker       St. :  GA Zip Code : 30084
       770-496-1230
       770-492-9639
Agent Signature : _____

Allstate Property and Casualty Insurance Company
Georgia

Authorization Form for Credit/Debit Card Transaction

HOME OFFICE
NORTHBROOK, ILLINOIS

CUSTOMER INFORMATION

Policy Number: 000162829034749

Policy Effective Date: 10/17

Insured's Name: CATHRYN LAFAYETTE

Mailing Address: 440 MILTON DRIVE

City: COVINGTON          State: GA                    Zip: 30016

CREDIT/DEBIT CARD INFORMATION

Payment Amount: $644.00

Credit/Debit Card Number: *************018

Reference Number: 38276520

I hereby authorize this credit/debit card transaction for the policy listed above.

Signature of cardholder or other person authorized to sign on the credit/debit card account.

_____          Date _____

Instructions to the Agent:

Please give one signed copy to the customer and keep the other copy for your records.

 **Fidelity National Title Insurance Company**

POLICY NO.: GA2310-10-08757651-2008.2730610-76804743

## OWNER'S POLICY OF TITLE INSURANCE
Issued by
### *Fidelity National Title Insurance Company*

*Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.*

### *COVERED RISKS*

*SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:*

1. *Title being vested other than as stated in Schedule A.*
2. *Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from*
    (a) *A defect in the Title caused by*
        (i) *forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;*
        (ii) *failure of any person or Entity to have authorized a transfer or conveyance;*
        (iii) *a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;*
        (iv) *failure to perform those acts necessary to create a document by electronic means authorized by law;*
        (v) *a document executed under a falsified, expired, or otherwise invalid power of attorney;*
        (vi) *a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or*
        (vii) *a defective judicial or administrative proceeding.*
    (b) *The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.*
    (c) *Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.*
3. *Unmarketable Title.*
4. *No right of access to and from the Land.*
5. *The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to*
    (a) *the occupancy, use, or enjoyment of the Land;*
    (b) *the character, dimensions, or location of any improvement erected on the Land;*
    (c) *the subdivision of land; or*
    (d) *environmental protection*
    *if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.*
6. *An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.*
7. *The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.*
8. *Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.*
9. *Title being vested other than as stated Schedule A or being defective*
    (a) *as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or*
    (b) *because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records*
        (i) *to be timely, or*
        (ii) *to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.*
10. *Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.*

*The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.*

*IN WITNESS WHEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY has caused this policy to be signed and sealed by its duly authorized officers.*

Countersigned: _____
Authorized Signatory
Leigh Clack
GA2310            08757651
Neel & Robinson, Attorneys at Law, LLC
22 Lenox Pointe
Atlanta, GA 30324
Tel:(404) 459-9600
Fax:(404) 705-3697
2730610 (6/06)

**FIDELITY NATIONAL TITLE INSURANCE COMPANY**

By: _____ President
ATTEST: _____ Secretary
(SEAL)

ALTA Owner's Policy with Georgia Modifications (6/17/06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters:
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## CONDITIONS

### 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Insured": The Insured named in Schedule A.
   (i) The term "Insured" also includes
   (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
   (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
   (C) successors to an Insured by its conversion to another kind of Entity;
   (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
   (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
   (2) if the grantee wholly owns the named Insured,
   (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
   (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.
   (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

(e) "Insured Claimant": An Insured claiming loss or damage.

(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

### 4. PROOF OF LOSS

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

### 5. DEFENSE AND PROSECUTION OF ACTIONS

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of

2730610 (6/06)

ALTA Owner's Policy with Georgia Modifications (6/17/06)

liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

## 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

## 8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

## 9. LIMITATION OF LIABILITY

(a) If the Company establishes the Title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

## 11. LIABILITY NONCUMULATIVE

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

## 12. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

## 14. THIS SECTION INTENTIONALLY DELETED.

## 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

2730610 (6/06)

ALTA Owner's Policy with Georgia Modifications (6/17/06)

**16. SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**17. CHOICE OF LAW; FORUM**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**18. NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at Fidelity National Title Insurance Company, Attn:  Claims Department, P. O. Box 45023, Jacksonville, Florida 32232-5023.



**SHORT FORM RESIDENTIAL COMBINATION ONE-TO-FOUR FAMILY
SCHEDULE A FOR OWNERS AND LOAN TITLE POLICIES
ISSUED BY
FIDELITY NATIONAL TITLE INSURANCE COMPANY**
This Schedule is for use only with enhanced ALTA policy forms which contain all coverages afforded by the ALTA 1992
policy forms plus additional insuring provisions.

LOAN NUMBER   **2008222273**               AGENT'S FILE NUMBER   **08757651**

OWNER'S POLICY NUMBER   **2730610-76804743**       OWNER'S POLICY AMOUNT   **$178,674.00**

LOAN POLICY NUMBER   **27139-76804739**        LOAN POLICY AMOUNT   **$178,146.00**

Note: Coverage for a Lender, Owner, or both, shall be afforded ONLY when
the appropriate Enhanced Policy Number and Policy Liability Amount is completed.
Absence of a completed Policy Number and Liability amount indicates No Coverage is afforded.

