FILED IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT
OF GEORGIA

2016 SEP 19  PM 3: 25

M. REGINA THOMAS
CLERK
BY _____
DEPUTY CLERK

Cathryn Lafayette, Pro-Se
440 Milton Drive
Covington, GA 30016
(770) 572-7368
lafayettemedical@yahoo.com

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

Cathryn Lafayette, Pro- Se                    Adversary No. 16-05224

Vs

Enclave @ Lakewood Estates HOA

**Amended COMPLAINT FOR THE FOLLOWING:**

Immigration violations

Theft and Conversion of HOA Funds

Breach of Fiduciary Duties

Breach the Association's Declaration of Covenants

Criminal IRS Investigation for Fraud

Stolen HOA Property

Criminal Liability

ABSENTEE BALLOT VOTE FRAUD AND RIGGING

TAMPERING WITH ACCOUNTING BOOKS

False Statements and Writings, Concealment of Facts and Fraudulent Documents

Breached Duty of Good Faith and Fair dealing and intentionally inflected Emotional Distress on Dr. Cathryn Lafayette

Aggravated Perjury

Endangerment of Children and Adults

Harassment and Malicious False accusations that were meant to bring Hurt, Harm and Emotional Duress to Dr. Cathryn Lafayette in the form of Racketeering

RICO and Racketeering

Using Office as Member of the Enclave @Grosslake HOA to enrich themselves

## COMPLAINT

False accusation that Plaintiff was building a Public Park, Basketball and baseball court for Outside Public use within Enclave community within a meeting with the Law Firm, Lazega & Johanson, a letter was generated by these attorneys to the Plaintiff, citing false information without consulting verbally or in writing to the Plaintiff about the false allegations beforehand to cease and desist from construction. This false information ignited a fuse in Plaintiff's community that placed the Life of Dr. Cathryn Lafayette in Danger where 6 cars and a Truck owned by Orlando Slowley, a Resident who perpetrated along with the President of the Enclave @ Lakewood Estates HOA the Lie and had several Residents inside his Truck but the Leader of this riot was Headed by Alwilda Gonzalez, who pulled up in front of Plaintiff's house with Angry Residents citing vulgar names at Plaintiff and carrying unknown objects in their hands. Alwilda Gonzalez screaming "Cease and Desist of the construction of this PUBLIC PARK on this vacant LAND", while Plaintiff was having a meeting with the former President of the Enclave at Grosslake HOA in the front yard of his house.

Plaintiff had only removed the underbrush and cut the grass through written permission of the Attorney of the Owner of the vacant lots because of the danger to the Children and Residents because a "nude white male" was cited in these same underbrush. The Newton County Sheriff office was alerted. Sheriff Ezell Brown Placed Patrol units in Plaintiff's community who patrolled the area for nearly three months for the Protection of the Residents and their Children. Plaintiff Paid for the removal of the underbrush and cutting the grass on these vacant lots with Plaintiff's own personal funds.

Plaintiff is Seeking prosecution by the State of
Georgia, Alwilda Gonzalez, ET AL for inciting riots in the state of Georgia, violating 14th amendment rights of due process and equal protection under the law of Resident in the state of Georgia of the Plaintiff and endangering the lives of hundreds of Residents and Children who are Residents of Newton County in the State of Georgia, in order to aid in Alwilda Gonzalez Agenda.

**CRIMINAL COMPLAINT is AGAINST The Enclave at Grosslake HOA, ET AL In that they brought A Fraudulent and False allegation without proper Evidence to SUBSTANTIATE IT, WITHHOLDING FROM the Plaintiff EXONERATING EVIDENCE AND RETALIATION AGAINST THE Resident, Dr. Cathryn Lafayette by having a debt cited that she owed HOA fees to her account when Debtor/ Plaintiff had paid her HOA Fees in full early Yet was refused entrance to the Amenities that Debtor had paid. Amenities do no belong to the Enclave @Lakewood Estates HOA but to Ben Lively, The Developer of the Sub- Division. The Defendants violated the Civil Rights of the Plaintiff and placed her in Harm's way by**

**inciting riots in the state of Georgia, Violating 14th Amendment rights of due process and equal protection under the Law of Resident in the State of Georgia.**

1. Whoever knowingly makes a false statement in writing with the intent to mislead a public servant in the performance of his official duty shall be guilty of a misdemeanor of the second degree, punishable as provided in Sec.37.03. . **Sec. 37.03.**

2. **AGGRAVATED PERJURY. (a) A person commits an offense if he commits perjury as defined in Section 37.02, and the false statement:**

> **(1) is made during or in connection with an official proceeding; and**
>
> **(2) is material.**

> **(b) An offense under this section is a _felony of the third degree_.**

## CONCLUSION

**Alwilda Gonzalez and her elected crew members violated the Plaintiff's civil rights by inciting violence, Harassment and riots and depriving the Plaintiff of a fair opportunity to dispute false accusations against her. As a result of the defendants' actions, plaintiff has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.**

**FRAUD BY** The Enclave at Grosslake HOA, LLC, ET AL by **DEPRIVING Plaintiff/ Debtor OF HER CIVIL RIGHTS**
Information below shows that Awilda Gonzalez committed malpractice and intentionally and maliciously defrauded the public within the Enclave subdivision and defamed the Character and Name of the Plaintiff/ Debtor with an intent to aid and abet in depriving the Plaintiff/ Debtor of fair opportunity to defend herself in a Malicious Lie Perpetrated by Alwilda Gonzalez, President of the Enclave @ Lakewood Estates HOA and her constituents. Letter from the Attorney Office of Lazega & Johanson sent out a Letter to Plaintiff / Debtor without proper investigation accusing her of a Lie perpetrated by Enclave @ Lakewood Estates HOA and her Constituents attached as Exhibit A.

**Architectural Committee** violated Civil Rights of Plaintiff / Debtor by not allowing proper due process of a complaint filed regarding a Truck parked in driveway before filing the complaint with the Code enforcer who found the complaint unfounded. This was a form of Harassment and discrimination. **As a result of the defendants' actions, plaintiff has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.**

- It is based not only upon constitutional and case authority, but also upon provisions found within the Corporations Code §7341 and the Davis-Stirling Act, Civil Code §4820.

Beneath the facade of Alwilda Gonzalez, The Enclave At Grosslake HOA which is one of the most affluent communities, neighbors have come toe-to-toe over allegations of fraud and public, vulgar name-calling out of the Mouth of Alwilda Gonzalez where Our neighbors and Children were present and disrespected. "At its core this is a case about greed, abuse of authority and what a handful of rogue individuals are willing to do to their fellow neighbors."

The lawsuit asserts that Samuel Grant and Tina Dillard and other homeowners had their community emails intercepted and blocked to control and contain their dissent against the Fraud of HOA officer, Alwilda Gonzalez and her co-conspirator, Carolyn Sutton, her live in Lover. The lawsuit seeks damages in excess of $1 million.

**Heated meeting.** The lawsuit describes in detail a series of events — including a demand that HOA officers "cease-and-desist" their alleged email blocking, and requests for meeting minutes and HOA records — culminating in a meeting in which nearly all of the board members resigned. During that meeting, Alwilda Gonzalez defamed the Plaintiff / Debtor and used a vulgar slur to characterize her.

According to this lawsuit, the current board members also tried to circumvent the opposition to their plans by soliciting proxy votes from residents by going door to door to acquire the voting rights of homeowners — often without their knowledge of the board's agenda. But only board members were allowed to vote the proxies.

Alwilda Gonzalez. Carolyn Sutton, The Enclave at Grosslake HOA, LLC, Et AL (Defendants) should be barred from using the association's funds for their legal defenses.

## CAUSES OF ACTION

### Count 1:  RICO Conspiracy

Plaintiff re-alleges and incorporates by reference
paragraphs 1 -  with the same force and effect as if fully set
out in specific detail herein

The defendants have conspired and endeavored to violate the
Georgia RICO statute, OCGA § 16-14-4(a), by conspiring and
endeavoring, through a pattern of racketeering activity or
proceeds derived therefrom, to acquire or maintain, directly or
indirectly, any interest in or control of any enterprise, real
property, and personal property of any nature, including money,
all in violation
of OCGA § 16-14-4(c).

In furtherance of such conspiracy to violate the Georgia
RICO statute, in violation of OCGA § 16-14-4(c), the defendants
knowingly and willfully committed extortion against plaintiff/
Debtor by illegally removing her off The ENCLAVE AT GROSSLAKE
HOA in order to continue to conduct the defendants' racketeering
enterprise

And in furtherance of such conspiracy to violate the
Georgia RICO statute, in violation of OCGA § 16-14-4(c), the
defendants knowingly and willfully committed obstruction of
justice
under federal law and influencing witnesses and tampering with
evidence in violation of Georgia law against plaintiff Matthew
Whitley by illegally influencing and attempting to influence
witnesses and to alter evidence to continue to conduct the
defendant's racketeering enterprise and to deprive plaintiff
/Debtor of her rights to a fair and just hearing on her
complaint.

Plaintiff / Debtor has suffered extreme emotional
distress as the result of the extortionate, willful, malicious,
and intentional acts of the defendants

As a result of the defendants' actions, plaintiff has
suffered and is continuing to suffer injury including emotional
pain, suffering, humiliation, inconvenience, mental anguish,
loss of enjoyment of life, and other non-pecuniary losses.

Plaintiff seeks to redress the wrongs alleged herein, and this suit for equitable, compensatory, and punitive damages, is plaintiff's only means of securing adequate relief.

Plaintiff seeks to redress the wrongs alleged herein, and this suit for equitable, compensatory, and punitive damages, is plaintiff's only means of securing adequate relief

Plaintiff/ Debtor has been injured by reason of such violations of OCGA § 16-14-4 and therefore is entitled to three times his actual damages sustained, punitive damages, plus all attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred, pursuant to OCGA § 16-14-6(b).

## Count II: Intentional Infliction of Emotional Distress (All Defendants)

Plaintiff re-alleges and incorporates by reference paragraphs 1 -  with the same force and effect as if fully set out in specific detail herein.
271. The defendants have maliciously and intentionally engaged in outrageous conduct against the plaintiff.

. Plaintiff, has suffered extreme emotional distress as the result of the extortionate, willful, malicious, and intentional acts of the defendants. The defendants first tried to require the plaintiff to become a criminal in order to perform her job as the Secretary of the Enclave at Grosslake HOA.

In short, the plaintiff was extorted by members of a RICO enterprise for trying to protect the economic interests of the Residents and Homeowners of the Enclave community of. Such conduct by the defendants is so outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
. As a direct and proximate result of the acts identified in this Complaint and such other acts to be shown by evidence, including the conspiracy to violate the Georgia RICO statute and commit other illegal acts, including obstruction of justice, and to cover up those illegal acts, plaintiff Matthew Whitley has suffered injuries to person and property, including emotional distress that defies description.

## Count III: Wrongful Termination on The Enclave at Grosslake HOA (All Defendants

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 258 with the same force and effect as if fully set out in specific detail herein

279. The defendants have wrongfully terminated plaintiff as member of the Enclave Board by maliciously manufacturing a false and fraudulent statement that Plaintiff had not paid HOA fees to avoid compliance stated criteria in Enclave @ Lakewood Estates HOA  Covenants that would ensure a fair assessment process, which thereby
limited defendant common-law right to terminate plaintiff for any reason of its choosing.
281. As a result of the defendants' actions, plaintiff has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.
282. Plaintiff seeks to redress the wrongs alleged herein, and this suit for equitable, compensatory, and punitive damages, is plaintiff's only means of securing adequate relief.

### Count VI: Breach of Fiduciary Duty
### (Defendants )

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 258 with the same force and effect as if fully set out in specific detail herein

Defendants The Enclave at Grosslake HOA, Alwilda Gonzalez, Et AL owed plaintiff/ Debtor a fiduciary duty to maintain the trust and confidence she reposed in them when she shared the incriminating information about the illegal racketeering activities engaged in by defendants The Enclave At Grosslake, Alwilda Gonzalez, ET AL
But defendants Alwilda Gonzalez and The Enclave At Grosslake HOA breached their fiduciary duties to the plaintiff in connection with such information.
297. As a result of these defendants' actions, plaintiff has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.
299. Plaintiff seeks to redress the wrongs alleged herein, and this suit for equitable, compensatory, and punitive damages, is plaintiff's only means of securing adequate relief.