DATE OF EACH POLICY: The latter of   **11/26/08**          (Date of Disbursement) or (for Owner's Policy coverage)
the Date of Recording of the Deed, and (for Loan Policy coverage) Date of Recording of the Loan Instrument, into the Owner
or Lender identified below

NAME OF OWNER:   **CATHRYN LAFAYETTE**

NAME OF LENDER:   **LEND AMERICA, A NEW YORK CORPORATION AND THE SECRETARY OF
HOUSING AND URBAN DEVELOPMENT, WASHINGTON, D.C., their successors
and/or assigns as their interest may appear.**

PROPERTY IDENTIFICATION: for Owner's Policy coverage that property which is described in the deed to the Owner named
above: for Loan Policy coverage that property which is described in the Loan instrument from the Owner to the Lender, and
identified by street address: **440 MILTON DRIVE, COVINGTON, GA 30016**

(  ) OWNER'S POLICY ADDENDUM ATTACHED
(  ) LOAN POLICY ADDENDUM ATTACHED

---

Owner's interest in the described property is Fee Simple.

OWNER'S DEDUCTIBLES/MAXIMUM LIABILITY AMOUNTS: Each of the following coverages are subject to the lesser
deductible of 1% of Owner's Policy Amount or the Deductibles listed below for each of those Covered Risks; also, subject
to the following Maximum Liability Amounts as listed for each Covered Risk:
  Covered Risk 14 (Subdivision Law violation) $2500 Deductible - Maximum Liability Amount $10,000
  Covered Risk 15 (Building Permit) $5000 Deductible - Maximum Liability Amount $25,000
  Covered Risk 16 (Zoning) $5000 Deductible - Maximum Liability Amount $25,000
  Covered Risk 18 (Encroachment of wall or fence) $2500 Deductible - Maximum Liability Amount $5,000

This policy shall not be valid until countersigned by a duly authorized signatory. Schedule B of the Short Form Residential
Combination One-To Four Family for owners and loan title policies must be attached hereto and is incorporated herein by
reference, with addendum, if any, as indicated above.

Fidelity National Title Insurance Company

Countersigned By _____
NEEL & ROBINSON ATTORNEYS AT LAW, LLC

## SHORT FORM RESIDENTIAL COMBINATION ONE-TO FOUR FAMILY
## SCHEDULE B FOR OWNERS AND LOAN TITLE POLICIES

**SUBJECT TO THE EXCEPTIONS FROM COVERAGE LISTED BELOW, AND ANY ADDENDUM ATTACHED, FIDELITY NATIONAL TITLE INSURANCE COMPANY, HEREINAFTER REFERRED TO AS "COMPANY" HEREBY INSURES THE INSURED OWNER IN ACCORDANCE WITH AND SUBJECT TO THE TERMS AND CONDITIONS OF THE ALTA HOMEOWNERS POLICY OF TITLE INSURANCE FOR A ONE-TO-FOUR FAMILY RESIDENCE (10-17-98) AND FOR THE LENDER SUBJECT TO THE CONDITIONS AND STIPULATIONS SET FORTH IN THE FIDELITY ENHANCED RESIDENTIAL LOAN POLICY (3-97) INCLUDING ALL COVERAGE AFFORDED BY THE ALTA LOAN POLICY (10-17-92), THE TERMS OF THE APPLICABLE POLICY OF WHICH ARE ATTACHED AND VALIDATED WHEN COUNTERSIGNED BY AN AUTHORIZED AGENCY SIGNATORY AND REFERENCED BY THE APPLICABLE POLICY NUMBER IN SCHEDULE A.**

### EXCEPTIONS FROM COVERAGE AND AFFIRMATIVE ASSURANCES

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of the matters set forth below, except to the extent that the Company does insure in accordance with and subject to its terms against loss or damage which the insured shall sustain by reason of any inaccuracies in the affirmative assurances set forth below, except as limited in any addendum attached hereto:

1. Those taxes, special assessments and re-assessments which become due and payable subsequent to Date of Policy.

2. Covenants, restrictions, easements and/or servitudes. This exception does not impair the coverage afforded by Covered Risks 12, 13, 14, 20, 21 and 23 in the Owners Policy nor the coverage afforded in insuring provisions 16, 17, 18, and 19 of the Loan Policy.

3. Any lease, grant, exception or reservation of minerals or mineral rights appearing in the public records. Nothing herein shall insure against loss or damage resulting from subsidence. This exception does not impair the coverage afforded by Covered Risk 22 in the Owners Policy nor the coverage afforded in insuring provision 21 in the Loan Policy.

4. Any violation, variation or encroachment of a boundary wall or fence. This exception does not impair the coverage afforded by Covered Risks 18 and 19 in the Owners Policy nor the coverage afforded in insuring provisions 17 and 18 of the Loan Policy.

26-131/45-A\B                                           Page 2