### Count VII: Slander
### (All Defendants)
Plaintiff re-alleges and incorporates by reference

paragraphs 1 -  with the same force and effect as if fully set out
in specific detail herein.
The defendants have slandered plaintiff in making false, malicious, defamatory and derogatory statements about plaintiff to other Residents within the Enclave community of defendant and through plaintiff's forced republication of such statements

As a result of the defendants' actions, plaintiff has suffered and is continuing to suffer injury including, but not limited to, substantial loss of income, and loss of benefits

As a result of the defendants' actions, plaintiff has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

Plaintiff seeks to redress the wrongs alleged herein, and this suit for equitable, compensatory, and punitive damages, is plaintiff's only means of securing adequate relief

## Count VIII: Attorney's Fees and Costs
### (All Defendants)
Plaintiff re-alleges and incorporate by reference paragraphs 1-  with the same force and effect as if fully set out
in specific detail herein below.
306. All defendants have acted in bad faith and have caused plaintiff unnecessary trouble and expense.
307. As a result of the defendants' conduct, plaintiff is entitled to attorney's fees and costs related to this litigation pursuant to OCGA § 13-6-11.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:
a. Issue a declaratory judgment holding that the actions of the defendants violated the rights of plaintiff under Georgia law
Enter an order requiring the defendants to make plaintiff whole by awarding plaintiff equitable (including back pay and front pay) damages, compensatory damages, treble damages, and punitive damages, costs to include costs of investigation, attorney's
fees, expenses, and pre-judgment and post-judgment interest.
c. Plaintiff further prays for such other relief and

benefits as the cause of justice may require.

**Grand JURY DEMAND**

PLAINTIFF DEMANDS A TRIAL BY A STRUCK JURY.

Respectfully submitted,

Cathryn Lafayette, Pro Se            9/19/2016

Cathryn Lafayette, Pro Se
440 Milton Drive
Covington, GA 30016
770-572-7368
lafayettemedical@yahoo.com

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Dr. Cathryn Lafayette, hereby files her original complaint and states that more criminal and Civil charges will be filed against Defendants after the forensic audit results has been entered:

**Seeking prosecution** by the State of Georgia of Alwilda Gonzalez, Et AL for inciting riots in the state of Georgia, Violating 14th amendment rights of due process and equal protection under the law of Resident in the state of Georgia Dr. Cathryn Lafayette and endangering the lives of hundreds of Residents and Children who are Residents of Newton County in the State of Georgia, in order to aid in Gonzalez reelection and Gonzalez agenda. **Seeking prosecution** for the following complaints against Alwilda Gonzalez and her co-conspirators:

**THE ENCLAVE AT GROSSLAKE HOA, Alwilda Gonzalez (Master- Mind), Co-conspirator Carolyn Sutton, Et AL for the following:**

**BREACH OF FIDUCIARY DUTY, Breached the Association's Declaration of Covenants, CRIMINAL MISAPPROIATE OF FUNDS, Criminal Breach of Trust Committed by Public Servants, Stolen property, Criminal Liability, ABSENTEE BALLOT VOTE FRAUD and RIGGING, Tampering with Accounting Books, False Statements and Writings, Concealment of Facts, and Fraudulent Documents, Breached Their Duty of Good Faith and Fair dealing, and intentionally inflicted Emotional Distress and Duress on Dr. Cathryn Lafayette, CRIMINAL Perjury, Alwilda Gonzalez has not paid HOA fees for more than three years and concealing the fact that she has volunteered to pay her HOA fees and has not exposed this to the Community of the Enclaves and added herself to the election ballot as a fully Paying member of the Enclave Community. Endangerment of Children and Young adults OF THE Enclave Community which resulted in the murder of our Young Adult Resident and endangerment of Children and Adults of the Enclave Community. Slandered the name of Dr. Cathryn Lafayette by having a flyer circulate the community stating that Dr. Cathryn Lafayette had not paid her HOA fees as the reason why she was removed illegally from the Board as well as Alwilda Gonzalez Lied to Attorney, Jamie Lyons, Enclave HOA Attorney, stating that Dr. Cathryn Lafayette had not paid her HOA Fees as the reason why she would be removed from the Enclave HOA board. There was never a vote from the Enclave HOA members to remove Dr. Cathryn Lafayette. Dr. Cathryn Lafayette was never called to a meeting of her removal.**

**JURISDICTION**
1. This Court has subject matter jurisdiction pursuant to GA Const. Art 6, § 4, I, OCGA § 9-4-2 *et seq.*, and OCGA § 16-4-6.
2. This Court has personal jurisdiction over the parties pursuant to OCGA § 9-10-91.
3. Venue is proper pursuant to OCGA § 9-10-31.

**PARTIES**

1. Plaintiff Dr. Cathryn Lafayette is a citizen of the United States and a resident of Covington, Newton County, Georgia. She is 67 years old.
2. At all times relevant to this lawsuit, plaintiff is currently a resident and Homeowner of Enclave Sub-division as of February, 08, 2016, living at 440 Milton Drive, Covington, GA 30016.
3. At all relevant times, plaintiff has been a resident and Homeowner since November, 2008.

1. Defendant The Enclave at Grosslake HOA, LLC, Alwilda Gonzalez and Carolyn Sutton headquartered in Covington, Newton County, Georgia.

2. The defendants may be served with process by delivering a copy at the address of 35 Gross Lake Parkway, Covington, GA 30016.
3. The defendants has done and currently doing business in this County of Newton.

## BACKGROUND

IN DECEMBER, 2014, Dr. Cathryn Lafayette ran for office when she was nominated from the floor to run as a member of the Enclave at Grosslake HOA. The Manager of the Management Group for the Enclave Community, Alana Serrette, was present and did not reject to Dr. Cathryn Lafayette from running for the position. Dr. Cathryn Lafayette gave a check to Alana Serrette, Manager of the Management group for the Enclaves for the coming year HOA fees for 2015. Dr. Lafayette came in about forth and lost the bid to become a member of The Enclave at Grosslake HOA. Carolyn Sutton presented to the Election committee for Alwilda Gonzalez more than 36 Absentee Ballots and Alwilda Gonzalez who was not present for the election, won as having the most votes.

The new board members began to serve in January, 2015. Within a couple of weeks, two Board members resigned and I was approached by Alwilda Gonzalez, if I would consider in the position as Secretary on the Enclave at Grosslake HOA, LLC, I consented and was nominated by the Board members on January 21, 2015 as a member and voted as Secretary for the Enclave HOA.

Soon as I became a member of the Board, Many Residents were approaching me stating that they had paid their HOA fees and were receiving written notices from Alana, Manager of the Management of Enclave Property, that they owed HOA fees and were charged a Penalty and showing me their money orders, canceled checks and bank statements showing that their checks had not been deposited in their banks or that their HOA fees were fully Paid. As Secretary, I ask Gonzalez for a copy of the names who had paid their HOA fees, those who had not paid and those who had made arrangements with the HOA. Suddenly,

Alwilda Gonzalez, who had been nominated as President of the Enclave HOA, ask me "why did I want to Know"?  I said many residents are complaining that they have paid their HOA fees and many are complaining that their payments have not been deposited into our account for the payment of their HOA fees.  I was informed by Alwilda Gonzalez, The President of the Enclave HOA, that this was Private information and she then Informed Alana, the manager of our Management group; not to give me any information and she refused to allow me to look at the books of the residents who had paid, those who had not paid or those who had made arrangements to volunteer to pay their HOA fees. I then began to ask for my receipts of my payments of my HOA fees.  After several months I received my receipts showing that I was current and Paid In full from Alana, the Property Manager.

Too my Amazement, In April, 2015, Alana, the Manager of the Management group informed me that she had never deposited my check and for me to reissue a money order and that she would not charge me the $25 late fee since I had paid early my 2015 HOA fees in 2014.  I immediately submitted a money order the following day for the HOA fee for 2015 for the check that had never been deposited.
In April, 2015, I was emailed by Alwilda Gonzalez stating that I had been voted off the Board by the Board members because I had not paid my HOA fees.  I submitted all proof of payments but Alwilda Gonzalez refused to acknowledge my payments.
 In late June, 2015, I was given my Passes, decals for my car and bands to enter the amenities by Carolyn Sutton after requesting them for nearly two months. I was told by Carolyn Sutton that she had run out of scan cards and would get the card to me as soon as they would come into her. I ask her what was the delay and she informed me that her schedule was congested and she had to make sure that all my HOA fees were current before her issuing my items to enter the amenities.  I received all items above and my scan card in June, 2015 after she viewed my Financial records from Carolyn Sutton.

My applications to run as a candidate for the Enclave At Grosslake HOA was submitted online in September, 2015 on three separate occasions. I never received any NOTICE in writing or verbally that I owed a late fee of any amount or that I was not current with my HOA fees.  <u>After I had not received my Absentee Ballot in the Mail, I called Alwilda Gonzalez and ask her why had not I received my Absentee Ballot,  Alwilda ask that I</u>  call the new accountant, who had been hired after two other accounts had been revising our books.  The New Accountant sent me my Absentee Ballot via email, then after an hour or so emailed me to state that he was informed by Alwilda Gonzalez that I had a Late fee and had voided my Absentee Ballot and that I must pay $25 in order to vote in the upcoming election. I reluctantly paid with a dispute of not owing a late fee.  I paid with my credit card nearly a week before the Election.  There were nearly 80 residents who were present to vote and became very disturb when Alwilda Gonzalez said that my name was not on the ballot to be a Candidate because I had not applied as a candidate, After I said that I had applied online and presume to pull up the email, Alwilda then said that I was not current with my HOA fees and that her self-elected election committee members had counted her having 78 Absentee Ballots and the other Absentee Ballots went to the people who had volunteered for her. I informed her that I had paid the fraudulent $25 late fee the following week.  I then was nominated from the floor.  At that time many of the Residents indicated that the

Election had been Rigged.  Tina Dillard, the former Vice Present of the Enclave ask to view the Absentee Ballots after she had nominated me from the floor to be a candidate for The Enclave at Grosslake HOA and cast her vote for me. Alwilda refused the request when other Residents ask to see the Absentee Ballots as well. Alwilda Gonzalez told everyone to Leave or she would call the Police to have them arrested because of their disturbance.  The residents left leaving only 20 residents.  I left after being told that each of her volunteers received Absentee Ballots and no votes from the Residents which placed them on the Board. The only people who received votes from the Residents were Alwilda and myself.  I counted 11 votes for myself but was told later that I had 7 votes.  The ballots were never counted out in front of us.

  Alwilda Gonzalez gave false information to the Attorney Jamie Platt Lyons of Lazega & Johanson  during an Official meeting with the members of The Enclave At Grosslake HOA where Dr. Cathryn Lafayette a Board member, was not allowed to attend, to remove Dr. Lafayette off of the Board of Enclave HOA by stating that Dr. Cathryn Lafayette had given a Check to pay for her 2014 HOA fees that was returned for a Bad check and she was not current with her HOA fees for 2014 at the time when she ran for the office of the Enclave HOA Board.  When in fact, Dr. Cathryn Lafayette check was never deposited but withheld more than 4 months without the knowledge of Dr. Cathryn Lafayette and her check was never deposited into the Banking account of the HOA or Management company for The Enclave HOA.  The payment was actually for advance payment for 2015 HOA payment of fees.

Whoever knowingly makes a false statement in writing with the intent to mislead a public servant in the performance of his official duty shall be guilty of a misdemeanor of the second degree, punishable as provided in Sec.37.03

Sec. 37.03.  AGGRAVATED PERJURY.  (a)  A person commits an offense if he commits perjury as defined in Section 37.02, and the false statement:

        (1)  is made during or in connection with an official proceeding; and

        (2)  is material.

     (b)  An offense under this section is a felony of the third degree.

**Criminal Liability**

**Association (c) Balance Sheet, and (d) Profit and Loss Account. The Registrar of Companies does not usually part with the original documents.**

**manipulation of accounts by transfer of funds among group companies interest, forgery of vouchers, etc. i i ) Extinguishing capital reserves and profits before liquidating the companies. iii)Showing false purchase of raw material and other items. Another violation of this is excess payment to the suppliers and sharing the diverted funds with such**

**suppliers. i v ) S e t t i n g   B e n a m i   s o l e   s e l l i n g a g e n t s   with a view to showing reduced profit f o r   t h e   c o m p a n y   a n d d i v e r t i n g   t h e   excess profit to such benami agents who are generally relatives or close friends of the active Directors. v ) T r a n s f e r of assets to firms taken into liquidation. vi )U s e   o f c o m p a n y   f u n d s   t o   s e i z e   control of other companies. vii )O b t a i n i n g   o f   l o a n s   f r o m   t h e   b a n k   and the public either without security or on the basis of false inflated security**

Awilda Gonzalez, the alleged mastermind, and her co-defendants conspiracy and fraud charges in the multi-thousand-dollar scheme, which occurred between 2015 and 2016. The conspirators are accused of stacking HOA boards to gain legal and construction defect contracts for themselves. Straw Vendors were recruited to provide services for the Community of the Enclaves and then elected to the HOA boards through bribery and rigged elections.

- It is based not only upon constitutional and case authority, but also upon provisions found within the Corporations Code §7341 and the Davis-Stirling Act, Civil Code §4820.

Beneath the facade of Alwilda Gonzalez, The Enclave At Grosslake HOA which is one of the most affluent communities, neighbors have come toe-to-toe over allegations of fraud and public, vulgar name-calling out of the Mouth of Alwilda Gonzalez where Our neighbors and Children were present and disrespected. "At its core this is a case about greed, abuse of authority and what a handful of rogue individuals are willing to do to their fellow neighbors."

The lawsuit asserts that Samuel Grant and Tina Dillard and other homeowners had their community emails intercepted and blocked to control and contain their dissent against the Fraud of HOA officer, Alwilda Gonzalez and her co-conspirator, Carolyn Sutton, her live in Lover. The lawsuit seeks damages in excess of $1 million.

**Heated meeting.** The lawsuit describes in detail a series of events — including a demand that HOA officers "cease-and-desist" their alleged email blocking, and requests for meeting minutes and HOA records — culminating in a meeting in which nearly all of the board members resigned. During that meeting, Alwilda Gonzalez defamed Dr. Cathryn Lafayette and used a vulgar slur to characterize her, she alleges.

According to this lawsuit, the current board members also tried to circumvent the opposition to their plans by soliciting proxy votes from residents by going door to door to acquire the voting rights of homeowners — often without their knowledge of the board's agenda. But only board members were allowed to vote the proxies.

**Alwilda Gonzalez. Carolyn Sutton, The Enclave at Grosslake HOA, LLC, Et AL (Defendants)** should be barred from using the association's funds for their legal defenses. Alwilda Gonzalez has sole control of the Funds for the Enclave At Grosslake HOA and should be immediately Barred on all bank accounts and assess ability to any financial revenue, charge cards etc. Funds need to be immediately seized and Placed in escrow governed by a cer

## CAUSES OF ACTION

### Count 1:  RICO Conspiracy

```
Plaintiff re-alleges and incorporates by reference
paragraphs 1 -  with the same force and effect as if fully set
out in specific detail herein


The defendants have conspired and endeavored to violate the
Georgia RICO statute, OCGA § 16-14-4(a), by conspiring and
endeavoring, through a pattern of racketeering activity or
proceeds
derived therefrom, to acquire or maintain, directly or
indirectly,
any interest in or control of any enterprise, real property, and
personal property of any nature, including money, all in
violation
of OCGA § 16-14-4(c).


In furtherance of such conspiracy to violate the Georgia
RICO statute, in violation of OCGA § 16-14-4(c), the defendants
knowingly and willfully committed extortion against plaintiff
Dr. Cathryn Lafayette by illegally removing her off The ENCLAVE
AT GROSSLAKE HOA in order to continue to conduct the defendants'
racketeering enterprise


And in furtherance of such conspiracy to violate the
Georgia RICO statute, in violation of OCGA § 16-14-4(c), the
defendants knowingly and willfully committed obstruction of
justice
under federal law and influencing witnesses and tampering with
evidence in violation of Georgia law against plaintiff Dr.
```

Cathryn Lafayette by illegally influencing and attempting to influence witnesses and to alter evidence to continue to conduct the defendants' racketeering enterprise and to deprive plaintiff Dr. Cathryn Lafayette of her rights to a fair and just hearing on her complaint.

Plaintiff Dr. Cathryn Lafayette has suffered extreme emotional distress as the result of the extortionate, willful, malicious, and intentional acts of the defendants

As a result of the defendants' actions, plaintiff has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

Plaintiff seeks to redress the wrongs alleged herein, and this suit for equitable, compensatory, and punitive damages, is plaintiff's only means of securing adequate relief.

Plaintiff seeks to redress the wrongs alleged herein, and this suit for equitable, compensatory, and punitive damages, is plaintiff's only means of securing adequate relief

Plaintiff Dr. Cathryn Lafayette has been injured by reason of such violations of OCGA § 16-14-4 and therefore is entitled to three times his actual damages sustained, punitive damages, plus all attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred, pursuant to OCGA § 16-14-6(b).

### Count II: Intentional Infliction of Emotional Distress (All Defendants)

Plaintiff re-alleges and incorporates by reference paragraphs 1 - with the same force and effect as if fully set out in specific detail herein.
271. The defendants have maliciously and intentionally engaged in outrageous conduct against the plaintiff.

. Plaintiff Dr. Cathryn Lafayette has suffered extreme emotional distress as the result of the extortionate, willful, malicious, and intentional acts of the defendants. The defendants first tried to require the plaintiff to become a criminal in order to perform her job as the Secretary of the Enclave at Grosslake HOA.

In short, the plaintiff was extorted by members of a RICO

enterprise for trying to protect the economic interests of the Residents and Homeowners of the Enclave community of. Such conduct by the defendants is so outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . As a direct and proximate result of the acts identified in this Complaint and such other acts to be shown by evidence, including the conspiracy to violate the Georgia RICO statute and commit other illegal acts, including obstruction of justice, and to cover up those illegal acts, plaintiff Matthew Whitley has suffered injuries to person and property, including emotional distress that defies description.

### Count III: Wrongful Termination on The Enclave at Grosslake HOA (All Defendants

Plaintiff re-alleges and incorporates by reference paragraphs 1 - 258 with the same force and effect as if fully set out in specific detail herein

279. The defendants have wrongfully terminated plaintiff as member of the Enclave Board by maliciously manufacturing a false and fraudulent statement that Plaintiff had not paid HOA fees to avoid compliance stated criteria in Enclave Covenants that would ensure a fair assessment process, which thereby limited defendant common-law right to terminate plaintiff for any reason of its choosing.

281. As a result of the defendants' actions, plaintiff has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

282. Plaintiff seeks to redress the wrongs alleged herein, and this suit for equitable, compensatory, and punitive damages, is plaintiff's only means of securing adequate relief.

### Count VI: Breach of Fiduciary Duty (Defendants )

Plaintiff re-alleges and incorporates by reference paragraphs 1 -  with the same force and effect as if fully set out in specific detail herein

Defendants The Enclave at Grosslake HOA, Alwilda Gonzalez, Et AL owed plaintiff Dr. Cathryn Lafayette a fiduciary duty to maintain the trust and confidence she reposed in them when she shared the incriminating information about the illegal

racketeering activities engaged in by defendants The Enclave At
Grosslake, Alwilda Gonzalez, ET AL
But defendants Alwilda Gonzalez and The Enclave At Grosslake HOA
breached their fiduciary duties to the plaintiff in connection
with such information.
. As a result of these defendants' actions, plaintiff has
suffered and is continuing to suffer injury including emotional
pain, suffering, humiliation, inconvenience, mental anguish,
loss of enjoyment of life, and other non-pecuniary losses.
. Plaintiff seeks to redress the wrongs alleged herein, and
this suit for equitable, compensatory, and punitive damages, is
plaintiff's only means of securing adequate relief.

### Count VII: Slander
### (All Defendants)
Plaintiff re-alleges and incorporates by reference
paragraphs 1 - with the same force and effect as if fully set
out
in specific detail herein.
The defendants have slandered plaintiff in making false,
malicious, defamatory and derogatory statements about plaintiff
to other Residents within the Enclave community of defendant and
through plaintiff's forced republication of such statements

As a result of the defendants' actions, plaintiff has
suffered and is continuing to suffer injury including, but not
limited to, substantial loss of income, and loss of benefits

As a result of the defendants' actions, plaintiff has suffered
and is continuing to suffer injury including emotional pain,
suffering, humiliation, inconvenience, mental anguish, loss of
enjoyment of life, and other non-pecuniary losses.

Plaintiff seeks to redress the wrongs alleged herein, and
this suit for equitable, compensatory, and punitive damages, is
plaintiff's only means of securing adequate relief

### Count VIII: Attorney's Fees and Costs
### (All Defendants)
Plaintiff re-alleges and incorporate by reference
paragraphs 1- with the same force and effect as if fully set
out
in specific detail herein below.
. All defendants have acted in bad faith and have caused
plaintiff unnecessary trouble and expense.
. As a result of the defendants' conduct, plaintiff is
entitled to attorney's fees and costs related to this litigation

pursuant to OCGA § 13-6-11.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:
a. Issue a declaratory judgment holding that the actions of the defendants violated the rights of plaintiff under Georgia law
b. Enter an order requiring the defendants to make plaintiff whole by awarding plaintiff equitable (including back pay and front pay) damages, compensatory damages, treble damages, and punitive damages, costs to include costs of investigation, attorney's
fees, expenses, and pre-judgment and post-judgment interest.
c. Plaintiff further prays for such other relief and benefits as the cause of justice may require.
d. Alwilda Gonzalez, co-conspirator Carolyn Sutton, The Enclave at Grosslake HOA, LLC, Et AL (Defendants) should be barred from using the association's funds for their legal defenses.
e.   In that Defendant, Alwilda Gonzalez is in full control of the funds for the Enclave at Grosslake HOA, LLC, that she should be immediately barred from access to the funds, credit cards, etc. and all funds placed in escrow for the paying of the bills for the Enclave sub-division.

**JURY DEMAND**
PLAINTIFF DEMANDS A TRIAL BY A STRUCK JURY.
Respectfully submitted,

Dr. Cathryn Lafayette, Pro Se   9/19/2016

Dr. Cathryn Lafayette, Pro Se
440 Milton Drive
Covington, GA 30016
770-572-7368
lafayettemedical@yahoo.com

Cathryn Lafayette, Pro Se
440 Milton Dr.
Covington, GA 30016
770-572-7368

## UNITED STATES BANKRUPTCY COURT
## NORTHREN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Cathryn Lafayette

                                       Adversary No. 16-05224
                                       **VERIFIED COMPLAINT**
                                       **GRAND JURY TRAIL DEMANDED**

V.            *Amended Complaint*

Ocwen Loan Servicing, LLC, As Loan Servicer,
Wells Fargo Bank. N.A. As Trustee
For the GINNIE MAE REMIC TRUST, 2008- 2009,
GMAC MORTGAGE , LLC ,As Loan Servicer,
Mortgage Electronic Registration Systems, INC.
As Nominee under the Original Mortgage,
BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., As Trustee.
Lend America, As Lender, ET AL

## 1. INTRODUCTION

Cathryn Lafayette (hereinafter referred as "Plaintiff"), alleges herein as follows:

1.    Plaintiff brings this action against Defendants for damages and harm resulting from Defendants" negligent, fraudulent and unlawful conduct concerning a residential mortgage loan transaction and impending foreclosure action.

2.    This is an action brought for declaratory judgment, injunctive and equitable relief, and for compensation, special, general and punitive damages.

**VERIFIED COMPLAINT**

3.      Additionally, Plaintiff brings causes of action against all defendants for Fraud, Intentional Infliction of Severe Emotional Distress, Rescission, violations of TILA, RESPA, and HOEPA, upon the facts and circumstances surrounding Plaintiff's original loan transaction, and subsequent securitization.

4.      Defendants' violations of these laws are additional reasons this Court should quiet the title in Plaintiff's property.

5.      For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home.

6.      Instead, borrowers were offered interest-only, negative amortization, and other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure.

7.      Plaintiff falls into this category.

8.      The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics.

9.      All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America.

10.     Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

2

Verified Complaint

11. The loan product sold to Plaintiff in this case was exactly the kind of loan that has contributed to our national problem.

12. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiff of this risk.

13. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiff faces the potential of losing her home to the very entity and entities who placed her in this position.

## II.    ALLEGATIONS AND ESTABLISHMENT OF PARTIES

14. Plaintiff is a resident of the County of Newton, State of Georgia and the lawful owner of a parcel of Real Property, (hereinafter "Subject Property"), commonly known as: 440 Milton Drive. Covington, GA 30016.

15. The Subject Property is located in Newton County, State of Georgia.

16. Through belief, Defendant, GMAC Mortgage, LLC ("GMAC"), is and at all times herein mentioned was conducting ongoing business in the County of Newton, State of Georgia.

17. GMAC is a national banking association organized and existing under the laws of Pennsylvania.

18. At all relevant times, GMAC has transacted and continues to transact business throughout the State of Georgia, including Newton County, and is claiming to be the servicer on Plaintiff's Loan.

19. GMAC is currently involved in an active Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York, bearing the case no. 12-12032

20. Defendant, Wells Fargo Bank, N.A. ("WFBANK"), is a national association organized under the laws of South Dakota.

21. At all relevant times, WFBANK has transacted and continues to transact business throughout the State of Georgia, including Newton County.

Verified Complaint

22.     Defendant, Mortgage Electronic Registration Systems, Inc. ("MERS"), is a corporation duly organized and existing under the laws of Virginia, whose last known address is 1818 Library Street, Suite 300, Reston, Virginia 20190.

23.     At all relevant times, MERS has transacted and continues to transact business throughout the State of Georgia, including Newton County.

24.     Plaintiff is further informed and believes, and thereon alleges, that Defendant MERS is the purported Beneficiary under the Mortgage and is a participant in the imperfect securitization of the Note and the Mortgage, as more particularly described *Infra*.

25.     Plaintiff is unaware of the true names of Defendants sued as DOES 1 through 10 and therefore sues these Defendants by fictitious names as persons unknown claiming any legal or equitable right, title, estate, lien, or interest in the Subject Property described in the Complaint.

26.     Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

## III.     JURISDICTION

27.     This Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 USC § 1332.

28.     Plaintiff is a resident of Newton County, State of Georgia.

29.     The Defendants are business entities organized in a state or jurisdiction other than Georgia with their respective headquarters and principal place of business located in a state or jurisdiction other than Georgia. *See ¶¶ 16-23, supra.*

30.     The amount in controversy exceeds $75,000.00.

## IV.     VENUE

31.     Venue lies in this District pursuant to 28 USC § 1391(b).

4
Verified Complaint

32. The Subject Property lies within the territorial limits of the County of Newton, State of Georgia.

## V. SPECIFIC ALLEGATIONS

33. On or about November 6, 2008, a residential loan, ("PLAINTIFF'S LOAN"), was made to Plaintiff z by Lend America, Inc.

34. On or about November 6, 2008, Plaintiff executed a note, ("NOTE"), promising to pay Lend America, Inc. in monthly payments.

35. Also on November 6, 2008, Plaintiff executed a Mortgage document, ("MORTGAGE"), which identified the lender as Lend America, Inc. and the Trustee cited was MERS.

36. Through belief, and further substantiated by an independent securitization audit, attached hereto as ("RJN Exhibit A"), Plaintiff alleges that after the loan was originated and funded it was sold on or about November 26, 2008, bundled into a group of Notes and subsequently sold to investors as a derivative "Mortgage Backed Security", issued by WFBANK, entitled GINNIE MAE REMIC TRUST 2009-008, ("TRUST"), and that therefore none of the Defendants own this loan, or NOTE, and cannot be and are not the Beneficiary under the MORTGAGE, or lawfully appointed Trustee under the MORTGAGE and have no right to declare a default, to cause notices of foreclosure sale to issue or to be recorded, or to foreclose on PLAINTIFF'S interest in the Subject Property.

37. Documents filed with the SEC by the securitization participants allegedly claim that the note and Mortgage at issue in this case were sold, transferred and securitized by Defendants, with other loans and mortgages into the TRUST 2009-008 Trust, which is a Common Law Trust formed pursuant to New York law.

38. A detailed description of the mortgage loans which form the TRUST 2009-008 Trust is included in Form 424B5 ("the Prospectus"), which has been duly filed with the SEC and attached hereto as ("RJN Exhibit A").

Verified Complaint

39.     An expert, certified, forensic audit of the Plaintiff's loan documents reveals that Plaintiff's mortgage note was required to at least go through several key parties before it reached the REMIC trustee it was destined for.

40.     This was not followed

41.     WFBANK is the current Trustee for the TRUST.

42.     GMAC is the servicer of the LOAN.

43.     MERS is acting as a Nominee.

44.     Plaintiff alleges that when a promissory note gets securitized, it ceases to remain a negotiable instrument and becomes a security. If Defendants attempt to characterize a loan as both a security and a negotiable instrument, it is called "double dipping".

45.     Plaintiff alleges that "double dipping" is an SEC violation.

46.     The gravamen of this lawsuit is, 1) Defendants and the TRUST are not holders or holders in due course of the NOTE and 2) Defendants and the TRUST are not beneficiaries under the Mortgage. 3) Defendants have no right to declare a default and no right to attempt to consummate a foreclosure, as further described *Infra*.

47.     GMAC, WFBANK, MERS and the TRUST and their successors in interest do not fall within any of the classifications of holders in due course of the NOTE. The NOTE is not "bearer paper" and since its securitization, it is no longer a negotiable instrument.

48.     GMAC, WFBANK, MERS and the TRUST and their successors in interest have not suffered any financial loss relating to the LOAN.

49.     More importantly, the certificate holders of the TRUST have not suffered any financial harm, as follows:

   a) The TRUST's Master Servicer is required to make payments to the TRUST when loan payments are not made;

   b) The Master Servicer is not a party with legal or equitable interest in the MORTGAGE;

Verified Complaint

c) TRUST passes payments made by the Master Servicer through to the certificate holders;

d) These payments are received as interest and not as a loan;

e) 1009 forms issued by the Trustee to each investor, through belief, treats each advance as a payment of interest and not as a loan which must be repaid by the investor;

f) The Master Servicer's claim is not secured;

g) The requirement for the Master Servicer to make payments is a concession given by the Master Servicer as an inducement to convince the Trustee to use its service;

h) The payments were not made for the benefit of the borrower.

50. As a Constitutional matter, at a minimum, a party is required to suffer some actual or threatened injury as a result of Defendant's conduct to successfully assert a claim.

51. GMAC, WFBANK, MERS and the TRUST and their successors in interest have never been the real party in interest as a lender or financial institution underwriting the LOAN. Defendants are strangers to the LOAN.

52. Plaintiff alleges that the only individual who has standing to foreclose is the holder of the NOTE because they have a beneficial interest.

53. The only potential holders of the NOTE are the certificate holders of the TRUST because they are the end users and pay taxes on their interest gains; furthermore, all of the banks and Defendants in the middle were paid in full.

54. Georgia law provides that the power of sale can only vest in a person entitled to payments.

55. Plaintiff alleges the Originator Lend America, Inc., sold its interest in the LOAN and was paid in full.

56. Plaintiff believes that Defendant, WFBANK, alleges that it is the "holder and owner" of the NOTE and the beneficiary of the MORTGAGE.

57. However, the NOTE and MORTGAGE identify the Originator Lend America, Inc. as the holder.

58. Documents allegedly state that the original lender allegedly sold the mortgage loan to the TRUST, but no perfected chain of title exists between WFBANK and the TRUST

7

Verified Complaint

59.     In the alternative, Plaintiff believes that Defendant, GMAC, alleges that it is the "holder and owner" of the NOTE and the beneficiary of the MORTGAGE.

60.     However, documents state that Lend America, Inc. allegedly sold the mortgage loan to the TRUST, but no perfected chain of title exists between GMAC and the TRUST.

61.     Furthermore, the terms of the finance transaction with Lend America, Inc. are not clear or conspicuous, nor consistent, and are illegal which violates several statutes, and in essence creates a fraudulent and unenforceable loan.

62.     Further, this loan was underwritten without proper due diligence by Lend America, Inc. as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns.

63.     Lend America, Inc. also used a "GDW Cost of Savings" as the Index for the basis of this loan. Because the Lender controls this Index and it is directly based upon the average rate of interest, it was not a valid index for the basis of the loan.

64.     In addition, and unbeknownst to Plaintiff, Lend America, Inc. illegally, deceptively and otherwise unjustly, qualified Plaintiff for a loan which Lend America, Inc. knew or should have known that Plaintiff could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only.

65.     Had Lend America, Inc. used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining comply with the requirement to provide Plaintiff with a Mortgage Loan Origination Agreement the debt to income ratio, Plaintiff would not have qualified for the loan in the first place.

66.     Consequently, Lend America, Inc. sold Plaintiff a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff.

67.     Lend America, Inc. ignored long-standing economic principals of underwriting and instead,

Verified Complaint

transfer and endorse to the Trustee for the TRUST, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the NOTE and all other mortgage loans identified in the PSA.

102.   Plaintiff alleges that the PSA provides that the transfers and assignments are absolute, were made for valuable consideration, to wit, in exchange for the certificates described in the PSA, and were intended by the parties to be a bona fide or "True Sale."

103.   Since, as alleged herein below, True Sales did not actually occur, Plaintiff alleges that the Trustee for the TRUST is estopped and precluded from asserting any secured or unsecured claim in this case.

104.   Plaintiff alleges that as a result of the PSA and other documents signed under oath in relation thereto, the Originator, Sponsor and Depositor[1] are estopped from claiming any interest in the NOTE that is allegedly secured by the MORTGAGE on the Subject Property.

105.   Plaintiff alleges that the NOTE in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Originator, Lend America, Inc. to the Sponsor or to the Depositor or from the Depositor to the Trustee for the TRUST. Plaintiff further allege that the PSA herein provides that the mortgages were to be delivered to the TRUST, which files include the MORTGAGE.

106.   Based upon the foregoing, Plaintiff alleges that the following deficiencies exist, in the "True Sale" and securitization process as to this MORTGAGE which renders invalid any security interest in the MORTGAGE, including, but not limited to:

a) The splitting or separation of title, ownership and interest in the NOTE and MORTGAGE of which the original lender is the holder, owner and beneficiary of MORTGAGE;

b) When the loan was sold to each intervening entity, there were no Assignments of the MORTGAGE to or from any intervening entity at the time of the sale.  Therefore, "True Sales" could not and did

---

[1] The Originator is the lender who originally funded the loan; the Sponsor "collects" or "buys" the loans from different lenders, combines them, and then "sells" them to the Depositor; the Depositor "deposits" the loans into the Issuing Entity Trusts, and then, various bonds and certificates are sold; the Issuing Entity would be the "legal owner" of the Notes, though the actual documents would be held by Custodians.

13

Verified Complaint

not occur;

c) The failure to assign and transfer the beneficial interest in the MORTGAGE to Defendants, in accordance with the PSA of the Defendants, as Securitization Participants;

d) The failure to endorse, assign and transfer the NOTE to Defendant, WFBANK, as Trustee for the TRUST, in accordance with the PSA and Georgia law;

e) No Assignments of Beneficiary or Endorsements of the NOTE to each of the intervening entities in the transaction ever occurred, which is conclusive proof that no True Sales occurred as required under the PSA filed with the SEC; and

f) Defendants violated the pertinent terms of the PSA.

107.    Plaintiff alleges that none of the parties to the securitization transaction, or any of the Defendants in this case, hold a perfected and secured claim in the Subject Property; and that all Defendants are estopped and precluded from asserting a secured or unsecured claim against the Subject Property.

## Assignment of the Security Deed

108.    On September 14, 2011, an Assignment of the Security Deed was recorded in the Official Records of Newton County as instrument number 2011.8019, purportedly transferring Security Interest to GMAC Mortgage, LLC.

109.    A true and correct copy of said assignment is incorporated hereto as (RJN Exhibit B)

110.    The document was signed by Heather Harper for MERS, without providing disclosure of her employment with US Bank in representing the Assignee, and not the Assignor.

111.    MERS does not have standing or authority under the MORTGAGE to assign anything. MERS can only assign what it owns, which is nothing.

112.    About two years had passed by since the NOTE was originated and Plaintiff therefore demands immediate production of the then notarized bill of sale; note endorsement; and verifiable proof of funds

14
Verified Complaint

among Lend America, Inc. GMAC; GINNIEMAE and any securitized trust into which loan may have been placed such as the qualified trust identified *Supra*.

113.   Plaintiff considers this a document of impropriety requiring rescission for rightful foreclosure to take place until actual purchase by relevant parties is verified.

114.   Plaintiff alleges that Heather Harper signs for MERS without disclosure of her employment by US Bank and not MERS. This is an indication that US Bank attempted to assign the Mortgage to GMAC without an Assignor. This position of unilateral transfer is further strengthened by the fact that here is no evidence of verified proof of funds; a note endorsement; a bill of sale; a declaration of value; or transfer taxes as having been paid to Newton County, Washington "For Value Received".

115.   Heather Harper is noted as an employee of US Bank as noted in her personal profile at linkedin.com: https://www.linkedin.com/pub/heather-harper/45/6ab/624

116.   She notes no employment by or involvement with MERS or Lend America, Inc.

**Assignment of Mortgage**

117.   On October 14, 2011, an Assignment of Mortgage was recorded in the Official Records for Newton County as instrument number 2011.9126.

118.   GMAC employees Patricia Kelleher and Vickie Hickson stated they were MERS Assistant Secretaries without their disclosure of their Assignee role.

119.   Similar concerns as above are present with this document and subsequent foreclosure actions by GMAC are dependent upon this invalid document, a true and correct copy is attached and incorporated hereto as (RJN Exhibit C)

120.   GMAC employees Patricia Kelleher and Vickie Hickson state they are Assistant Secretaries of MERS without giving their disclosure of Assignee employment. Plaintiff alleges that it is clear by these two Assignments that MERS has been rendered a non-entity in this case.

Verified Complaint

121. The signers have proven they believe or have been told they can sign for MERS without disclosure of their true employment or compensation rendered to their employers for instituting such foreclosure actions.

122. As in the first Assignment above, no evidence of a negotiated transfer is presented "for value received."

123. Patricia Kelleher states her signature is "by GMAC Mortgage, LLC, as Attorney in Fact" for client New Century, attached and incorporated hereto as (RJN Exhibit D).

124. This is an admission of her true role.

125. Such an admission was not made in the case of Plaintiff's loan.

126. Similarly, Vickie Hickson admits to being a GMAC employee, as evidenced by (RJN Exhibit E)

127. All named individuals have been identified as a serial robo-signer who have executed legal foreclosure documents in multiple capacities, (i.e. vice president or assistant secretary), or for multiple entities, as in the present case.

128. Executing documents in false capacities is fraudulent and prima facie evidence of robo-signing.

129. Because it could not prove their lien legally, Defendant MERS created a false misrepresented chain of title. As a result, GMAC, the final successor in interest cannot rely on these Assignments, and is therefore not a legal beneficiary under the Mortgage.

130. Through belief, there may be 20,000 or so temporary "deputized" officer's signing for MERS.

131. Execution of legal foreclosure documents by personnel who are not thoroughly acquainted with the file is fraudulent and prima facie evidence of robo-signing.

132. The legal expectation is that a party receives its interest from its predecessor in interest; not its employee or paid agent who is not in title.

133. Plaintiff disputes the authenticity and authority to make any of the Assignments.

134. A transferee cannot acquire rights if either the transferor or the transferee engaged in fraud or illegality.

16

Verified Complaint

135.   The fraudulent Assignments suffer from many infirmities, both legal and factual. It should be cancelled from the Official Records of Newton County.

136.   Any and all interests which rely on this fraudulent and misrepresented document should likewise be cancelled, rescinded or voided as well.

137.   GMAC Mortgage has furthermore cancelled the debt per issuance of the client-provided 2012 Corrected IRS Cancellation of Debt form 1099-C that that client must report as taxable income.

138.   A true and correct copy is attached hereto as (RJN Exhibit F)

139.   Such charge-off may be considered as the note having been satisfied as box 4 debt description states that "Asset Transfer per Acquisitions Purchase Account #" without additional detail.

140.   Plaintiff therefore reserves the right to conduct depositions of GMAC employees responsible for filing such forms with the IRS, which would have been performed by February 29, 2012 using a 1096 transmittal.

141.   A determination must be made whether such a statement was filed falsely and whether such asset transfer to an unknown party was made. In any case, a finding of document as valid is an admission by GMAC of having cancelled the debt. The amount shown as $178,146 is for the amount of the original principal.


**Notice of Sale (six)**

142.   On August 7, 2009. September 8, 2010, November 10, 2010, October 5, 2011, April 4, 2012 and May 9, 2012, Six Notices of Trustee's Sale were recorded in the Official Records for Newton County with unknown instrument numbers.

143.   Curiously none of the alleged documents containing the power of sale are available for review and inspection.

17
Verified Complaint

**Defendants abandoned all interest in the Subject Property**

144.    As stated, *supra*, Plaintiff believe that the Originator, Lend America, Inc. sold its interest in the LOAN and was paid in full.

**The MORTGAGE does not secure the NOTE**

145.    Any assignment of a MORTGAGE without proper transfer of the obligation that it secures is a legal nullity.

146.    Plaintiff alleges the MORTGAGE was separated from the NOTE at least once, and remains separated, making the MORTGAGE unenforceable, null, deficient and illegal. *See Carpenter v. Longan, 83 U.S. 271 (1872)*, "The note and mortgage are inseparable; ... the mortgage can have no separate existence".

147.    Plaintiff alleges that the LOAN was converted into a mortgage backed security and the NOTE and MORTGAGE were permanently severed.

148.    Plaintiff alleges that the NOTE and MORTGAGE were for many years owned by at least two separate entities.

149.    Plaintiff alleges the LOAN was sold, turned into a security, pooled, and therefore the certificate holder(s) may no longer claim that they are a real party in interest. *See Exhibit A*

150.    Plaintiff alleges that a securitization did occur, and the NOTE cannot be re-attached to the MORTGAGE through adhesion. *See Exhibit A*

**Unrecorded Assignments are Fraudulent and Void**

151.    Plaintiff alleges that for years, Defendants failed to record any assignment in the MORTGAGE despite the fact that the LOAN was sold.

152.    Plaintiff alleges that all conveyances are required to be recorded by statute.

153.    Plaintiff alleges that conveyances such as mortgages and assignments that remain unrecorded for

18

Verified Complaint

years are fraudulent and void.

154. Plaintiff alleges that all assignments of mortgage must be written and recorded.

155. Plaintiff alleges that assignments of mortgage require proper identity and certified address of mortgagee or assignee.

156. Plaintiff alleges any change in the lender that would hold a security interest or lien in a property must be recorded.

157. Slanders of title have arisen regarding unrecorded claims in the chain of title. This action is to determine the validity of the MORTGAGE as to any unrecorded assignees over a period of years.

158. The chain of title is broken, making full title insurance impossible and a difficult sale of the home without this Quiet Title Action.

159. Because assignments of an interest were not physically recorded (thereby imparting constructive notice), Defendants did not comply with the race (first in time) or (constructive or actual) notice statutes and therefore, senior/junior property rights cannot be determined when a discrepancy arises in property boundary lines.

160. The destruction of the Subject Property's verifiable clear title is actionable.

**Assignment of Mortgage**

161. The Grantor never held or owned the NOTE.

162. Any assignment of a MORTGAGE without proper transfer of the obligation that it secures is a legal nullity. *See Carpenter v. Longan, 83 U.S. 271 (1872),* "The note and mortgage are inseparable; … the mortgage can have no separate existence".

163. The Grantor did not have standing or authority under the MORTGAGE to assign any interest in the MORTGAGE. The Grantor could only assign what it owned, which was nothing.

164. To date, Plaintiff has yet to see any assignment to WFBANK or the TRUST, rendering the illegal

Verified Complaint

assignment void by law.

## VII. DEFENDANTS LACK STANDING TO FORECLOSE THE SUBJECT PROPERTY

165. An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants do not have the right to foreclose on the Subject Property because Defendants have failed to perfect any security interest in the Subject Property.

166. Thus, the purported power of sale by the above specified Defendants no longer applies.

167. Plaintiff further contends that the above specified Defendants do not have the right to foreclose on the Subject Property because said Defendants did not properly comply with the terms of Defendants' own securitization requirements.

168. Plaintiff alleges that the only individual who has standing to foreclose is the holder of the NOTE because they have a beneficial interest.

169. The only potential holders of the NOTE are the certificate holders of the TRUST because they are the end users and pay taxes on their interest gains; furthermore, all of the banks and Defendants in the middle were paid in full and the certificate holders have suffered no financial loss.

170. Plaintiff request that this Court find that the purported power of sale contained in the NOTE and MORTGAGE has no force and effect at this time, because Defendants' actions in the processing and handling of the loan involved numerous violations of State laws designed to protect borrowers.

171. Plaintiff requests that title to the Subject Property remain in her name and deem that any attempted sale of the Property is "unlawful and void".

172. Plaintiff alleges that in order to conduct a foreclosure action, a person or entity must have standing and that pursuant to Georgia law, to perfect the transfer of mortgage paper as collateral, the owner should physically deliver the note to the transferee.

20
Verified Complaint

173. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected.

174. The NOTE identifies the entity to whom it was payable, the original lender. Therefore, the NOTE cannot be transferred unless it is endorsed; nor are there any other notices which establish that the original lender endorsed and sold the NOTE to another party.

175. Plaintiff disputes the authenticity and authority of each and every endorsement that may have been made to the NOTE.

176. A transferee cannot acquire rights if either the transferor or the transferee engaged in fraud or illegality.

177. Furthermore, insofar as the parties to the securitization of the NOTE and MORTGAGE base their claim that the NOTE was transferred or assigned to Defendant, WFBANK, the Trustee of the TRUST, by a perfected chain of title starting with the original lender, it is well established state law that the assignment of a MORTGAGE does not automatically assign the underlying promissory note and right to be paid and the security interest is incident of the debt.

178. Pursuant to Georgia law, to perfect the transfer of mortgage papers as collateral for a debt, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance, or as unperfected. The NOTE specifically identifies the party to whom it was payable to and the NOTE, therefore, cannot be transferred unless it is endorsed.

179. Defendants have not produced any evidence that the NOTE has been transferred via a perfected chain of title from the originator to WFBANK to the Trustee for TRUST.

## VIII.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION - DECLARATORY JUDGMENT

180. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

Verified Complaint

181. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties regarding the NOTE and MORTGAGE.

182. Defendant GMAC is intending upon foreclosing on the Subject Property in Dispute, which is the subject crux of this action.

183. Plaintiff submits that this case meets the requirements under the Declaratory Judgment Act, 28 U.S.C. §2201, which, in relevant part states:

> [A] District court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration. *Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995)*.

184. In the case of *Grand Trunk W. R.R. Co. v. Consol. Rail Co., 746 F.2d 323 (6th Cir. 1984),* the Sixth Circuit established five factors to guide a district court in exercising its discretion under the Declaratory Judgment Act:

> (1) Whether the declaratory action would settle the controversy;(2) Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for *res judicata*;" (4) Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) Whether there is an alternative remedy which is better or more effective. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (citing *Grand Trunk*, 746 F.2d at 326).

185. Plaintiff submits that this Complaint meets all the *Grand Trunk* factors, and that, therefore this Court has the authority and jurisdiction with which to issue a Declaratory Judgment.

186. Plaintiff alleges that there is an actual "controversy" in the constitutional sense, with respect to

GMAC's stated intention to foreclose.

187.    Plaintiff alleges that this court solely will be able to settle the issue, with a declaratory judgment, and therefore Plaintiff hereby motions this Honorable Court, pursuant to Federal Rules of Civil Procedure 57 and 28 U.S.C. §2201, to issue an order, concurrently filed herewith, declaring the rights and duties of the parties involved in the instant case.

188.    The fact that a declaratory judgment may be granted "whether or not further relief is or could be prayed" indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary. A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding.

189.    The "controversy" must necessarily be "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts. *Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936).*

190.    The existence or nonexistence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared.

**WHEREFORE,** Plaintiff Pro Se prays this court enters a Declaratory Judgment [Count 1] determining the rights and duties of the parties involved in this lawsuit, and the impending foreclosure, for the following Declarations:

- That Defendant WFBANK is the trustee of the securitized trust in the instant case and;

- That Defendant GMAC is the servicer of Plaintiff's loan.

- That Defendant MERS is solely as a "nominee" for the lender as the beneficiary of the security interest Security Deed.

191.    If his court deems this Motion ungrantable or inappropriate, Plaintiff requests, in the alternative, that this court sua sponte, grant instead a declaration of rights as permitted under *Hasselbring v. Koepke, 263 Mich. 466, 248 N.W. 869, 93 A.L.R. 1170 (1933).*

192.    Plaintiff contends that Defendants do not have authority to foreclose upon and sell the Subject

Verified Complaint

Property.

**Injunctive Relief is needed and warranted during the pendency of this action**

193.   Defendants are attempting to have the Subject Property auctioned as noted *Supra.*

194.   Plaintiff has no other remedy at law to enforce her right to exclusive possession of the Subject Property.

195.   Such an event as the sale of the Subject Property would result in irreparable injury to Plaintiff, who would lose Subject Property along with considerable time, money and labor. For all the reasons stated, any sale of the Subject Property by Defendants should be enjoined.

196.   Plaintiff has no other plain, speedy, or adequate remedy, and the injunctive relief prayed for below is necessary and appropriate at this time. Without it, Plaintiff could suffer irreparable loss before this Court can make its determination as to the rights and duties of the parties. Until Defendants are able to provide Plaintiff and this Court with written proof of its right to foreclose, this Court should enjoin the sale of the Subject Property by Defendants.

## SECOND CAUSE OF ACTION – QUIET TITLE

197.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

198.   Plaintiff is entitled to equitable relief by a judicial decree and order declaring Plaintiff to be the title owner of record of the Subject Property as to the effective date of said cancellation, and quieting the title therein and thereto subject only to such legitimate liens and encumbrances as the Court may deem void, and avoiding any liens or encumbrances upon the Subject Property created by Defendants or by their putative predecessors, or by any of them.

199.   Plaintiff has been damaged by the cloud of title of his property, making it difficult if not impossible

to sell the Subject Property with title insurance.

200.    Plaintiff respectfully requests that this Honorable Court find in his favor and enter an Order to Quiet Title and final judgment that the Defendants and their successors and assigns be forever barred from asserting any rights, lien, title or interest in the Subject Property inconsistent with the interest or claims of the Plaintiff set forth in this Complaint and any other relief the Court deems appropriate.

201.    Defendants' interests in the Subject Property are junior, inferior and subordinate to the Plaintiff's superior interest in the Subject Property and should be quieted. Plaintiff desires and is entitled to a judicial declaration quieting title to the Subject Property in favor of the Plaintiff.

**WHEREFORE**, Plaintiff Pro Se prays this court enters a Quiet Title in Favor of Plaintiff [Count 2]

## THIRD CAUSE OF ACTION-NEGLIGENCE PER SE

202.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

203.    Defendants owed Plaintiff a duty to exercise reasonable care and skill to comply with the law in maintaining proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of the records.

204.    Defendants' actions and ongoing behavior are and have been in direct violation of federal and state statutes, rules and regulations and accordingly constitute negligence per se.

205.    In perpetrating the failures alleged above, and in failing to take the required actions as alleged above, the Defendants breached their duty of care and skill to Plaintiff in the servicing of the loan.

206.    Among other things, Defendants failed to properly and accurately notify Plaintiff about changes concerning the loan and its owners and failed to execute and file the proper documentation to transfer and/or sell the NOTE and/or assign its attendant MORTGAGE. *See Exhibit A*

207.    As a direct and proximate result of the negligence and carelessness of the Defendants as set forth

25
Verified Complaint

above, Plaintiff has suffered damages in an amount to be determined at trial.

208. Because of Defendant's violation of federal and state statutes, rules and regulations, Plaintiff is also entitled to any remedy offered by those federal and state statutes, rules and regulations or case law interpreting those federal and state statutes, rules and regulations.

**WHEREFORE,** Plaintiff Pro Se prays this court enters a monetary judgment no less than $75,000.00 in statutory and punitive Damages in Favor of Plaintiff [Count 3]

## FOURTH CAUSE OF ACTION-

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

209. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

210. Plaintiff alleges that at all times there existed an implied covenant of good faith and fair dealing requiring Defendants to safeguard, protect, or otherwise care for the assets and rights of Plaintiff.

211. Said covenant prohibited Defendants from activities interfering with or contrary to the rights of Plaintiff.

212. Plaintiff alleges that the commencement of foreclosure proceedings upon the Subject Property without the production of documents demonstrating the lawful rights for the foreclosure constitutes a breach of the covenant.

213. Defendants breached the provisions of the MORTGAGE. *See Exhibit A*

214. Defendants breached the provisions contained within the NOTE. *See Exhibit A*

215. As a consequence and proximate result, Plaintiff has been damaged in a sum to be proven at trial.

**WHEREFORE,** Plaintiff Pro Se prays this court enters a monetary judgment no less than $75,000.00 in statutory and punitive Damages in Favor of Plaintiff [Count 4]

26
Verified Complaint

## FIFTH CAUSE OF ACTION-BREACH OF FIDUCIARY DUTY

216. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

217. MERS acted on behalf of a Defendant that was not beneficiary under the MORTGAGE. However, it presumed to accept said position.

218. By so doing it also presumed, at least under general equitable principles of fair and honest dealings, to acquire a fiduciary duty toward the Plaintiff.

219. Its actions have breached that duty. Its offenses set forth herein are therefore aggravated by its having violated the duties of the position of trust that it assumed.

**WHEREFORE,** Plaintiff Pro Se prays this court enters a monetary judgment no less than $75,000.00 in statutory and punitive Damages in Favor of Plaintiff [Count 5]

## SIXTH CAUSE OF ACTION-WRONGFUL FORECLOSURE

220. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

221. Through belief, Defendants violated Georgia law, which requires them to contact the borrower in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

222. Defendants are required at law to use due diligence to contact the borrower.

223. Accordingly, all Defendants involved in the foreclosure have failed to fulfill their legal obligation to Plaintiff.

224. Moreover, Plaintiff has never received notice of any assignment of the MORTGAGE. *See Exhibit A*

225. Thus, the Defendants have engaged in an unlawful foreclosure of the Subject Property. *See Exhibit A*

226. They lack the legal authority to foreclose but are proceeding against Plaintiff anyway.

227. If any of them could prove their respective legal authority, they nonetheless have failed to comply

Verified Complaint

with Georgia law.

228.    Plaintiff further alleges that the NOTE was sold or transferred without notifying Plaintiff in writing. Therefore, Defendants have no legal right to enforce it.

229.    Defendants never had the legal authority to foreclose, because the MORTGAGE was assigned improperly, if at all.

230.    Therefore, the MORTGAGE could not provide a basis for a foreclosure, and the foreclosure is void.

231.    The MORTGAGE contains language which forms a condition precedent to commencing a foreclosure.

232.    Defendants failed to satisfy the condition precedent required by the MORTGAGE.

233.    Defendants in this case had a duty, to Plaintiff and to the broader community, to follow the law, including but not limited to the statutes governing foreclosure and the language of the MORTGAGE.

234.    **WHEREFORE**, Plaintiff Pro Se prays this court enters a monetary judgment in an amount to be determined at trial and punitive Damages in Favor of Plaintiff [Count 6]

## SEVENTH CAUSE OF ACTION-VIOLATION OF

## THE REAL ESTATE SETTLEMENT PROCEDURES ACT

235.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

236.    As mortgage lenders, GMAC and WFBANK are subject to the provisions of the Real Estate Settlement Procedures Act, ("RESPA"), 12 USC §2601 ET. seq.

237.    In violation of 12 USC §2607 and in connection with the mortgage loan to Plaintiff, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed.

238.    As a result of the Defendants violations of RESPA, Defendants are liable to Plaintiff in an amount

28

Verified Complaint

equal to three (3) times the amount of charges paid by Plaintiff for "settlement services" pursuant to 12 USC §2607 (d) (2).

239.    Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon her on January 5, 2015. Any applicable statute of limitations should run from this date.

**WHEREFORE**, Plaintiff Pro Se prays this court enters a monetary judgment in an amount to be determined at trial and punitive Damages in Favor of Plaintiff [Count 7]

## <u>EIGHTH CAUSE OF ACTION-VIOLATION OF</u>

## <u>THE HOME OWNERSHIP EQUITY PROTECTION ACT</u>

240.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

241.    In 1994, Congress enacted the Home Ownership Equity Protection Act, (HOEPA), which is codified at 15 USC §1639 ET. seq., with the intention of protecting homeowners from predatory lending practices targeted at vulnerable consumers. HOEPA requires lenders to make certain disclosures and prohibits certain terms from being included in home loans. In the event of non-compliance, HOEPA imposes civil liability for rescission and statutory and actual damages.

242.    Plaintiff is a "consumer" and Defendants are "creditors" as defined by HOEPA. In the mortgage loan transaction at issue here, Plaintiff was required to pay excessive fees, expenses, and costs.

243.    Pursuant to HOEPA, and specifically 15 USC §1639 (A.) (1), each Defendant is required to make certain disclosures to Plaintiff which is to be made conspicuously and in writing no later than three (3) days prior to the closing.

244.    In the transaction at issue, Defendants are required to make the following disclosures to Plaintiff by no later than three (3) days prior to said closing: "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the

29
Verified Complaint

lender will have a mortgage on your home. You could lose your home and any money you have put into it, and if you do not meet your obligation under the loan."

245.   Defendants violated HOEPA by numerous acts and material omissions, including but not limited to: a) Failing to make the foregoing disclosures in the conspicuous fashion;   b) Engaging in a pattern and practice of extending credit to Plaintiff without regard to his ability to pay and violation of 15 USC§ 1639.

246.   By virtue of the Defendants' multiple violations of HOEPA, Plaintiff has a legal right to rescind the consumer credit transaction the subject of this action pursuant to 15 USC§1635. This complaint is to be construed, for these purposes, as formal and public notice of PLAINTIFF'S notice and rescission of the mortgage and note.

247.   Defendants further violated HOEPA by failing to make an additional disclosure, including but not limited to, PLAINTIFF not receiving the required disclosure of the right to rescind the transactions.

248.   Defendants failed to provide accurate TILA disclosures and understated the amount being financed.

249.   As a direct consequence of, and in connection with, PLAINTIFF'S legal and lawful exercise of his right of rescission, the true "owner" is required, within twenty (20) days of the notice of rescission, to: a) Desist from making any claims for finance charges in the transaction; b) Return all monies paid by Plaintiff in connection with the transaction to the Plaintiff; c) Satisfy all security interests, including mortgages, which were required in the transaction.

250.   Based on Defendants' HOEPA violations, each of the Defendants is liable to Plaintiff for the following, which Plaintiff demands as a relief: a) Rescission of the mortgage loan transaction; b) Termination of the mortgage and security interest in the property the subject of the mortgage loan documents created in the transactions; c) Return of any money or property paid by Plaintiff including all payment made in connection with the transaction; d) The amount of money equal to twice the finance charge in connection with the transactions; e) Relinquishment of the right to retain any proceeds; and f) Actual damages in an amount to be determined at trial, including, attorney's fees.

30

Verified Complaint

251. Because it is not clear who was actually in interest at the time of the actions described below, Plaintiff alleges this Cause of Action in the alternative against each of the possible parties at fault.

252. This Cause of Action is pled in the alternative to the more likely allegation that the NOTE has become an ownerless "phantom note" and litigation is necessary to determine who, if anyone has any right, under what transfer agreement, if any.

253. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon her on January 5, 2015. Any applicable statute of limitations should run from then.

**WHEREFORE**, Plaintiff Pro Se prays this court enters a monetary judgment in an amount to be determined at trial, and no less than $100,000.00, as well as punitive Damages in Favor of Plaintiff [Count 8]

## NINTH CAUSE OF ACTION- FRAUD IN THE CONCEALMENT

254. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

255. Defendants concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements, including, *inter alia:* (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions.

256. By concealing the securitization, Defendants concealed the fact that Plaintiff's loan changed in character inasmuch as no single party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income stream from the loans.

257. Changing the character of the loan in this way had a materially negative effect on Plaintiff which was known by Defendant but not disclosed.

258. Defendants knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loans.

Verified Complaint

259. Defendants intended to induce Plaintiff based on these misrepresentations and improper disclosures.

260. Plaintiff's reasonable reliance upon the misrepresentations was detrimental.

261. But for failure to disclose the true and material terms of the transaction, Plaintiff could have been alerted to issues of concern.

262. Plaintiff would have known of Defendants true intentions and profits from the proposed risky loan.

263. Plaintiff would have known that the actions of Defendant would have an adverse effect on the value of Plaintiff's home.

264. Defendants' failure to disclose the material terms of the transaction induced Plaintiff to enter into the loans and accept the Services as alleged herein.

265. Defendants were aware of the misrepresentations and profited from them.

266. As a direct and proximate result of the misrepresentations and concealment Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

267. Defendants are guilty of malice, fraud and oppression.

268. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff.

269. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

**WHEREFORE**, Plaintiff Pro Se prays this court enters a monetary judgment in an amount to be determined at trial and punitive Damages in Favor of Plaintiff [Count 9]

## TENTH CAUSE OF ACTION- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

270. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

Verified Complaint

271.    The actions of Defendants, as set forth herein, have resulted in the Plaintiff being threatened with the loss of the Property.

272.    This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

273.    Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiff those Defendants were entitled to exercise the power of sale provision contained in the Mortgage.

274.    In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

275.    Defendants' conduct – fraudulently attempting to foreclose or claiming the right to foreclose on a property in which they have no right, title, or interest – is so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community.

276.    Such conduct was undertaken with the specific intent of inflicting emotional distress on Plaintiff, such that Plaintiff would be so emotionally distressed and debilitated that he would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure the alleged default, right to verify the alleged debt that Defendants are attempting to collect, and right to clear title to the Property such that said title will regain its marketability and value.

277.    At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt.

278.    Defendants, and each of them, committed the acts set forth above with complete; utter and reckless disregard of the probability of causing Plaintiff to suffer severe emotional distress.

279.    As an actual and proximate cause of Defendants' attempt to fraudulently foreclose on Plaintiff's home or claim of the right to foreclose on Plaintiff's home, the Plaintiff has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.

280.    Plaintiff did not default in the manner stated in the Notice of Default, yet because Defendants'

33
Verified Complaint

outrageous conduct, Plaintiff has been living under the constant emotional nightmare of losing the Property.

281.   As a proximate cause of Defendants' conduct, Plaintiff has experienced many sleepless nights, severe depression, lack of appetite, and loss of productivity at his place of employment.

282.   The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people.

283.   Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

**WHEREFORE**, Plaintiff Pro Se prays this court enters a monetary judgment in an amount to be determined at trial and punitive Damages in Favor of Plaintiff [Count 10]

## ELEVENTH CAUSE OF ACTION- SLANDER OF TITLE

284.   Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

285.   Defendants, and each of them, disparaged Plaintiff's exclusive valid title by and through the preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, Trustee's Deed, and the documents evidencing the commencement of judicial foreclosure by a party who does not possess that right.

286.   Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents.

287.   Defendants had no right, title, or interest in the Property.

288.   These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiff's legal title to the Property.

289.   By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiff's legal title was made to the world at large.

290. As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiff's title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff's title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial.

291. As a further proximate result of Defendants' conduct, Plaintiff has incurred expenses in order to clear title to the Property.

292. Moreover, these expenses are continuing, and Plaintiff will incur additional charges for such purpose until the cloud on Plaintiff's title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

293. As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in the loss of sleep and other injuries to his health and well-being, and continues to suffer such injuries on an ongoing basis.

294. The amount of such damages shall be proven at trial.

295. At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive her of his exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means.

296. The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious.

297. Therefore, Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

**WHEREFORE,** Plaintiff Pro Se prays this court enters a monetary judgment in an amount to be determined at trial and punitive Damages in Favor of Plaintiff [Count 11]

Plaintiff declares that she is not an expert in the law but does know right from wrong and intends no one harm by her word or deed. Therefore, if any human being is damaged by any statement(s) herein and

informs Plaintiff of the facts, he will sincerely make every effort to amend her allegations. Plaintiff hereby reserves the right to amend and make amendment to this document as necessary in order that the truth may be ascertained and proceedings justly concluded. If a party given notice by means of this document has information that would controvert and overcome this affidavit, he/she is respectfully requested to advise Plaintiff IN WRITTEN AFFIDAVIT FORM, sworn/affirmed true, correct, complete, and not misleading upon the Affiant's full commercial liability, within thirty (30) days from the receipt hereof, if Affiant can prove with particularity, by stating all requisite, evidentiary facts and all requisite, actual law—not mere ultimate facts and conclusions of law—that the declarations herein are substantially and materially false, sufficiently to alter materially their status and factual statements. Silence stands as consent to, and tacit approval of, the factual declarations herein being established as matters of law.

**WHEREFORE,** Plaintiff prays this court to enter judgment against Defendants on all counts, as follows:

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For a judgment forever enjoining each of the Defendants from claiming any estate, right, title or interest in the Subject Property;

8. For such other further relief as the court may deem just and proper.

36
Verified Complaint

Dated: _April 17_____, 2015.

Respectfully Submitted,

Cathryn Lafayette, Plaintiff Pro Se
440 Milton Drive
Covington, GA 30016
Tele (770) 572-7368

37
Verified Complaint

## VERIFICATION

I, the undersigned Plaintiff, do solemnly swear; declare under penalty of perjury of the laws of Georgia and of the United States and state as follows:

To the best of my personal knowledge and belief, all the facts within this Complaint are true and correct.

FURTHER, THE AFFIANT SAYETH NAUGHT

IN WITNESS WHEREOF, I hereunto set my hand and my seal, and hereby certify all the statements made above are true, correct and complete.

DATED: 09/19/2016

Cathryn Lafayette, Plaintiff Pro Se
440 Milton Drive
Covington, GA 30016
Tele (770) 572-7368

38
Verified Complaint

# EXHIBIT A



**Certified Forensic Loan Auditors**

## CERTIFIED FORENSIC LOAN AUDITORS, LLC
13101 West Washington Blvd., Suite 140, Los Angeles, CA 90066
Phone: 310-432-6304; Sales@CertifiedForensicLoanAuditors.com
www.CertifiedForensicLoanAuditors.com

# *PROPERTY*
# *SECURITIZATION ANALYSIS REPORT*™

*Prepared for:*

# CATHRYN LAFAYETTE

*For Property Address*

**440 Milton Drive
Covington, GA 30016**

*Prepared on:*
**January 5, 2015**

Disclosure: You have engaged Certified Forensic Loan Auditors, LLC to examine your real estate documents. This information is not to be construed as legal advice or the practice of law, pursuant to *Business and Professions Code § 6125 et seq.* It is the intent of CFLA, its members, auditors and independent contractors, not to engage in activities that could be considered the practice of law by conduct exhibiting any of the following practices: "...the doing and/or performing of services in a court of justice in any matter depending therein throughout the various stages and in conformity with the adopted rules of procedure. It includes legal advice and counsel and the preparation of legal instruments and contracts by which the legal rights are secured although such matter may or may not be depending in a court."



**Certified Forensic Loan Auditors**

## AFFIDAVIT OF FACTS

**STATE OF CALIFORNIA**       )
                              ) sv.: **AFFIDAVIT**
**COUNTY OF LOS ANGELES**     )

**RE: Cathryn Lafayette**

I, MICHAEL CARRIGAN, a citizen of the United States and the State of California over the age of 21 years, and declare as follows, under penalty of perjury that the facts stated herein are true, correct and complete. The undersigned believes them to be true and admissible as evidence in a court of law, and if called upon as a witness, will testify as stated herein:

1.  That I am a subscriber of the Bloomberg Professional Service, certified and licensed to use such service. I have completed the required training and engaged in continuing education with Bloomberg – both online and at Bloomberg live training events, to stay abreast with Bloomberg's latest progress and developments. I have the requisite knowledge and the trained ability to navigate and perform effective searches on the on the Bloomberg terminal.

2.  I am a Certified Mortgage Securitization Auditor and my qualifications, expertise and experience provide me with the background necessary to certify the audit services and to be qualified as an expert in this field. I have produced approximately two thousand five hundred Securitized Analysis Reports in residential real estate mortgage investigation in 45 states, the District of Columbia and Puerto Rico, have testified as an expert witness, and have trained auditors in California, Florida, Nevada, New York, New Jersey and Virginia and via the Internet in webinar format. I have a Bachelor's degree with a concentration in Accounting in Business Administration from California State University, Fullerton; a Master's in Business Administration from the UCLA Anderson School of Management; and have had formal training and career experience in accounting; financial reporting; internal control; SEC reporting; financial planning and analysis; financial forecasting; initial public and secondary offerings; corporate tax; corporate finance; investment management; equity, fixed income and derivative securities; credit analysis; asset valuation; ethics; investment advisory services including Series 7 and 66 licensing; real estate investment; real estate finance; real estate principles; redevelopment; government accounting; and procurement.

3.  I have the trained skills and qualifications to navigate and perform searches on the Bloomberg terminal in regards to the automated tracking and determination of mortgage and loan related documents and information.

4.  The contents of this report are factual, but it is provided for information purposes only and is not to be construed as "legal advice."[1]

---

[1] The client has been strongly advised to seek legal consultation from a competent legal professional in connection with the contents of this report and how to properly use it.

CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015
-All Rights Reserved-



**Certified Forensic Loan Auditors**

5.   On January 5, 2015, I researched the Bloomberg online Database at the request of CATHRYN LAFAYETTE whose property address is 440 Milton Drive, Covington, GA 30016.

6.   Based on the information I was provided, CATHRYN LAFAYETTE signed a Promissory Note in favor of LEND AMERICA INC on November 6, 2008 (Recorded date 11/26/08).

7.   The loan was not identified in any publically reporting trust.  A qualifying trust formed shortly after the execution of the loan on November 6, 2008 (Recorded date 11/26/08) is the GINNIE MAE REMIC TRUST 2009-008 with a closing date of February 27, 2009.  The **underwriters** are Goldman, Sachs & Co. and Loop Capital Markets LLC, the Sponsor is Ginnie Mae and **Trustee** is Wells Fargo Bank, NA.  There is no known connection between the original lender, LEND AMERICA INC and GMAC Mortgage, LLC, to whom the Assignment of Mortgage was assigned.

By:

Michael Carrigan
Certified Mortgage Securitization Auditor / Bloomberg Specialist

CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2007-2015
-All Rights Reserved-



**Certified Forensic Loan Auditors**

STATE OF CALIFORNIA )
) sv: ACKNOWLEDGEMENT
COUNTY OF LOS ANGELES )

On ___/ /6___, 2015 before me, _____ *Daryl Blancaflor* _____
(Notary Public)

personally appeared **MICHAEL CARRIGAN**, who proved to me on the basis of satisfactory evidence to be the man whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument under the penalty of perjury.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

My commission Expires ___09/28/18___

DARYL JAMES BLANCAFLOR
Commission # 2083761
Notary Public - California
Los Angeles County
My Comm. Expires Sep 28, 2018

CERTIFIED FORENSIC LOAN AUDITORS, LLC COPYRIGHT 2002-2015
-All Rights Reserved-

STATE OF GEORGIA
COUNTY OF NEWTON
FEDERAL CLAIM OF COMMON LAW LIEN
               AND
NOTICE OF FEDERAL COMMON LAW LIEN
      WRIT OF ATTACHMENT
ON REAL AND PERSONAL PROPERTY
FOR THE SUM OF $ 42, 047,628.00



OCTOBER 22. 2011 A.D.

NOTICE TO:

Newton County Superior Court in the State of Georgia, Sherriff of Newton County, Georgia:
David C. Walker. Vice President on behalf of GMAC Mortgage, LLC, Plaintiff: and McCurdy & Candler,
LLC and attorney for the Plaintiff. and all Title Companies: and All Potential Purchasers: and all entities
who may claim interest now or at some time in the future: and All persons known and unknown who may be
similarly situated and All other concerned parties.


    You are hereby notified that a FEDERAL COMMON LAW LIEN WRIT OF ATTACHMENT ON
REAL AND PERSONAL PROPERTY IS NOW IN EFFECT ON A CERTAIN PARCEL OF Real Estate
now of record in the Name of Cathryn Lafayette. the LIENOR, on property located in Newton County.
Georgia, and Known as (440 Milton Dr., Covington, Georgia 30016) and more specifically LEGALLY
described as:


All that tract or parcel of land lying and being in Land Lot 169 of the 10th District, Newton County, being Lot 182, The
Reserves at Lakewood Estates Subdivision, Unit Two, as per plat recorded in Plat Book 45, Page 196-207, Newton
County, Georgia records, which recorded plat is incorporated herein by this reference and made a part of this
description.

Being 440 Milton Drive, Covington, Georgia 30018

Tax ID: 0012E 182

    This claim shall operate in the nature of a "security" for the repair, maintenance, improvements of the
herein described property. Life experiences, performance of obligations related to property of all kinds. This
claim is made pursuant to decisions of the United States Supreme Court. This Common Law Lien is
dischargeable only by Claimant. or by a Common Law Jury in a Court of Common
Law and according to the rules of Common Law. It is not otherwise dischargeable for
One Hundred (100) years, and cannot be extinguished due to the death of Claimant, or by Claimant's
heirs, assigns, or executors. This Common Law Lien is for repairs/maintenance and improvements
related to said Claimant, Life Experience and performance of duty as related to all other assets beginning
November 26, 2008 in the amount of $ 41,750,980.00 plus interests: also known as Lien In Instrument No.
005256 filed on November 12, 2008 as well as the amount of $225,000.00 : hence a total of $42,047,628.00
awful money of the United States, a DOLLAR being described in the 1792 US Coinage
Acts as 371.25 grains of fine silver. or the equivalent of Gold, notes or other instruments acceptable to
Claimant. (Emphasis added). The failure, refusal, or neglect of Respondent(s) to demand, by all prudent

means, that the Sheriff of this County convene a Common Law Jury to hear this action within ninety (90) days from the date of filing of this Instrument will be deemed as prima facia evidence of an admission of "waiver" to all rights on the property described herein.(Neglect; to give reasons on the record for a refusal to call said court has been held a "Waiver"); (see law express and implied in 1 Campd. 410 n., 7 Ind. 21). (Emphasis added.)1

CATHRYN LAFAYETTE AKA DR. CATHRYN PARKMAN-LAFAYETTE

VS
GMAC Mortgage, LLC
David C. Walker, Vice President on behalf of GMAC Mortgage, LLC, Plaintiff: and McCurdy & Candler, LLC and attorney for the Plaintiff, and all Title Companies: and All Potential Purchasers: and all entities who may claim interest now or at some time in the future: and All persons known and unknown who may be similarly situated and All other concerned parties.


Common Law Lien definition: One known to or granted by the common law, as distinguished from statutory, equitable, and maritime liens; also one arising by implication of law, as distinguished from one created by the agreement of the parties. It is a right extended to a person to retain that which is in his possession belonging to another, until the demand or charge of the person in possession is paid or satisfied. (Whiteside v. Rocky Mountain Fuel Co., C.C.A. Colo. 101 F.2d 765,769.) (Emphasis added.)Black's Law Dictionary 6th Edition.11 USCS () 101, Paragraph (27) (31) defines "lien". The definition is new and is very broad. A lien is defined as a charge against or interest in property to secure payment of debt or performance of an obligation. It includes inchoate lien. In general, the concept of lien is divided into three (3) kinds of liens: judicial liens, security interests, and statutory liens. These three (3) categories are mutually exclusive and are exhaustive except for certain Common Law Liens. This Common Law Lien supersedes Mortgage Liens, Lis Pendens Liens, and Liens of any other kind. This is a suit or action at Common Law and the value in controversy exceeds twenty (20) dollars. The controversy is not confined to the question of Title to Property or in relation to other property, but to Claimants Common Law Claim for the repair/maintenance and improvements to the herein described property, and obligations of duties, wherein the Claimant demands that said controversy be determined by a Common Law Jury in a Court of Common Law and according to the Rules of Gonroon Law. A UCC-.

### MEMORANDUM OF LAW

This Claim through Common Law Lien is an action at Substantive Common Law, not in Equity, and is for the repair, maintenance, improvement, Life experience or performance of an obligation of the herein described property and in relation to other properties as of Substantive Common Law, is distinguished from mere, "common law procedure". Lawyers and judges are misinformed to think, plead, rule or order that the substantive common law rights and in munities have been abolished in Georgia or any other state. Only "Common Law procedure" created by the chancel or/chancery has been abolished. That is to say, the "forms" of common law and equity were abolished, (Kimball v. McIntyre, 3 U 77, 1 P 167), or that the distinctions between the forms of common law and equity were abolished by Rule 2 of Civil Procedure ( Donis v. Utah R.R., 3 U 218, 223 P 521).However, the abolition of mere form, does NOT affect nor diminish our SUBSTANTIVE(Common Law and Constitutional) Rights and immunities (USC 78-2-4,S.2) for substantive law, e.g. our UNALIENABLE Rights Immunities, and has not changed with the state's adoption of Rule 2, combining the courts

form, remedial, ancillary adjective procedures, (see Bonding v. Nonatny, 200 Iowa,227,202 N.W.588) for matters of substance are in the main the same as at substantive Common Law, (Calif. Land v. Halloran, 82U 267,17 P2d 209) and old terms (words and phrases describing law and substantive procedures) used in Common Law can NOT be ignored (O'Neill v. San Pedro RR, 38 U 475, 479, 114 P 127), the modifications resulting being severely limited in operation, effect, and extent (Maxfield v. West 6 U379,-24 P 98) for a total abolishment of even the purely equity or purely Common Law forms has NOT been realized, and must ever be kept in mind (Donis v. Utah RR, supra.)Thus a right to establish a "Common Law Lien" is not, and was NOT dependent upon a statute or chancery rule for its creation as a remedy, and where the right to establish a "Common Law Lien" is a part of SUBSTANTIVE Common Law our right is antecedent to creation of the "state" or its chancery/procedure which right runs to time iinmenorial (Western Union v. Call, 21 S Ct 561,181 US 765)We must be sustained in our acts. mere chancery, equity having no jurisdiction so to counter:"...if the facts stated (see facts related to our "Common Law Lien")entitled litigant (Demandant) to ANY remedy or relief under SUBSTANTIVE LAW(supra), then he has stated good subject matter (cause of action)—and the Court MUST enter judgment in (our) favor—in so far as an attack on the sufficiency of (Demandant) leadings are concerned." (Williams v Nelson 45 U255, 145 P 39; Kaun v McAllister, 1 U 273, affirmed 96 U 587, 24 LEd 615.)"For "although lawyers and judges have (in their ignorance) buried the Common Law, the Common Law rules us from the grave."(Koffer, Common Law Pleading, Intro. Ch. I, West1969)The general rule of the Common Law is expressly adopted by Federal Constitution and is in force in this state and is the Law of the Land and by its operation can impose a Common Law Lien on property in the absence of any specific agreement (see the law express and implied in the class of cases represented by Drumond v. Mills,(1898) 74 N.W.966; Hewitt v. Williams, 47 LaAnn 742, 17 So.269 (1894);Carr v. Dail, 19 S.E.235; McMahon v. Lundin, 58 N.W.827)The Magna Carta governs as well, retaining and preserving all rights antecedent thereto, which was restated in the (1) Massachusetts Bay Charter. (2) Massachusetts Constitution, and (3) the Federal Constitution, (modeled after the Massachusetts Constitution) after which the Texas and Arizona Constitution is modeled, all construed inpari materia, the State Constitution being a LIMITATION on the state's power (Fox v.Kroeger, 11 9 Tex 511, 35 SW2d 670,77 ALR 663.), the Constitution acting prospectively -declaring rights and procedures for the future but NOT diminishing rights extant prior to establishment of the state (Grigsby v. Reib, 105 Tex 597, 153 SW 1124; Southern Pacific Co. v. Porter, 160 Tex 329,331 SW2d 42), and no new powers contrary to our Common Law Rights/Immunities were "granted" to the state.

Common Law Liens at Law supersede mortgages and equity Liens (Drumons Carriage Co. v Mills (1898) 74 NW 966; Hewitt v. Williams 47 LaAnn, 742, 17 So.269; Carr v.Dail, 19SE235; McMahon v. Lundin, "58NW 827) and may be satisfied only when a Court of Common Law is convened pursuant to an order of the elected sheriff. Such Common Law Court forbids the presence of any judge or lawyer from participating or presiding, or the practice of any Equity Law. The ruling of the U.S. Supreme Court in Rich v. Braxton, 158US 375, specifically forbids judges from invoking equity jurisdiction to remove Common Law Liens or similar "clouds of title". Further, even if a preponderance of evidence displays the lien to be void or voidable, the Equity Court still may not proceed until the moving party has proven that he asks for, and has come "to equity" with "clean hands". (Trice v. Comstock, 570C. A646; West v. Washburn, 138NY Supp.230). Any official who attempts to modify or remove this Common Law Lien is fully liable for damages. (U.S. Supreme Court; Butz v. Econcmou, 98 S.Ct.2894; Bell v. Hood, 327 US 678; Belknap v. Schild, 161 US 10; US v. Lee; Bivens v. 6 Unknown Agents, 400 US 862)Demand is hereby and herewith made upon all public officials under penalty of Title 42, United States Code, Section 1986, not to modify or remove this Lien in any manner. (This Lien is not dischargeable for 100 years and cannot be extinguished due to Claimant's death or by Claimant's heirs, assigns, or executors.) Any Order, Ad judgment, or Decree issuing from a Court of Equity operating against to

interfere or remove this At-Law legal lien claim would constitute direct abrogation/deprivation of Claimant's Georgia State and United States Constitutionally guaranteed Rights. This notice is given inter alia to preclude a jury trial on the certain claim, and to provide for Summary Judgment on the said certain Claim should Respondent admit "waiver" and refuse to call said court.

## CAVEAT

Whoever attempts to modify, circumvent and /or negate this Federal Common Law Lien in the form of the Writ Of Attachment, shall be deemed outlaws and / or felons and shall be prosecuted pursuant to Title 42, United States Code. 1983, 1985, 1986, 1nd punishable under penalties of the common law at law and applicable sections of Title 18, United States Code.
Demand is made upon all public officials under penalty of #42 U.S.C. Section 1986 not to modify or remove this lien in any manner.

## JUDICIAL NOTICE

WE HEREBY NOTICE this all parties and this Court that pursuant to U.S. Supreme Court case HAFER v. MELO, No. 90-681, November, 1991, any judicial actions which violates the constitutional rights of individuals may be sued as a cause of action in civil litigation against those performing said acts, without any form of immunity.
CIVIL RIGHTS- Immunity: State officials sued in their individual capacities are "persons" subject to suits for damages under 42 U.S.C. 1983;Eleventh Amendment does not bar such suits in federal court. (Hafer v. Melo, No. 90-

The symbol "$" means "dollar" as defined by the unrepealed (1792) U.S. Coinage Act, which is 371.25 grains of fine silver for each "dollar", (or the equivalent in currency acceptable to claimant) and is that "Thing" mandated upon the State of Georgia by Article 1:10:1, United States Constitution. Dr. Cathryn Parkman-Lafayette demands all her Common Law Rights at all times and in all places along with those rights guaranteed in the Magna Carta, Declaration of Independence, United States Constitution, and the Georgia State Constitution. In Propria Persona, Proceeding Sui Juris: Cathryn Lafayette AKA Dr. Cathryn Parkman-Lafayette Claimant Without Prejudice UOC 1.207.681), page 4001

Respectfully submitted in the Name of Justice on this 22nd day of October, 2011.

*Cathryn Lafayette*

Lienor: Cathryn Lafayette
440 Milton Dr.
Covington, GA 30016
770-572-7368

**AFFIDAVIT**

STATE OF GEORGIA

COUNTY OF NEWTON

BEFORE ME, the undersigned authority, on this day of October 22, 2011. Did personally appear
Cathryn Lafayette AKA Dr. Cathryn Parkman-Lafayette, the OWNER of the property, and Cathryn
Lafayette AKA Dr. Cathryn Parkman-Lafayette, the LIENOR, who being first personally and dully sworn, does
depose and say that the information contained in this foregoing Federal Common Law Lien Writ of Attachment on
Real and Personal Property is true and accurate.                                        Further
affiant sayeth not.

_____                        _____

Cathryn Lafayette                                                  Cathryn Lafayette

"PROPERTY OWNER"                                               "LIENOR"


State Of Georgia

County Of Newton

The foregoing Federal common Law Lien Writ of Attachment on Real and Personal Property was
acknowledged before me this 22nd day, October, 2011, by CATHRYN LAFAYETTE AKA DR. CATHRYN
PARKMAN-LAFAYETTE, the OWNER of the property, and CATHRYN LAFAYETTE AKA DR. CATHRYN
PARKMAN-LAFAYETTE, the LIENOR, who personally known to me or who has produced her Drivers
License as identification and who did take an oath and acknowledged that she did execute same.

(Notary Signature)_____

Print name: _____

Notary Public State of Georgia At Large

My Commission Expires:_____11/14/2011_____

Federal Claim Of Common Law Lien

And

Notice of Federal Common Law Lien

Writ of Attachment on Real and Personal Property

Number of Pages 7       Date of Document October 22, 2011

Cathryn Lafayette AKA Dr. Cathryn Parkman-Lafayette The OWNER of the property and Cathryn Lafayette AKA Dr. Cathryn
Parkman-Lafayette, the LIENOR.

*Closing Funds wired Hipy to Seller*
*11/06/2008*
*Closing*
*11/26/2008*
*Funds wired*
*Funds sent 11/26/04*

# NEEL & ROBINSON ATTORNEYS AT LAW, LLC

## 22 Lenox Pointe
## Atlanta, Georgia 30324
## Lenox@neelandrobinson.com

**Direct line to Leigh Clack, Attorney: 404-705-3690**
**Direct line to Jane Hedgepeth, Attorney: 404-705-3693**
**Direct line to Jean West, Paralegal: 404-705-3691**
**Lenox Office Fax: 404-705-3697**
**Main line to firm: 404-459-9600**

# CLOSING FUNDS POLICY

FOR THE PROTECTION AND BENEFIT OF ALL PARTIES TO THE CLOSING, **ALL FUNDS** FOR CLOSING MUST BE IN THE FOLLOWING FORM:

1. **LENDER FUNDS** – MUST BE BY **WIRE TRANSFER.**
2. **BORROWER & SELLER FUNDS** (AND ANY GIFT FUNDS OR FUNDS FROM ANY OTHER SOURCE THAT MAY BE USED BY THE BORROWER, **INCLUDING CLOSING PROCEEDS FROM OTHER LAW FIRMS**) MUST BE BY **WIRE TRANSFER.** IF A WIRE TRANSFER IS NOT POSSIBLE, **NEEL & ROBINSON MUST BE NOTIFIED PRIOR TO CLOSING FOR APPROVAL OF THE SOURCE OF FUNDS.**

## NEEL & ROBINSON WIRING INSTRUCTIONS:
# ABA ROUTING NO.: 061000104
# SUNTRUST BANK
# MAIL CODE GA-ATL-0287
# 25 PARK PLACE, 13TH FLOOR
# ATLANTA, GEORGIA 30303